BARRY D. MILLS, SBN 185823
Attorney at Law
3588 Fourth Avenue, Suite 210
San Diego, CA 92103
(619) 295-5000 Telephone
(619) 338-4033 Facsimile

Attorney for Plaintiffs ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON

FILED
08 MAY 21 PM 12:55
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: CP DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ALPHONSO RICHARDSON, SR., and RUTH A. RICHARDSON,

Plaintiffs,

vs.

CHARLES O. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001; RICHARD CHEROSKE, individually and as assignee of The Robison Family Trust; ERIC A. KLEIN, individually; ROBERT H. LAYTON, individually; ALPHONSO RICHARDSON, JR., individually; STATEWIDE RECONVEYANCE, INC. dba STATEWIDE FORECLOSURE SERVICES, a California corporation; COMMONWEALTH LAND TITLE COMPANY, a California corporation, and DOES 1 through 100, inclusive,

Defendants.

CASE NO. '08 CV 0902 WQH BLM

**COMPLAINT FOR DAMAGES, TO ENJOIN FORECLOSURE, AND FOR DECLARATORY RELIEF**

1. Violations of The Truth in Lending Act (15 USC §§ 1601 *et seq.*)
2. Violations of California's Predatory Lender Law, (Cal. Fin. Code §§ 4970 *et seq.*);
3. Violations of California's Real Estate Licensing Regulations, (Cal. Bus. & Prof. Code §§ 10240 *et seq.*);
4. Breach of Fiduciary Duty;
5. Constructive Fraud;
6. Negligence;
7. Violations of California's Fair Debt Collection Practices Act (Cal. Civil Code §§ 1788 et seq.);
8. Declaratory Relief; and
9. Injunctive Relief.

**JURY TRIAL DEMAND**

Plaintiffs ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON complain as follows:

**I.**

**INTRODUCTION**

1. This is an action for damages, injunctive relief and declaratory relief



CR

brought by individual consumers for Defendants' violations of The Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, (hereinafter "TILA"), including violations of The Home Ownership and Equity Protection Act, 15 U.S.C. §1639, (hereinafter "HOEPA"), Regulation Z, 12 C.F.R. §§ 226 *et seq.*, and for violations of California's Predatory Lending Law, (Cal. Fin. Code §§ 4970 *et seq.*), California's Real Estate Licensing Regulations (Cal. Bus. & Prof. Code §§ 10240), and California's Fair Debt Collection Practices Act, "The Rosenthal Act", (Cal. Civil Code §§ 1788 *et seq.*). This is also an action for violations of California common law that arose from the same transaction and the same nucleus of operative facts. Plaintiffs respectfully demand a Jury Trial.

**II.**

**JURISDICTION AND VENUE**

2. Jurisdiction of this Court arises under 15 U.S.C. §§ 1601 *et seq.* and 28 U.S.C. §1337.

3. Pursuant to 28 U.S.C. §1367, Supplemental Jurisdiction for claims under California's Predatory Lending Law, (Cal. Fin. Code §§ 4970 *et seq.*), California's Real Estate Licensing Regulations (Cal. Bus. & Prof. Code §§ 10240), California's Fair Debt Collection Practices Act, "The Rosenthal Act", (Cal. Civil Code §§ 1788 *et seq.*), and claims involving state common law causes of action because these claims involve the same transaction and nucleus of operative facts.

4. Venue is proper in the United States District Court, Southern District of California because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

**III.**

**PARTIES**

5. Plaintiff ALPHONSO RICHARDSON, SR., at all times herein relevant, resided and resides in the County of San Diego, California. Mr. Richardson is a disabled adult pursuant to Cal. Civil Code §3345 and a dependent adult pursuant to the Elder Abuse and Dependent Adult Protection Act, (Cal. Welfare & Institutions Code §§ 15600,

15610.23).

6. Plaintiff RUTH A. RICHARDSON, at all times herein relevant, resided and resides in the County of San Diego, California. Ms. Richardson is an elder and disabled adult pursuant to Elder Abuse and Dependent Adult Protection Act, (Cal. Welfare & Institutions Code §§ 15600, 15610.27).

7. Plaintiffs ALPHONSO RICHARDSON SR. and RUTH A. RICHARDSON are married to one another and are joint tenants of residential property commonly known as 9589 Paseo Temporada, San Diego, California 92129.

8. Plaintiffs are informed and believe and thereon allege that defendant CHARLES O. ROBISON, at all times herein relevant, resided or resides in the County of San Diego, California and is a Trustee of the Robison Family Trust dated 04/05/2001.

9. Plaintiffs are informed and believe and thereon allege that defendant BLANCHE L. ROBISON, at all times herein relevant, resided or resides in the County of San Diego, California and is a Trustee of the Robison Family Trust dated 04/05/2001.

10. Plaintiffs are informed and believe and thereon allege that defendant RICHARD CHEROSKE is an assignee of an interest in the transaction herein described and based upon said assignment is liable for any and all act or omissions of the Robison defendants.

11. Plaintiffs are informed and believe, and thereon allege that defendant ERIC A. KLEIN, at all times herein relevant, resided or resides in the County of San Diego, California.

12. Plaintiffs are informed and believe, and thereon allege that defendant ROBERT H. LAYTON, at all times herein relevant, resided or resides in the County of San Diego, California.

13. Plaintiffs are informed and believe, and thereon allege that defendant ERIC A. KLEIN is duly licensed by the State of California as a real estate broker, License ID # 01123138. Additionally, upon information and belief, defendant ROBERT H. LAYTON, is a salesperson pursuant to Mr. Klein's license. Mr. Layton's License ID # is

008790549.

14. Plaintiffs are informed and believe, and thereon allege that defendant ALPHONSO RICHARDSON, JR., at all times herein relevant, resided in the County of San Diego, California, but presently resides in the County of Riverside, California.

15. Plaintiffs are informed and believe, and thereon allege that defendant STATEWIDE RECONVEYANCE GROUP, INC. dba STATEWIDE FORECLOSURE SERVICES (hereinafter "STATEWIDE") is a California corporation and, at all times herein relevant, was and is doing business within the County of San Diego.

16. Plaintiffs are informed and believe, and thereon allege that defendant STATEWIDE is the employ, servant and/or agent of the Beneficiary of a certain Deed of Trust, the Beneficiary being The Robison Family Trust. As set forth above, Defendants CHARLES O. ROBISON and BLANCHE L. ROBISON are the Trustees of said Trust.

17. Plaintiffs are informed and believe, and thereon allege that defendant COMMONWEALTH LAND TITLE COMPANY (hereinafter "COMMONWEALTH") is a California corporation and, at all times herein relevant, was and is doing business within the County of San Diego.

18. At all times herein relevant, including at the time of the filing of this Complaint, COMMONWEALTH was and is the Trustee set forth in the Deed of Trust. As set forth below, Plaintiffs contend that the Deed of Trust is no longer valid. However, Plaintiffs named COMMONWEALTH as a defendant in this action for notice purposes only. Presently, Plaintiffs do not set forth any Claim against COMMONWEALTH.

19. The true names and capacities of defendants DOES 1 through 100 inclusive, are unknown to plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the defendants herein designated as a DOE is responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby as hereinafter alleged.

20. Plaintiffs are informed and believe and thereon allege, that at all times

herein mentioned, each of the defendants was the agent, servant and employee of each of the remaining defendants, and at all times herein mentioned, each was acting within the purpose and scope of said agency, service and employment.

21. Whenever this complaint references acts and/or omissions of any defendant or defendants, such allegation shall be deemed to mean the act and/or omission of those defendants named in the particular cause of action and each of them acting, individually, jointly and severally.

22. Plaintiffs are informed and believe and thereon allege, that at all times herein mentioned, defendants and each of them conspired with each other to commit the acts herein complained of or were otherwise joint venturers or engaged in a joint enterprise the object of which was to covert the built up equity in Plaintiffs' home, i.e. the Paseo Temporada property. Accordingly, each and every defendant is directly liable for the acts and/or omissions of the other defendants committed in the furtherance of the conspiracy or for the benefit of the joint venture.

## IV.

## FACTUAL ALLEGATIONS

23. In the early 1980s, Mr. and Ms. Richardson purchased their home at 9589 Paseo Temporada, San Diego, California 92129. From that date, Plaintiffs have continuously resided at this address. The home located at 9589 Paseo Temporada is the Plaintiffs' principle dwelling.

24. Over the course of the last twenty-seven (27) years, the Richardsons paid the mortgage for their home at Paseo Temporada in anticipation of having a secure place for their retirement.

25. Mr. Richardson was the sales manager at Mossey Toyota but was forced to retire in early 2007 and seek disability from the State of California and the Social Security Administration. Mr. Richardson has chronic diabetes.

26. Ms. Richardson is bipolar and legally blind. She was a welfare case worker for the County of San Diego before her retirement approximately four (4) years

ago. She presently receives a pension and Social Security payments.

27. In late 2006, Mr. Richardson was hospitalized for approximately two (2) weeks due to kidney failure. In or about November 2006, he was transferred to a convalescent hospital to recover from his hospital stay. During that period of time, at the urging of his health care provider, he signed a Power to Attorney, granting general powers to his wife, RUTH A. RICHARDSON and his son, defendant ALPHONSO RICHARDSON, JR. (hereinafter "Alphonso Jr.").

28. In early to mid 2007, after Mr. Richardson retired, he began to receive telephone calls from the lender with whom he had a line of credit, Beneficial, regarding the re-financing of his property. Mr. Richardson told Beneficial and Alphonso Jr. that he did not want to refinance the property. He received no further telephone calls from Beneficial.

29. At that time, Plaintiffs were paying a first mortgage with Citimortgage at a rate of approximately $1,200.00 a month. They only had three (3) years left to pay on their first. They also had a second mortgage with Select Portfolio Servicing and were paying at a rate of approximately $900.00 a month.

30. Upon information and belief, in or about early or mid 2007, Defendant Alphonso Junior began to conspire with Defendants real estate brokers Klein and Layton and certain DOES to tap the built-up equity and appreciation in the Richardsons' home and to generate commissions. However, due to Plaintiffs' advanced age, disabilities and limited income, said Defendants were unable to find a conventional lender to re-finance the property. Upon information and belief, at that time, the Robison defendants, defendant Cheroske and certain DOES joined the conspiracy. Said defendants agreed to provide a hard-money loan regardless of Plaintiffs ability to repay, knowing that they would foreclose on the property when Plaintiffs were unable to pay the monthly payment or the $300,000 balloon payment due five (5) after the Note was signed.

31. At a certain point of time during the re-financing process, Defendants, and each of them, realized that they could not complete the transaction unless they also had

Ms. Richardson's Power of Attorney. Accordingly, as part of the above-described conspiracy, defendant ALPHONSO JR., on July 15, 2007, convinced his bi-polar and legally blind mother to sign a Power of Attorney over in his favor.

32. In or about late July or early August 2007, at the time when Mr. Richardson was not receiving dialysis treatments and was at home, Defendants ALPHONSO JR., LAYTON, BLANCHE L. ROBISON and certain DOES, came to the Richardson home in order to inspect it. Mr. Richardson stated to said Defendants that he did not approve of any re-financing of the home. The defendants left without inspecting the home. However, upon information and belief, the defendants returned to the property at a later date in order to conduct the inspection while Mr. Richardson was aware undergoing dialysis.

33. The Richardsons did not find out that their house had been re-financed on August 17, 2007 until approximately one (1) week later when they received an itemized Statement in the mail. The re-finance constitutes consumer credit. Mr. Richardson first called Beneficial, who told him that they had not re-financed the home but to call the escrow company. Mr. Richardson then called defendant COMMONWEALTH who told him that the deal was done and it was too late to rescind it. Mr. Richardson also called Bank of America in order to stop the payment to Alphonso Junior but found out that the money had already been wired to Junior's personal account.

34. As part of the re-finance, defendants ALPHONSO JR., KLEIN, LAYTON and certain DOES failed to negotiate a tax lien owed by the Richardsons to the United States Treasury. Instead, they paid it off at 100% value for $86.974.70 in order to assure that escrow closed before it was discovered by Plaintiffs. Plaintiffs are presently seeking a refund from the Treasury for over-payment of taxes.

35. As part of the re-finance, the prior two mortgages were paid off. Select Portfolio Servicing was paid $78,272.51 and Citimortgage was paid $42,840.40.

36. Furthermore, as a result of the re-finance, Defendants KLEIN, LAYTON and certain DOES received a brokers commission in the amount of $24,560.00.

37. Moreover, defendants, and each of them, conspired to cause the remaining proceeds to be paid to defendant ALPHONSO JR. by allowing $70,470.11 to be wired to his personal bank account.

38. Defendant ALPHONSO JR., once receiving the proceeds from the loan on or about August 27, 2007, left town.

39. Pursuant to the re-finance agreement, the ROBISON defendants and certain DOES obtained a security interest, namely a Deed of Trust, in Plaintiffs' principle dwelling located at 9589 Paseo Temporada, San Diego, California 92129.

40. Upon information and belief, sometime after August 27, 2007, the Robison defendants assigned to Defendant CHEROSKE fifty percent (50%) of their security interest.

41. Only after receiving a request for payment from the ROBISON defendants did the Plaintiffs discover that they were now obligated to pay monthly payments in the amount of $2,808.25, which was approximately $700.00 more a month than they were previously paying. The $2,808.25 monthly payment was for interest only at an ambiguous rate of interest. The Richardsons also discovered that they would owe a balloon payment 60 months after the close of escrow in the amount of $300,029.28, an amount that Defendants obviously knew Plaintiffs could never be able pay given their retirement, advanced age and disabilities.

42. Other than the itemized statement received in the mail approximately one (1) week after the re-finance was finalized, Plaintiffs did not to receive any documents from the any other source regarding the refinance of their home until approximately mid-October, 2007 when defendant LAYTON dropped off copies at their home and attempted to collect the first payment with a late charge.

43. Predictably, Plaintiffs began to have difficulty making the monthly payment from the onset.

44. On or about February 5, 2008, Defendant STATEWIDE served Plaintiffs with a Notice of Default and Election to Sell Under the Trust Deed.

45. Thereafter, Plaintiffs attempted to make payment on the arrears but Defendants have rejected the payments and demand the full amount.

46. On May 15, 2008, defendant STATEWIDE as agent for the Robison defendants and Defendant CHEROSKE posted and affixed to a Notice of Sale. Upon information and belief, defendant STATEWIDE caused the Notice of Sale to be recorded on May 9, 2008. The sale is presently scheduled for June 5, 2008. (A true and correct copy attached hereto as Exhibit 1).

47. Plaintiffs not only seek damages as a result of the above-described wrongful conduct, but also seek to enjoin the sell of the property pending the outcome of this litigation.

**V.**

**FIRST CLAIM:**

**VIOLATIONS OF THE TRUTH IN LENDING ACT (15 U.S.C. §§ 1601 *et seq.*)**

**(As to All Defendants except STATEWIDE and COMMONWEALTH)**

48. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

49. The consumer transaction herein described is a high rate mortgage within the meaning of the Home Ownership and Equity Protection Act (hereinafter "HOEPA"), a subsection of the Truth in Lending Act, (15 U.S.C. §§ 1639, 1602(aa)(1)(B)), in that the total "points and fees" as defined in that section that the Robison Defendants and certain DOES charged Plaintiffs exceeded eight percent (8%) of the total loan amount.

50. Upon information and belief, the Robison Defendants and certain DOES, have engaged in a pattern or practice of extending credit to consumers other high rate mortgages, as defined by 15 U.S.C. §1602(aa), based on the consumer's collateral without regard to the consumer's repayment ability, including their current and expected income, current obligations and employment, in violation of 15 U.S.C. §1639(h).

51. Upon information and belief, the Robison defendants and certain DOES, obtained no documentation of the Plaintiffs' income source or ability to pay. Rather, on

the date that the escrow closed, the Robison defendants and certain DOES, accepted via their agents Defendants Klein and Layton and certain DOES, the Uniform Residential Loan Application, dated August 17, 2007 and signed by defendant ALPHONSO JR. in which amounts of income from retirement and disability were erroneously stated. Moreover, the total liabilities were understated.

52. Also, in violation of the Truth in Lending Act ("TILA" hereinafter), the defendants failed to provide, prior to the close of escrow, a Good Faith Estimate as required by TILA. (15 U.S.C. §1638(b)(2); Reg. Z §226.19(a)(1)).

53. Plaintiffs believe and thereon allege that the Robison defendants, Defendants Cheroske, Klein, Layton and Alphonso Jr. and certain DOES conspired to acquire the appreciation and equity in Plaintiffs' Paseo Temporada residence by mis-using the Powers of Attorney in Alphonso Junior's control in order to re-finance the residence above and beyond any legitimate need of Plaintiffs or Plaintiffs' ability to pay. The object of said conspiracy was to generate broker's fees for Defendants Klein and Layton and certain DOES, $70,000+ cash to Alphonso Junior and a security interest to the Robison defendants with the right of non-judicial foreclosure.

54. Because the transaction described herein met the HOEPA definition of high rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three (3) days in advance of consummation of the transaction. (15 U.S.C. §1639(b)).

55. The Robison defendants and certain DOES, via their agents Defendants Klein and Layton and certain DOES, did not furnish the required HOEPA disclosures to Plaintiffs three (3) days prior to the consummation of the transaction.

56. Moreover, the disclosures that The Robison defendants and certain DOES, via their agents Defendants Klein and Layton and certain DOES, untimely provided were deficient as follows:

a. The finance charge was miscalculated;

b. The Annual Percentage Rate was miscalculated;

c. More than one (1) interest rate was stated;

d. The HOEPA warnings were not in a conspicuous typeset;

e. No notice was provided that either of the joint owners could unilaterally cancel; and

e. two (2) copies were not provided per borrower.

57. Additionally, the miscalculated finance charge and Annual Percentage Rate constitute a separate TILA violation for failure to make material disclosures. (15 U.S.C. §1638; Reg. Z §§ 226.17-226.24).

58. As a result of the above-referenced violations of HOEPA and TILA, Plaintiffs retained the right to rescind the transaction up to three (3) years after its consummation.

59. On April 24, 2008, Plaintiffs rescinded the transaction by sending a notice of rescission, a true and correct copy of which is attached hereto as Exhibit 2, to the Robison defendants, via certified and regular mail, and carbon copies to defendants KLEIN, LAYTON, and STATEWIDE.

60. The Robison defendants received Plaintiffs' Notice of Rescission on April 25, 2008.

61. More than twenty (20) days have passed since Plaintiffs rescinded the transaction and the Robison defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2). In addition, the Robison defendants have failed to return to Plaintiffs any money or property given by the Plaintiffs to anyone, including the Robison defendants, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2).

62. On February 5, 2008, prior to Plaintiffs' rescission of this transaction, the Robison defendants had instituted a foreclosure action against the Plaintiffs via a Notice of Default and Election to Sell Under Deed of Trust. (Exhibit 3).

63. As a direct and proximate result of defendants' violations of HOEPA and

TILA plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

64. Defendants, and each of them, are also liable for payment of three times the statutory damages for their violations of HOEPA and TILA. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

65. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

66. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

**VI.**

**<u>SECOND CLAIM</u>:**

**VIOLATIONS OF CALIFORNIA'S PREDATORY LENDING LAW**

**(Cal. Financial Code §§ 4970 *et seq.*)**

**(As to All Defendants except STATEWIDE and COMMONWEALTH)**

67. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

68. The above-described transaction is a covered loan pursuant to California's Predatory Lending Law in that the loan amount does not exceed $417,000.00 and the total points and fees payable by Plaintiffs at or before closing for the mortgage exceeded six percent (6%) of the total loan amount. (Cal. Fin. Code §4970(b)).

69. The above-described transaction is a consumer loan in that it is a consumer

credit transaction that is secured by Plaintiffs' principle dwelling located in this state. (Cal. Fin. Code §4970(d)).

70. The Robison defendants, defendants KLEIN, LAYTON and certain DOES originated the consumer loan pursuant to the California Predatory Lending Law insofar as they arranged, negotiated or made the consumer loan. (Cal. Fin. Code §4970(g)).

71. The Defendants, and each of them, violated the Predatory Lending Law. Said violations include, but are not limited to, the following violations of the California Financial Code §4973:

a. The transaction is for a term of five (5) years but does not fully amortize the principle balance as of the maturity date of the loan, i.e., a balloon payment is due after five (5) years. (Cal. Fin. Code §4973(b)(1));

b. The defendants, and each of them, did not have a reasonable belief that the Plaintiffs would be able to make the scheduled payments in order to repay the obligation based upon the Plaintiffs' income and expenses at the time the loan was funded. (Cal. Fin, Code §4973(f)(1));

c. The transaction did not result in an identifiable benefit to the Plaintiffs. (Cal. Fin. Code §4973(j));

d. The defendants failed to give Plaintiffs the mandatory "Consumer Caution and Home Ownership Counseling Notice" three (3) days prior to the signing of the loan documents. (Cal. Fin. Code §4973(k)(1)); and

e. The defendants, and each of them, acted in a manner that constitutes fraud. (Cal. Fin. Code §4973(n)).

72. As a direct and proximate result of defendants' violations of California's Predatory Lending Law, plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

73. Defendants, and each of them, are also liable for payment of three times the statutory damages for their violations of California's Predatory Lending Act. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled

persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

74. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to Civil Code §3294 as against all defendants. (Cal. Fin. Code §4978(b)(2)).

75. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

76. Defendants are jointly and severably liable for their violations of California's Predatory Lending Law pursuant to California Financial Code §4974(b).

**VII.**

**<u>THIRD CLAIM</u>:**

**VIOLATIONS OF CALIFORNIA'S REAL ESTATE LICENSING REGULATIONS (Cal. Bus. & Prof. Code §10240 *et seq.*)**

**(As to Defendants KLEIN, LAYTON and certain DOES)**

77. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

78. Defendants KLEIN, LAYTON and certain DOES violated California's Real Estate Licensing Regulations (Cal. Bus. & Prof. Code §10240 *et seq.*). Defendants', and each of their, violations of said Regulations include, but are not limited to, their failure to timely deliver a legally compliant Good Faith estimate as required by Cal. Bus. & Prof. Code §10240(a).

79. Insofar as the Defendants, and each of them, violated Cal. Bus. & Prof. Code §10240, the loan was negotiated in violation of the Regulations.

80. On April 7, 2008, Plaintiffs mailed a written demand for the return of the

commission to the attorney for defendants Klein and Layton. (Exhibit 4).

81. More than twenty (20) days have passed since Plaintiffs demanded the return of the commission and no commission has been returned.

82. As a direct and proximate result of defendants' violations of California's Real Estate Licensing Regulations plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

83. Defendants, and each of them, are also liable for payment of three times the statutory damages for their violations of the Real Estate Licensing Regulations. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

84. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

85. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## VIII.

## FOURTH CLAIM: BREACH OF FIDUCIARY DUTY

### (As to All Defendants except STATEWIDE and COMMONWEALTH)

86. Plaintiffs hereby incorporate by reference paragraphs 1 through 85 as set forth above.

87. The duty of a real estate broker to his or her principle is fiduciary in nature. A broker's fiduciary duties include, but are not limited to, full and complete disclosure of any and all material facts, including facts related to the suitability of a sale or purchase of

real estate, to represent an uphold the interest of the principle above and beyond the interest of the agent/broker, and to deal in good faith and fairly and honestly with the principle.

88. In or about mid 2007, defendants KLEIN, LAYTON and certain DOES became the fiduciaries of Plaintiffs when they entered into an arrange to re-finance Plaintiffs' resident through defendant Alphonso Junior who held the Plaintiffs' Powers of Attorney. Accordingly, Defendants owed plaintiffs a duty to completely and fully disclose all material facts, to advise plaintiffs on the suitability of the transactions involved, and to put the plaintiffs' interests above and beyond their own interests.

89. At all times herein relevant, the Robison defendants, Defendants Cheroske and Alphonso Jr. and certain DOES were co-adventurers, and/or co-conspirators with all other Defendants herein.

90. Defendants, and each of them, breached the fiduciary duties that they owed plaintiffs as more fully set forth above. The entire transaction was unsuitable for Plaintiffs. Plaintiffs were not seeking to re-finance their residential property. They were elderly and disabled and would not have qualified for a conventional loan. Defendants, and each of them, failed to account for Plaintiffs' inability to pay before offering the re-financing. Rather, Defendants conspired with Defendant Alphonso Junior to go forward with the re-finance despite knowing that the Plaintiffs did not approve of the refinance and would be unable to pay the monthly payments and the $300,000 balloon payment at the end of five (5) years. The object of the conspiracy was for Defendants to generate broker's fees and commissions and cash out to Alphonso Junior. Upon information and belief, the Robison defendants and defendant Cheroske joined the conspiracy when they offered to finance the transaction without proof of ability to paying, knowing that they could foreclosure on the property and obtain the equity over and above the amount of the Balloon Note.

91. Defendants, and each of them, failed to exercise reasonable skill, care and due diligence with regard to advising Plaintiffs about the suitability of the re-finance

transaction.

92. As a direct and proximate result of defendants', and each of their, breach of fiduciary duties, Plaintiffs have been injured and sustained damages in an amount to be proven at the time of trial.

93. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

94. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## IX.

## FIFTH CLAIM: CONSTRUCTIVE FRAUD (Cal. Civil Code §1573)

## (As to All Defendants except STATEWIDE and COMMONWEALTH)

95. Plaintiffs hereby incorporate by reference paragraphs 1 through 94 as set forth above.

96. California Civil Code §1573 provides: "Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or 2. In any such act or omission as the law specifically declares to be fraudulent, without respect to actual fraud."

97. At all times herein relevant, Defendants Klein, Layton and certain DOES were fiduciaries to Plaintiffs.

98. At all times herein relevant, the Robison defendants, Defendant Alphonso Junior and certain DOES were co-adventurers, and/or co-conspirators with all other Defendants herein.

99. Defendants, and each of them, breached the fiduciary duties that they owed plaintiffs as more fully set forth above. The entire transaction was unsuitable for Plaintiffs. Plaintiffs were not seeking to re-finance their residential property. They were elderly and disabled and would not have qualified for a conventional loan. Defendants, and each of them, failed to account for Plaintiffs' inability to pay before offering the re-financing. Rather, Defendants conspired with Defendant Alphonso Junior to go forward with the re-finance despite knowing that the Plaintiffs did not approve of the refinance and would be unable to pay the monthly payments and the $300,000 balloon payment at the end of five (5) years. The object of the conspiracy was for Defendants to generate broker's fees and commissions and cash out to Alphonso Junior. Upon information and belief, the Robison defendants and defendant Cheroske joined the conspiracy when they offered to finance the transaction without proof of ability to paying, knowing that they could foreclosure on the property and obtain the equity over and above the amount of the Balloon Note.

100. Defendants, and each of them, failed to exercise reasonable skill, care and due diligence with regard to advising Plaintiffs about the suitability of the re-finance transaction.

101. Pursuant to the above-described breaches of fiduciary duty, Defendants, and each of them, regardless of fraudulent intent, gained an advantage over Plaintiffs in that Defendants collected substantial commissions from the re-financing of the subject property, received cash from the transaction and obtained a security interest in said property.

102. As a direct and proximate result of defendants', and each of their, constructive fraud, Plaintiffs have been injured and sustained damages in an amount to be proven at the time of trial.

103. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to

California Civil Code §3294 as against all defendants.

104. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

**X.**

**SIXTH CLAIM: NEGLIGENCE**

**(As to All Defendants except STATEWIDE and COMMONWEALTH)**

105. Plaintiffs hereby incorporate by reference paragraphs 1 through 91 as set forth above.

106. The duty of a real estate broker to his or her principle is fiduciary in nature. A broker's fiduciary duties include, but are not limited to, full and complete disclosure of any and all material facts, including facts related to the suitability of a sale or purchase of real estate, to represent an uphold the interest of the principle above and beyond the interest of the agent/broker, and to deal in good faith and fairly and honestly with the principle.

107. In or about mid 2007, defendants KLEIN, LAYTON and certain DOES became the fiduciaries of Plaintiffs when they entered into an arrange to re-finance Plaintiffs' resident through defendant Alphonso Junior who held the Plaintiffs' Powers of Attorney. Accordingly, Defendants owed plaintiffs a duty to completely and fully disclose all material facts, to advise plaintiffs on the suitability of the transactions involved, and to put the plaintiffs' interests above and beyond their own interests.

108. At all times herein relevant, the Robison defendants, Defendants Cheroske and Alphonso Jr. and certain DOES were co-adventurers, and/or co-conspirators with all other Defendants herein.

109. Defendants, and each of them, breached the fiduciary duties that they owed plaintiffs as more fully set forth above. The entire transaction was unsuitable for

Plaintiffs. Plaintiffs were not seeking to re-finance their residential property. They were elderly and disabled and would not have qualified for a conventional loan. Defendants, and each of them, failed to account for Plaintiffs' inability to pay before offering the re-financing. Rather, Defendants conspired with Defendant Alphonso Junior to go forward with the re-finance despite knowing that the Plaintiffs did not approve of the refinance and would be unable to pay the monthly payments and the $300,000 balloon payment at the end of five (5) years. The object of the conspiracy was for Defendants to generate broker's fees and commissions and cash out to Alphonso Junior. Upon information and belief, the Robison defendants and defendant Cheroske joined the conspiracy when they offered to finance the transaction without proof of ability to paying, knowing that they could foreclosure on the property and obtain the equity over and above the amount of the Balloon Note.

110. Defendants, and each of them, failed to exercise reasonable skill, care and due diligence with regard to advising Plaintiffs about the suitability of the re-finance transaction.

111. As a direct and proximate result of defendants', and each of their, negligent breach of fiduciary duties, Plaintiffs have been injured and sustained damages in an amount to be proven at the time of trial.

112. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

///

///

///

///

///

## XI.

## SEVENTH CLAIM: VIOLATIONS OF CALIFORNIA'S FAIR DEBT COLLECTION PRACTICES ACT "THE ROSENTHAL ACT"

**(Cal. Civ. Code §§ 1788 *et seq.*)**

**(As to the ROBISON Defendants and Defendants CHEROSKE, STATEWIDE and certain DOES)**

113. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

114. The Defendants, and each of them, are debt collectors pursuit to the Rosenthal Act.

115. Not only does the Rosenthal Act proscribe certain debt collection activities but, at Civil Code §1788.17, it incorporates certain proscriptions set forth in the federal Fair Debt Collection Practices Act, (15 U.S.C. §§ 1692, *et seq.*).

116. The Defendants, and each of them, violated the Rosenthal Act when they attempted to foreclosure on the subject property. The Notice of Foreclosure that the Defendants caused to be served on the Plaintiffs was deceptive in that neither the Robison defendants nor defendant STATEWIDE has the power to affect a non-judicial sale of the subject property because neither is the equitable owner, i.e., the trustee, of the property. Moreover, the defendants' continued attempt to foreclose on the property following the Plaintiffs' Notice of Recession violates the Rosenthal Act in that the Defendants are attempting to collect a debt that is not legally due. As a matter of law, the rescission extinguished any security interest in the property. They recorded and served a Notice of Sale on May 15, 2008. They also failed to record a Substitution of Trustee in order to affect the sale.

117. As a direct and proximate result of defendants' violations of The Rosenthal Act, Plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

118. Defendants, and each of them, are also liable for payment of three times

the statutory damages for their violations of the Rosenthal Act. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

119. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

120. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## XII.

## EIGHTH CLAIM: DECLARATORY RELIEF

**(As to Each and Every Defendant Herein)**

121. Plaintiffs hereby incorporate by reference paragraphs 1 through 120 as set forth above.

122. Plaintiffs are now, and at all times relevant to this complaint were, married and joint tenants with right of survivorship of certain real property commonly known as 9589 Paseo Temporada, San Diego, California 92129. The legal description of the subject property is attached as Exhibit 5 and incorporated herein by reference. The assessor's parcel number is 315-368-09-00.

123. Unbeknownst to Plaintiffs, a Deed of Trust regarding the above-described property was signed and notarized on August 17, 2007 and recorded on August 24, 2007. (Attached hereto as Exhibit 6 and incorporated herein by reference is a true and correct copy). The Deed of Trust identifies the Robison defendants as the Lender and Defendant COMMONWEALTH as the Trustee. Defendant STATEWIDE is not identified in the

Deed of Trust. Defendant STATEWIDE is not mentioned in the Deed of Trust or any subsequently recorded document.

124. The above-described Deed of Trust is the security for the Balloon Note that was also signed and notarized on August 17, 2007 and recorded on August 24, 2007. (Attached hereto as Exhibit 7 and incorporated herein by reference is a true and correct copy).

125. Upon information and belief, after the recording of the Deed of Trust and the Balloon Note, the Robison defendants assigned to defendant CHEROSKE fifty percent (50%) interest in the transaction.

126. On February 6, 2008, the Robison defendants and Cheroske caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust. (Attached hereto as Exhibit 3 and incorporated herein by reference is a true and correct copy). Defendant STATEWIDE recorded the Notice of Default for said Defendants.

127. On April 24, 2008, Plaintiffs rescinded the transaction by sending a notice or rescission, a true and correct copy of which is attached hereto as Exhibit 2, to the Robison defendants, via certified and regular mail, and carbon copies to defendants KLEIN, LAYTON, and STATEWIDE.

128. The Robison defendants received Plaintiffs' Notice of Rescission on April 25, 2008.

129. More than twenty (20) days have passed since Plaintiffs rescinded the transaction and the Robison defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2). In addition, the Robison defendants have failed to return to Plaintiffs any money or property given by the Plaintiffs to anyone, including the Robison defendants, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2).

130. The Robison defendants and defendants Cheroske and Statewide have indicated that they will not honor the rescission by taking appropriate action to reflect the

termination of the security interest. Indeed, on May 15, 2008, they caused to be posted a Notice of Sale regarding the Plaintiffs' home and have set the sale for June 5, 2008.

131. Plaintiffs desire a judicial determination and declaration of Plaintiffs' and Defendants' respective rights and duties regarding the validity of the rescission. Such a declaration is appropriate at this time so that Plaintiffs may determine their rights and duties before the Defendants attempt to sell the property in foreclosure.

## XIII.

## <u>NINTH CLAIM</u>: INJUNCTIVE RELIEF

## (As to Each and Every Defendant Herein)

132. Plaintiffs hereby incorporate by reference paragraphs 1 through 131 as set forth above.

133. The Robison defendants and Defendants Cheroske, Statewide and certain DOES intend to sell, and unless restrained will sell or cause to be sold, the subject property, all to Plaintiffs' great and irreparable injury in that if the sale takes place Plaintiffs will forever loss their home. A Notice of Sale regarding Plaintiffs' home was recorded on May 9, 2008 and posted on May 15, 2008, setting the date of sale for June 5, 2008.

134. Plaintiffs have no other plain, speedy, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at the time to prevent irreparable loss to Plaintiffs' interests.

WHEREFORE, plaintiffs respectfully pray for relief as set forth below:

1. Rescission of the transaction, including a declaration that the Plaintiffs are not liable for any finance charges or other charges imposed by Defendants;

2. A declaration that the security interest in Plaintiffs' property created under the transaction is void, and an order requiring Defendants to release such security interest;

3. Return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with the transaction;

4. Actual damages, including economic and non-economic damages;

5. Statutory damages and/or penalties consisting of an Order that defendants pay $2,000.00 to Plaintiffs for each and every violation of HOEPA and TILA; $15,000.00 pursuant to California's Predatory Lending Law, (Cal. Fin. Code §4978(a)); and $5,000.00 pursuant to California's Fair Debt Collection Practices Act (Cal. Civil Code §1788.30(b);

6. The greater of actual damages or twice the amount of the brokers commission pursuant to California's Real Estate License Regulations (Cal. Bus. & Prof. Code §10248.2(b));

7. Additional damages pursuant to 15 U.S.C. §1640(a)(4) in the amount of all finance charges and fees paid by Plaintiffs, for each non-disclosure violation;

8. An Order that, because Defendants failed to act in response to Plaintiffs' Notice of Rescission, Plaintiffs have no duty to tender the loan proceeds to Defendants, or in the alternative, if tender is required, a determination of the amount of the tender is required, a determination of the amount of the tender obligation in light of all of Plaintiffs' claims, and an Order requiring the Defendants to accept tender on reasonable terms and over a reasonable period of time;

9. Enhanced remedies pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Cal. Welfare & Institutions Code §§ 15600);

10. Enhanced damages for elderly and disabled persons pursuant to Cal. Civil Code §3345;

11. Punitive damages pursuant to Cal Civil Code §3294;

12. Reasonable attorneys fees and costs pursuant to 15 U.S.C. §1640(a)(2)(A)(3); Cal. Fin. Code §4978(a); Cal. Bus. & Prof. Code §10248.2(b), Cal. Civil Code §1788.30(c);

13. Pre- and post-judgment interest, as to each and every defendant, jointly and severally;

///

///

14. Any and all other relief that the Court may deem proper and just.

DATED: May 20, 2008

BARRY D. MILLS
Attorney at Law

By: [signature]
BARRY D. MILLS,
Attorney for Plaintiffs

Plaintiffs hereby demand a jury trial in the above-entitled action.

DATED: May 20, 2008

BARRY D. MILLS
Attorney at Law

By: [signature]
BARRY D. MILLS,
Attorney for Plaintiffs

## EXHIBITS - TABLE OF CONTENTS

Exhibit 1: Notice of Trustee's Sale Under Deed of Trust, dated May 8, 2008 . . . 001-002

Exhibit 2: Notice of Rescission (letter dated April 24, 2008) . . . . . . . . . . . . . . . . 003-004

Exhibit 3: Notice of Default and Election to Sell, dated February 5, 2008 . . . . . . 005-007

Exhibit 4: Letter dated April 7, 2008 (Cal. Bus. & Prof §10248.2 written demand) . . . 008

Exhibit 5: 8589 Paseo Temporada, San Diego - Legal description . . . . . . . . . . . . . . . . 009

Exhibit 6: Deed of Trust, dated August 17, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . 010-025

Exhibit 7: Balloon Note, dated August 17, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . 026-028

RECORDING REQUESTED BY
STATEWIDE RECONVEYANCE GROUP, INC., dba
STATEWIDE FORECLOSURE SERVICES

AND WHEN RECORDED MAIL TO

STATEWIDE RECONVEYANCE GROUP, INC. DBA
STATEWIDE FORECLOSURE SERVICES
P O BOX 2896
LA MESA, CA 91943-2896

---

LOAN: 000628999 OTHER: 1083793-65 TS:7527 SDS
A.P. NUMBER 315-368-09

# NOTICE OF TRUSTEE'S SALE UNDER DEED OF TRUST

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED August 17, 2007, UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

NOTICE is hereby given that **STATEWIDE RECONVEYANCE GROUP INC., DBA STATEWIDE FORECLOSURE SERVICES** , a California Corporation as trustee, or successor trustee, or substituted trustee pursuant to the Deed of Trust executed by **ALPHONSO RICHARDSON AND RUTH A. RICHARDSON , HUSBAND AND WIFE AS JOINT TENANTS**

Recorded on **08/24/2007** as Instrument No. **2007-0564203** in Book Page of Official records in the office of the County Recorder of **SAN DIEGO** County, California, and pursuant to the Notice of Default and Election to Sell thereunder recorded **02/06/2008** in Book , Page , as Instrument No. **2008-0060290** of said Official Records, WILL SELL on **06/05/2008** at **AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY THE STATUE 250 E. MAIN STREET EL CAJON, CA** at **10:00 A.M.** AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at the time of sale in lawful money of the United States), all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State and described as follows: **As more fully described on said Deed of Trust.**

**Statewide is considered a debt collector, attempting to collect a debt. Any information obtained will be used for that purpose. Should the Trustee be unable to convey title, for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no other recourse.**

SALE INFORMATION MAY BE OBTAINED, WHEN AVAILABLE, BY CALLING (619) 698-5302 OR YOU MAY REQUEST INFORMATION VIA EMAIL statewideforeclosures@gmail.com OR VIA FAX @ 619-698-4912. FOR THE MOST UP TO DATE AND ACCURATE INFORMATION, YOU MUST ATTEND THE SALE.

The street address and other common designation, if any, of the real property described above is purported to be: **9589 PASEO TEMPORADA SAN DIEGO, CA 92129**
**The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.**

**The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $333,750.72**

**NOTICE OF TRUSTEE'S SALE UNDER DEED OF TRUST**

**LOAN: 000628999** **OTHER: 1083793-65** **FILE: 7527 SDS**
**A.P. NUMBER 315-368-09**

In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. In the event tender other than cash is accepted the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter of right.

Said sale will be made, but without covenant or warranty, express or implied regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed, advances thereunder, with interest as provided therein, and the unpaid principal balance of the Note secured by said Deed with interest thereon as provided in said Note, fees, charges and expenses of the trustee and the trusts created by said Deed of Trust.

Dated: **05/08/2008**

**STATEWIDE RECONVEYANCE GROUP INC.,,** as said Trustee
**DBA STATEWIDE FORECLOSURE SERVICES**
**P O BOX 2896**
**LA MESA, CA, 91943-2896**
**(619)466-6530**

By: **JANET EDWARDS**
**EXEC. VICE PRESIDENT**

**BARRY D. MILLS**
**Attorney at Law**
**3588 Fourth Avenue, Suite 210**
**San Diego, California 92103**
**(619) 295-5000**
**FAX (619) 338-4033**
**MillsLaw@sbcuc.net**

April 24, 2008

**VIA CERTIFIED AND U. S. MAIL, RETURN RECEIPT REQUESTED**

Charles O. Robison
Blanche L. Robison
The Robison Family Trust
5150 Vivera Drive
La Mesa, CA 91941

Statewide Reconveyance Group, Inc. dba
Statewide Foreclosure Services
P.O. Box 2896
San Diego, CA 92119

Re: Alphonso Richardson, Sr. and Ruth A. Richardson

Dear Mr. and Mrs. Robison and Statewide Reconveyance Group, Inc.:

Please be advised that Alphonso Richardson Sr. and Ruth A. Richardson have retained me to represent them regarding the recent re-financing and the pending foreclosure of their property located at 9589 Paseo Temporarda, San Diego, CA 92129. Please refrain from contacting my clients regarding these matters and direct all communication to my office.

This letter constitutes my clients' **Notice of Rescission** pursuant to the federal Truth in Lending Act, (15 U.S.C. §§ 1601 *et seq.*). The re-finance transaction involving my clients' home at 9589 Paseo Temporada qualifies as a high rate mortgage within the meaning of the Home Ownership and Equity Protection Act, or "HOEPA", in that points and fees exceeded eight percent (8%) of the total loan amount. (15 U.S.C. §1639) HOEPA is a subdivision of the Truth in Lending Act. Accordingly, you were required to make disclosures in addition to those required by the Truth in Lending Act. Your violations of the HOEPA and Truth in Lending Act include, but are not limited to:

- failure to make all required disclosures to the borrowers at least three (3) days in advance of the consummation of the transaction. (15 U.S.C. §1639(b));
- miscalculating the finance charge;

- miscalculating the Annual Percentage Rate or "APR";
- stating more than one (1) interest rate (15 U.S.C. §1632 [violation of the clear and conspicuous requirement]);
- not giving the statutory-required warnings in a conspicuous typeset (15 U.S.C. §1639(a)(1), Reg Z, 226.32(c));
- failure to provide a notice that either of the joint owners could unilaterally cancel (Official Staff Commentary §§ 226.15(b)(3), 226.23(b)(1)(iii));
- and failure to provide two (2) copies of the cancellation notice to each borrower (see Reg Z §226.31(e)).

As a result of the above violations, the right to rescind is extended three (3) years from the date of the transaction. (15 U.S.C. §1635; Reg. Z §226.23(a)(3)).

Upon receipt of this Notice, your security interest in 9589 Paseo Temporada, San Diego, California 92129 is terminated as a matter of law. (15 U.S.C. §1635(b); Reg Z §§ 226.15(d)(1); 226.23(d)(1)). Any attempt to foreclose on the property will violate the Truth in Lending Act, various fair debt collection laws and common law rights.

You have twenty (20) days from the receipt of this Notice to return to my clients any monies that you may have received as a result of this transaction and to take action to reflect the legal termination of the security interest such as filing appropriate documents with the County Recorder's office. (15 U.S.C. §1635(b), Reg Z §§ 226.15(d)(1); 226.23(d)(1)).

Should have any questions or comments, please do not hesitate to call.

Very truly yours,

Barry D. Mills

cc: Alphonso Richardson, Sr. and Ruth A. Richardson
David J. Lola, Attorney for Eric A. Klein and Robert H. Layton

Printed on Recycled Paper
20% Post Consumer Waste

EXHIBIT 3

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

STATEWIDE RECONVEYANCE GROUP, INC. DBA
STATEWIDE FORECLOSURE SERVICES
P O BOX 2896
SAN DIEGO, CA 92119

THE ORIGINAL OF THIS DOCUMENT
WAS RECORDED ON FEB 06, 2008
DOCUMENT NUMBER 2008-0060290
GREGORY J. SMITH, COUNTY RECORDER
SAN DIEGO COUNTY RECORDER'S OFFICE
TIME: 11:57 AM

---

LOAN: **000628999** OTHER: FILE: **7527**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE:

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$8,294.00** as of **02/01/2008** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

LOAN: 000628999

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

OTHER #:

FILE: 7527 JJ

TO FIND OUT THE AMOUNT YOU MUST PAY, OR TO ARRANGE FOR PAYMENT TO STOP THE FORECLOSURE, OR IF YOUR PROPERTY IS IN FORECLOSURE FOR ANY OTHER REASON, CONTACT:

**CHARLES O. AND BLANCHE L. ROBISON, TTEES**
**C/O STATEWIDE RECONVEYANCE GROUP, INC.**
**STATEWIDE FORECLOSURE SERVICES**
**P O BOX 2896**
**SAN DIEGO, CA 92119**

**Phone: (619)466-6530**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **STATEWIDE RECONVEYANCE GROUP INC., DBA STATEWIDE FORECLOSURE SERVICES** is duly appointed Trustee and or agent for the Beneficiary under the following described Deed of Trust dated: **08/17/2007**, executed by **ALPHONSO RICHARDSON AND RUTH A. RICHARDSON, HUSBAND AND WIFE AS JOINT TENANTS** as Trustor, to secure certain obligations in favor of **THE ROBISON FAMILY TRUST, CHARLES O. ROBISON AND BLANCHE L. ROBISON, TRUSTEES DATED 04/05/2001**, as Beneficiary, recorded **08/24/2007**, as Instrument No. **2007-0564203** Book Page , of Official Records, in the office of the Recorder of **SAN DIEGO** County, California, describing the land therein: **As more fully described on said Deed of Trust.**

including 1 note(s) for the sum of **$307,000.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in the obligations for which said Deed of Trust is security has occurred in that payment has not been made of
**Failure to make the 12/05/2007 payment of principal and/or interest and all subsequent payments, together with late charges, advances, taxes, delinquent payments on senior liens, or assessments.**

THAT by reason thereof the beneficiary under said Deed of Trust, has executed and delivered to said duly appointed Trustee and or Agent, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee and or Agent, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE: **February 5, 2008**

**STATEWIDE FORECLOSURE SERVICES AS AGENT**
**AND/OR ORIGINAL OR SUBSTITUTED TRUSTEE**
**FAX 619-698-4912 SALE INFO. 619-698-5302**
**statewideforeclosures@gmail.com**

**JANET EDWARDS**
**EXEC. VICE PRESIDENT**

STATEWIDE FORECLOSURE SERVICES
DIVISION OF STATEWIDE RECONVEYANCE GROUP, INC.
PO BOX 2896,LA MESA, CA 91943-2896
(619) 466-6530 FAX (619) 698-4912 SALE LINE (619) 698-5302

February 5, 2008

**Fair Debt Collection Practices Act Notification**

**Dear Debtor,**

**Re: File #: 7527**
**Loan #: 000628999**
**Investor Loan #:**

Pursuant to and in compliance with the Fair Debt Collection Practices Acts (Federal [15 USC 1692] and California [Civil Code § 1788 et seq.]) the Trustee named in the Notice of Default hereby provides the following notification(s):

"We are attempting to collect a debt and any information we obtain will be used for that purpose."

"The debt described in the Notice of Default in the amount of $8,294.00 is assumed to be valid unless debtor disputes within 30 days and that, if disputed, debt collector will obtain and furnish to debtor the verification.

If written request is made within 30 days by debtor, name of original lender will be given if different than the current creditor."

"The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

STATEWIDE FORECLOSURE SERVICES AS AGENT
AND/OR ORIGINAL OR SUBSTITUTED TRUSTEE
FAX 619-698-4912 SALE INFO. 619-698-5302
statewideforeclosures@gmail.com

[signature]

JANET EDWARDS
EXEC. VICE PRESIDENT

Printed on Recycled Paper
20% Post Consumer Waste

**BARRY D. MILLS**
**Attorney at Law**
**3588 Fourth Avenue, Suite 210**
**San Diego, California 92103**
**(619) 295-5000**
**FAX (619) 338-4033**
**MillsLaw@sbcuc.net**

April 7, 2008

VIA FACSIMILE AND U.S. MAIL
(858) 675-7807

David J. Lola
Sunderland McCutchan, LLP
11770 Bernardo Plaza Court, Suite 250
San Diego, CA 92128

Re: *Richardson, et al. v. Klein, et al.*

Dear Mr. Lola:

Thank you for you letter of March 24, 2008 regarding the Consumer Legal Remedies Act Notice and other pre-litigation issues in the above matter. Your point regarding the Consumer Legal Remedies Act was well taken. However, I believe that your clients violated Business & Profession Code §§ 10240 *et seq.* when they failed to provide a Good Faith Estimate including all of the information required by section 10241 and in particular the Balloon Payment disclosure. Pursuant to section 10248.2 my clients hereby make a written demand of your clients, Eric Klein and Robert Layton, for the return of any and all bonus, brokerage or commission that they received regarding the re-finance of 9589 Paseo Temporada, San Diego, California 92129. I am sending you the demand as you indicated in your March 24, 2008 letter to direct all communications to your firm.

Please feel free to send me copies of the entire file in order to show compliance with Business & Professions Code §10240 *et seq.* or the return of the commissions. Otherwise, I intend to include a demand in the Complaint based on violations of Business & Professions Code §10240 *et seq.* I also assume that you are authorized to accept service on behalf of your clients. If you are not, please let me know as soon as possible.

Thank you for your professional courtesy and cooperation in this matter.

Very truly yours,

Barry D. Mills

cc: Alphonso Richardson, Sr. and Ruth A. Richardson

EXHIBIT 5

7

File No: 04310389

6046

# EXHIBIT "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

Lot 257 of Penasquitos Estates Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 8637, filed in the Office of the County Recorder of San Diego County, August 9, 1977.

EXHIBIT 6

5

fil
10P

DOC # 2007-0564203

AUG 24, 2007 12:09 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES: 54.00
PAGES: 15 DA: 1

Recording Requested By:
Commonwealth Land Title Company

2007-0564203

Return To:
Charles Robison

6043

5150 Vivera Dr.
La Mesa, CA 91940

Prepared By:

5150 Vivera Dr.
La Mesa, CA 91941
04310389-51
Apn 315-26809-00

[Space Above This Line For Recording Data]

# DEED OF TRUST

LOAN NO.: 000828889
ESCROW NO.: 04310389 - 044 - CR4

NOTICE: THIS LOAN CONTAINS PROVISIONS THAT ALLOW FOR A BALLOON PAYMENT AT MATURITY.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 17, 2007, together with all Riders to this document.

(B) "Borrower" is
Alphonso Richardson AND Ruth A Richardson, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is 8589 Paseo Temporada, San Diego, CA 92129
Borrower is the trustor under this Security Instrument.

(C) "Lender" is
The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001

~~Lender is a~~
~~organized and existing under the laws of~~

CALIFORNIA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT
V-6(CA) (0207).01



Initials: [signature]
Form 3005 1/01
LENDER SUPPORT SYSTEMS INC. 60CA.NEW (11/06)

010
Ex 6

6044

Lender's address is
5150 Vivera Dr., La Mesa, CA 91941
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is
Commonwealth Land Title Company
(E) "Note" means the promissory note signed by Borrower and dated AUGUST 17, 2007
The Note states that Borrower owes Lender
THREE HUNDRED SEVEN THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X Dollars
(U.S. $ 307,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 06, 2012
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider
☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in

6045

in this Security Instrument. "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of San Diego [Name of Recording Jurisdiction]:

Parcel ID Number: which currently has the address of 9589 Paseo Temporada [Street] San Diego [City], California 92129 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

7

File No: 04310389

6046

# EXHIBIT "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

Lot 257 of Penasquitos Estates Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 8637, filed in the Office of the County Recorder of San Diego County, August 9, 1977.

6047

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

6048

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

6049

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

6050

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

6051

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

6052

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

6053

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

6054

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

6055

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

6056

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

6057

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_______________ -Witness

_______________ -Witness

Alphonso Richardson (Seal) -Borrower
By ALPHONSO RICHARDSON, JR

Ruth A Richardson (Seal) -Borrower
By ALPHONSO RICHARDSON, JR.

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

16

6058

State of CALIFORNIA
County of SAN DIAGO } ss.

On 8-17-2007 before me, MS MARSHALL, NOTARY PUBLIC, Notary Public, personally appeared

Alphonso Richardson, JR ~~Ruth A. Richardson~~ MM

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. , ~~personally known to me~~

WITNESS my hand and official seal.

M. S. MARSHALL
COMM. #1475286
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires Mar. 8, 2008

(Seal)

V-6(CA) (0207).01

Page 15 of 15

Initials: AR

Form 3005 1/01

# BALLOON NOTE
(Fixed Rate)

LOAN NO.: 000628999

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| AUGUST 17, 2007 | San Diego | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

9589 Paseo Temporada, San Diego, CA 92129
[Property Address]

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 307,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 5th day of each month beginning on OCTOBER, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 05, 2012, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Charles Robison 5150 Vivera Dr., La Mesa, CA 91941 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,808.25 .

Initials: ________

4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Initials: [signature]

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| Alphonso Richardson (Seal) -Borrower | Ruth A Richardson (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |

*[Sign Original Only]*

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 151169 - SR**

**May 21, 2008**
**13:01:19**

**Civ Fil Non-Pris**
USAO #.: 08CV0902 CIV. FIL.
Judge..: WILLIAM Q HAYES
Amount.: $350.00 CK
Check#.: BC#1258

**Total-> $350.00**

FROM: RICHARDSON V. ROBINSON, ET AL
CIVIL FILING

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED 08 MAY 21 PM 12:59
CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

## I. (a) PLAINTIFFS

Alphonso Richardson, Sr., and Ruth A. Richardson

(b) County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

Barry D. Mills, Attorney at Law, 3588 4th Avenue, Suite 210, San Diego, CA 92103 (619) 295-5000

## DEFENDANTS

Charles O. Robison, et al. (see Attachment A)

County of Residence of First Listed Defendant San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

(see Attachment A)

'08 CV 0902 WQH BLM

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☒ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
15 U.S.C. 1601

Brief description of cause:
for damages and to enjoin foreclosure based on Truth in Lending Act violations and other claims

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE DOCKET NUMBER

DATE 5/20/2008

SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # 1169 AMOUNT 350.— APPLYING IFP JUDGE MAG. JUDGE

5/21/08

CR

# ATTACHMENT A

| DEFENDANT | COUNTY OF RESIDENCE | ATTORNEY (if known) |
|---|---|---|
| CHARLES O. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001 | San Diego | Duane S. Horning, Esq.<br>California Business Law Group, PC<br>Symphony Towers<br>750 B Street, Suite 1620<br>San Diego, CA 92101 |
| BLANCHE L. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001 | San Diego | Duane S. Horning, Esq.<br>California Business Law Group, PC<br>Symphony Towers<br>750 B Street, Suite 1620<br>San Diego, CA 92101 |
| RICHARD CHEROSKE, individually and as assignee of The Robison Family Trust | San Diego | Duane S. Horning, Esq.<br>California Business Law Group, PC<br>Symphony Towers<br>750 B Street, Suite 1620<br>San Diego, CA 92101 |
| ERIC A. KLEIN | San Diego | David J. Lola, Esq.<br>Sunderland McCutchan LLP<br>11770 Bernardo Plaza Court, Suite 250<br>San Diego, CA 92128 |
| ROBERT H. LAYTON | San Diego | David J. Lola, Esq.<br>Sunderland McCutchan LLP<br>11770 Bernardo Plaza Court, Suite 250<br>San Diego, CA 92128 |
| ALPHONSO RICHARDSON, JR. | Riverside | unknown |

| | | |
|---|---|---|
| STATEWIDE RECONVEYANCE, INC. dba STATEWIDE FORECLOSURE SERVICES, a California corporation | San Diego | unknown |
| COMMONWEALTH LAND TITLE COMPANY, a California corporation | San Diego | unknown |