DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants and Counterclaimants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>NOTICE OF MOTION AND MOTION TO EXPUNGE LIS PENDENS AND AWARD ATTORNEYS' FEES<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

Defendants and Counterclaimants CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001, BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001, and RICHARD CHEROSKE ("Cheroske" and collectively "Lender Defendants"), respectfully

will and hereby do move pursuant to California Code of Civil Procedure sections 405 *et seq.* for an order quashing and expunging the Notice of Pendency of Action ("lis pendens") filed and recorded by Plaintiffs ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON (the "Plaintiffs") on or about July 8, 2008. The motion is made upon the grounds that the Claims stated in Plaintiffs' Complaint do not have probable validity and that all but the First and the Eighth Claims in the complaint do not state a real property claim that warrants the filing and recording of a lis pendens.

The Lender Defendants will and also hereby do seek an order granting the Lender Defendants an award of attorneys fees pursuant to California Code of Civil Procedure section 405.38 to be paid by the Plaintiffs Alphonso Richardson, Sr. and Ruth A. Richardson in that Plaintiffs filed and recorded the lis pendens without substantial justification.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations of Charles O. Robison, Richard Cheroske, Robert Layton, and Duane Horning, the complete files and records of this case, the arguments of counsel, and all other matters as the Court may consider. Also filed herewith is a proposed order for use by the Court. The Defendants request oral argument on this motion.

The motion will be heard in Courtroom 4, before the Honorable William Q. Hayes on September 15, 2008, at 11:00 a.m., or as soon thereafter as the matter may be heard.

DATED: August 6, 2008

CALIFORNIA BUSINESS LAW GROUP, PC

By [signature]
DUANE S. HORNING
Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE,
Defendants and Counterclaimants

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants and Counterclaimants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

# TABLE OF CONTENTS


Page

I. INTRODUCTION. .......... 1

II. FACTUAL BACKGROUND .......... 2

A. The Parties. .......... 2

B. The Richardsons Applied for the Loan. .......... 2

C. The Richardsons Closed the Loan and Received Its Benefits. .......... 3

D. The Richardsons Defaulted on the Loan. .......... 4

E. The Richardsons Application for a TRO to Stop the Foreclosure Was Denied. .......... 5

F. The Property Sold at Foreclosure. .......... 5

G. The Richardsons Vacated the Property. .......... 5

H. The Richardsons Filed a Lis Pendens of the Present Action .......... 5

III. LEGAL STANDARDS FOR EXPUNGING A LIS PENDENS. .......... 6

A. This Motion is Subject to California Law and Timely. .......... 6

B. Only Real Property Claims Are Relevant Here. .......... 6

C. Absent Probable Validity the Lis Pendens Must Be Expunged. .......... 7

D. The Richardsons Have the Burden of Proof. .......... 7

IV. PLAINTIFFS CANNOT PROVE PROBABLE VALIDITY OF ANY REAL PROPERTY CLAIMS. .......... 8

A. The Deed of Trust Could Not Have Been and Was Not Rescinded. .......... 9

1. Neither TILA Nor HOEPA Were Violated. .......... 9

2. There Was No Tender of Loan Proceeds. .......... 10

3. The Equities Weigh Against Rescission. .......... 10

B. The Other Claims in the Complaint Are Not Real Property Claims. .......... 11

V. THE LIS PENDENS PREVENTS DAMAGE MITIGATION .......... 11

VI. AN AWARD OF ATTORNEY'S FEES IS WARRANTED. .......... 12

VII. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## CASES

*Akin v. Certain Underwriters at Lloyd's London*, 140. Cal. App. 4th 291, (2006) ........................ 10

*Bustamante v. First Federal Savings. and Loan Association of San Antonio*, 619 F. 2d 360, 363 (5th Cir. 1980) ........................ 9

*Campbell v. Superior Court*, 132 Cal. App. 4th 904, 910 (2005) ........................ 6, 7

*Gale v. Superior Court*, 122 Cal.App.4th 1388, 1394-5 (2004) ........................ 12

*Hunting World, Inc. v. Superior Court*, 22 Cal. App. 4th 67, 73 (1994) ........................ 7

*Ivey v. U.S. Department of Housing and Urban Development*, 607 F. 2d 1004 (5th Cir. 1979) ........................ 9

*Ivey v. U.S. Dept. of Housing and Urban Development*, 428 F. Supp. 1337, 1343 (D.C.Ga. 1977) ........................ 9

*LaGrone v. Johnson*, 534 F. 2d 1360, 1362 (9th Cir. 1976) ........................ 10

*New York Life Insurance Company v. Occidental Petroleum Corporation and Leal Garbett*, 43 Cal.App.2d 747, 751 (1941) ........................ 9

*Orange County v. Hongkong and Shanghai Banking Corp. Ltd.*, 52 F. 3d 821, 824 (9th Cir. 1995) ........................ 7

*Trapasso v. Sup. Ct. (Majdali)* 73 Cal. App. 3d 561, 570 (1977) ........................ 12

*U.S. v. Calcasieu Timber Co.*, 236 F. 196, 198 (5th Cir. 1916) ........................ 6

*Urez Corp. v. Superior Court*, 190 Cal. App. 3d 1141, 1149 (1987) ........................ 7

*Yamamoto v. Bank of New York*, 329 F. 3d 1167, 1171 (9th Cir. 2003) ........................ 10

## STATUTES

15 U.S.C. § 1601 (West 2008) ........................ 8

15 U.S.C. § 1602 (West 2008) ........................ 8, 9

15 U.S.C. § 1635 (West 2008) ........................ 10

15 U.S.C. § 1639 (West 2008) ........................ 8

Cal. Bus. & Prof. Code §§ 10240 et seq. (West 2008) ........................ 11

Cal. Civ. Code § 2330 (West 2008) ........................ 9

Cal. Civ. Code § 3533 (West 2008) ........................ 9

Cal. Code Civ. Proc. § 405.3 (West 2008) ........................ 7

Cal. Code Civ. Proc. § 405.4 (West 2008) .......... 6, 8
Cal. Code Civ. Proc. § 405.5 (West 2008) .......... 6
Cal. Code Civ. Proc. § 405.31 (West 2008) .......... 6
Cal. Code Civ. Proc. § 405.32 (West 2008) .......... 7
Cal. Code Civ. Proc. § 405.38 (West 2008) .......... 12
Cal. Finance Code § 4978 (West 2008) .......... 11

Defendants and Counterclaimants CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001, BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001, and RICHARD CHEROSKE, respectfully submit the following Memorandum of Points and Authorities in Support of Motion to Expunge Lis Pendens.

## I. INTRODUCTION.

This motion is to clear title to real property that is improperly clouded by a Notice of Pendency of Action, also known as a lis pendens.

Plaintiffs applied for and received the benefits of a $307,000 loan secured by a deed of trust on real property. They borrowed the money from the retirement fund of two elderly individuals. The plaintiffs then quickly defaulted, and attempted to stop the resulting foreclosure of the real property by seeking a TRO. The Court denied the TRO application because plaintiffs failed to show likelihood of success on the merits. The foreclosure sale went forward and the plaintiffs vacated the property.

Plaintiffs have now clouded title to the property by recording a lis pendens, which this motion seeks to expunge. To maintain a lis pendens, plaintiffs have the burden of proving that they have claims involving title to real property that will probably succeed on the merits. They cannot meet their burden.

Plaintiffs' claims to a real property interest depend on a purported rescission of the deed of trust, and unwinding the subsequent foreclosure sale. These claims fail for at least two independent reasons. First, plaintiffs' claims are predicated on an alleged lack of certain required loan disclosures. That allegation is demonstrably false. The disclosures were given and receipts for them acknowledged. There could be no valid rescission because there was no defect in the loan disclosures.

Second, even if there was some defect in the loan disclosures (which there was not), plaintiffs could not rescind because they did not and could not tender return of the loan proceeds to the lenders. Plaintiffs essentially want the property back free and clear, while keeping the benefits of the loan proceeds. Rescission depends on restoring all parties to their pre-contract

position *status quo ante*, which would require return of the loan proceeds. Without this critical element, there could not have been any valid rescission. The deed of trust remained in effect. The foreclosure sale was valid and proper. The plaintiffs cannot prove probability of success on the merits which the lis pendens statutes require to keep the lis pendens from being expunged.

The lenders now properly have title and possession to the property. But they cannot sell it and mitigate their losses from this defaulted loan because title is improperly encumbered by Plaintiffs' lis pendens. The lis pendens should be expunged.

## II. FACTUAL BACKGROUND

### A. The Parties.

Plaintiffs and Counterdefendants ALPHONSO RICHARDSON, SR. and RUTH RICHARDSON ("Richardsons" or "Plaintiffs") are individuals who borrowed $307,000.

Defendant ALPHONSO RICHARDSON, JR. ("Junior") is the Richardsons' son. To obtain the subject loan, the Richardsons appointed Junior as their agent and attorney in fact with broad general powers, including authority to do all things necessary to obtain the loan on their behalf. Exs. A and B to Declaration of Charles Robison ("Robison Decl.") ¶ 4.

Defendants and Counterclaimants the Robisons and Richard Cheroske ("Lender Defendants") are three individuals, ages 81, 76 and 77. Robison Decl. ¶ 2; Declaration of Richard Cheroske ("Cheroske Decl.") ¶ 2. Charles Robison is partially disabled due to a back injury and operation that resulted in nerve damage to his legs. Robison Decl. ¶ 2. The Robisons made the original $307,000 loan to the Richardsons. Robison Decl. ¶ 5. The Robisons later sold a 50% interest in the loan to Cheroske. Cheroske Decl. ¶ 4. Mr. Cheroske's wife suffers from Parkinson's Disease. Cheroske Decl. ¶ 2.

Defendant ROBERT LAYTON ("Layton") assisted in arranging the Loan and represented the Richardsons in the transaction. Declaration of Robert Layton ("Layton Decl.") ¶ 2-3.

### B. The Richardsons Applied for the Loan.

In July 2007, the Richardsons were seeking to refinance their property located at 9589 Paseo Temporada, San Diego, California ("Property"). Layton Decl. ¶ 2. The Property is two stories, and has no tub or shower facilities downstairs. Cheroske Decl. ¶ 7. Ruth Richardson

reportedly was not able, or able only with difficulty, to access the bath facilities on the second floor. Layton Decl. ¶ 4. In addition, a tax lien had attached to the Property because the Richardsons failed to pay five years of income taxes. *Id.* at ¶ 3.

The Richardsons applied to borrow approximately $307,000 to pay off the tax liens, fix up and sell the property, and move into another property more accommodating of Ruth Richardsons' needs. Layton Decl. ¶ 3-4. The Richardsons executed powers of attorney authorizing their son, Junior, to complete this transaction for them. Exs. A and B to Robison Decl. ¶ 4; Layton Decl. ¶ 3. The Richardsons submitted a loan application and an appraisal. Robison Decl. ¶ 3.

The Richardsons' loan package was presented to the Robisons. All the documentation appeared to be in order. Robison Decl. ¶ 3. The Richardsons' monthly income was reported to be $7,155.00. *Id.* The loan's monthly payment was expected to be $2,808.25. Layton Decl. ¶ 6. This income appeared to be more than adequate for the Richardsons to meet their monthly needs and monthly payments on the loan they requested. Robison Decl. ¶ 3; Layton Decl. ¶ 6. The credit report was not outstanding but appeared to be adequate. Robison Decl. ¶ 3. The loan documentation included the notarized powers of attorney for the Richardsons naming Junior as agent and attorney in fact with general powers. Exs. A and B to Robison Decl. ¶¶ 4, Layton Decl. ¶ 6.

In reliance on the information and documents provided by the Richardsons, the Robisons agreed to lend the $307,000 the Richardsons requested ("Loan"). Robison Decl. ¶ 5.

**C. The Richardsons Closed the Loan and Received Its Benefits.**

The Richardsons, through Junior as their agent and attorney-in-fact, executed all of the applicable loan documents including documents acknowledging receipt of all required disclosures and rights of rescission, a promissory note in the original principal amount of $307,000 in favor of the Robisons ("Note"), and a Deed of Trust securing the Note ("Deed of Trust"). Exs. C and D to the Layton Decl. ¶¶ 8-10. *See also*, Ex. E to Layton Decl.

The Richardsons claim they did not know about the Loan until after it was closed. Compl. ¶ 33. However, this allegation is contradicted by other allegations in their Complaint that they spoke with people who came to the Property to conduct inspections for the Loan, that Junior

arranged the loan over their objections, and that Ruth Richardson signed her power of attorney in favor of Junior five weeks before the Loan closed specifically for the purpose of obtaining the Loan. Compl. ¶¶ 28, 31, 32.

The Richardsons never did anything to revoke Junior's authority to complete the transaction on their behalf, to communicate any sentiments that they did not want the Loan to any of the Lender Defendants, or otherwise to do anything to stop the Loan from funding. Layton Decl. ¶ 7; Robison Decl. ¶ 5. To the contrary, they accepted the benefits and proceeds of the Loan, and made initial payments. Compl. ¶¶ 34-35; Layton Decl. ¶ 8; Robison Decl. ¶ 6. The Richardsons affirmed rather than disclaimed both the acts of Junior to arrange the Loan and the validity of the Loan itself.

Even if the Richardsons did not personally know about the Loan and its details, it is undisputed that they appointed their son as their attorney in fact, and that he acted under this power to obtain the Loan for their benefit. At the TRO hearing, Plaintiffs' counsel told the Court that Plaintiffs had no grounds to challenge the validity of the powers of attorney. Horning Decl. ¶ 2.

The Loan closed and funded on August 24, 2007. The Richardsons received the proceeds and benefits of the Loan, as follows:

- $42,840.40 to pay off their first mortgage;
- $78,272.51 to pay off their second mortgage;
- $86,974.70 to pay off the liens for their unpaid income taxes;
- $28,442.28 for loan transaction and other costs; and
- $70,470.11 in cash (the Richardsons allege that Junior took this money). Ex. F to Layton Decl. ¶ 12.

**D. The Richardsons Defaulted on the Loan.**

The Richardsons made three payments on the Loan in or about October, November and December 2007. Robison Decl. ¶ 6. The third payment bounced. *Id.* The Richardsons have made no other payments on the Note and defaulted on the Note. *Id.* The Richardsons also did not

pay real property taxes and insurance premiums. *Id.* at 7-8. The Lender Defendants paid the Richardsons' insurance premiums to prevent the insurance from lapsing for all parties. *Id.*

The investment in the Richardsons' Loan was a major portion of the Robisons' retirement fund and the lack of monthly payments on the Loan seriously affected them. The Robisons initiated foreclosure. Robison Decl. ¶ 6. To partially offset the cash flow hardship on the Robisons caused by the Richardsons' default, the Robisons sold a 50% interest in the Loan to Cheroske. Robison Decl. ¶ 10.

**E. The Richardsons Application for a TRO to Stop the Foreclosure Was Denied.**

Less than two days before the noticed foreclosure sale date, the Richardsons applied for a temporary restraining order to stop the sale. This Court denied the application on the grounds that the Richardsons did not establish a likelihood of success on the merits and the balance of hardships did not tip in the Richardsons' favor. Ex. G to Horning Decl. at 7.

**F. The Property Sold at Foreclosure.**

The Property was sold at a foreclosure sale on or about June 5, 2008. The Lender Defendants credit bid. There were no other bidders. The Lender Defendants received no cash proceeds from the sale and only took title to the Property. Cheroske Decl. ¶ 5. The Lender Defendants are in the midst of preparing the Property for resale by spending approximately $20,000 in refurbishments. Cheroske Decl. ¶ 8.

**G. The Richardsons Vacated the Property.**

After foreclosure the Richardsons remained in possession of the Property. The Lender Defendants had to bring a separate unlawful detainer action in state court, which the Richardsons did not oppose. As a result, the California state court ordered the Richardsons to vacate the premises, which they have done. All told, the Richardsons lived in the Property for at least 6 months while paying nothing toward the Loan, rent, taxes or insurance. Cheroske Decl. ¶ 6.

**H. The Richardsons Filed a Lis Pendens of the Present Action**

On or about July 8, 2008, the Richardsons filed a lis pendens of the present action and recorded it at the San Diego County Recorders' Office. Ex. H to Horning Decl.

## III. LEGAL STANDARDS FOR EXPUNGING A LIS PENDENS.

To avoid expungement, the Richardsons must prove the probable validity of the real property claims in their complaint. The Richardsons have the burden of proof. They cannot meet their burden.

### A. This Motion is Subject to California Law and Timely.

State law controls the disposition of the lis pendens, even though it is based on this federal action. *U.S. v. Calcasieu Timber Co.*, 236 F. 196, 198 (5th Cir. 1916). The California statutes governing lis pendens apply "to an action pending in any United States District Court in the same manner that it applies to an action pending in the courts of this state." Cal. Code Civ. Proc. § 405.5 (West 2008).

This motion is timely. "At any time after notice of pendency of action has been recorded, any party, or any nonparty with an interest in the real property affected thereby, may apply to the court in which the action is pending to expunge the notice." § 405.30.

### B. Only Real Property Claims Are Relevant Here.

The purpose of a lis pendens is to provide constructive notice of a pending lawsuit that could affect title to real property. *Campbell v. Superior Court*, 132 Cal. App. 4th 904, 910 (2005). A lis pendens can be recorded only when the lawsuit presents a "real property claim" which is essentially a claim affecting title or possession. Cal. Code Civ. Proc. §§ 405.4, 405.31 (West 2008). The California Code of Civil Procedure defines "real property claim" as a cause of action, "which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the use of an easement identified in the pleading, other than an easement obtained pursuant to statute by any regulated public utility." § 405.4. "The court shall order the [lis pendens] expunged if the court finds that the pleading on which the notice is based does not contain a real property claim." § 405.31.

"[E]quitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages. It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage

for negotiating purposes." *Campbell*, 132 Cal. App. 4th at 914 (quoting *Urez Corp. v. Superior Court*, 190 Cal. App. 3d 1141, 1149 (1987)).

Here, the Richardsons have only alleged two (out of a total of nine) claims for relief that could conceivably affect title to the real property that secured the loan at issue in this case. As a result, this motion only addresses those two claims, the first and eighth. The other claims seek only monetary damages, and cannot support a lis pendens.

**C. Absent Probable Validity the Lis Pendens Must Be Expunged.**

"The court shall order that the notice be expunged if the court finds that the claimant [the Richardsons] has not established by a preponderance of the evidence the probable validity of the real property claim." Cal. Code Civ. Proc. § 405.32 (West 2008). "'Probable validity,' with respect to a real property claim, means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." § 405.3; *Orange County v. Hongkong and Shanghai Banking Corp. Ltd.*, 52 F. 3d 821, 824 (9th Cir. 1995).

"Thus . . . the California lis pendens statute requires the court to evaluate the merits of the underlying claim." *Orange County,* 52 F. 3d at 824. The Court may consider evidence in the form of declarations or oral testimony. § 405.30.

**D. The Richardsons Have the Burden of Proof.**

The burden of proof is on the Richardsons that "it is more likely than not that [they] will obtain a judgment against the defendant on the claim[s]." §§ 405.3; 405.30; 405.32.

The lis pendens statutes are designed to curb abuses of lis pendens procedures by requiring the recording party to show by preponderance of evidence that the action is probably valid. *Hunting World, Inc. v. Superior Court*, 22 Cal. App. 4th 67, 73 (1994); Cal. Code Civ. Proc. § 405.32 (West 2008). "If a claimant has no convincing evidence [supporting its claim], it will not meet this burden, and the court will expunge notice of lis pendens." *Hunting World, Inc.*, 22 Cal.App.4th at 73. No bond is required from the moving party. Cal. Code Civ. Proc. § 405.32 (West 2008).

The Richardsons cannot meet their burden.

## IV. PLAINTIFFS CANNOT PROVE PROBABLE VALIDITY OF ANY REAL PROPERTY CLAIMS.

For the same reasons the Court denied the Richardsons' TRO application, the Court should also expunge the Richardsons' lis pendens. In the TRO order the Court stated, "[A]fter reviewing Plaintiffs' application for temporary restraining order, the Court concludes that Plaintiffs have not established a likelihood of success on the merits. Accordingly, even assuming Plaintiffs could show the possibility of irreparable harm, the Court concludes that Plaintiffs are not entitled to relief . . ." Order Denying TRO, 6:12-13, Ex. G to Horning Decl. Nothing has changed. Just as the Richardsons' could not show likelihood of success on the merits for the TRO, the Richardsons cannot satisfy the lis pendens standard of probable validity.

The only purported real property claim asserted by the Richardsons is that they allegedly rescinded the deed of trust as a result of alleged violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq*. (West 2008) ("TILA"), including a subset of the TILA, the Home Ownership and Equity Protection Act ("HOEPA"), §§ 1602(aa)(1)(B) and 1639. Their rescission claim is alleged in Claims 1 and 8 of the Richardsons' Complaint. None of the other claims in their Complaint "affect . . . title to, or the right to possession of, specific real property." Cal. Code Civ. Proc. § 405.4 (West 2008).

The gist of the Richardsons rescission claim is that their alleged notice of rescission invalidated the deed of trust, and therefore the subsequent foreclosure sale should be undone. Thus, the Richardsons seek to have the deed of trust and foreclosure sale invalidated and the property restored to them free and clear, without returning any of the loan proceeds. The undisputed record shows they are not entitled to this extraordinary relief because the allegations of violation of TILA are demonstrably false. In addition, rescission requires tender of return of the loan proceeds, which the Richardsons have not done and cannot do. Therefore the Richardsons have no right to cloud title to the Property and the lis pendens should be expunged.

**A. The Deed of Trust Could Not Have Been and Was Not Rescinded.**

**1. Neither TILA Nor HOEPA Were Violated.**

First, the Loan is not subject to HOEPA. The Richardsons allege the Loan is subject to HOEPA under 15 U.S.C. § 1602(aa)(1)(B)(i) (West 2008). However, this section defines a loan as subject to HOEPA only if "the total points and fees payable by the consumer at or before closing will exceed the *greater* of -- (i) 8% of the total loan amount" (emphasis supplied). Here the total points and fees were exactly 8% ($24,560 compared to the loan amount of $307,000), and did not "exceed" 8%. Therefore HOEPA is inapplicable.

Second, even if the Loan in this case was subject to HOEPA, there were no violations of HOEPA or TILA. All required disclosures were timely given. The evidence of compliance includes nine separate acknowledgments. Ex. E to Layton Decl. Junior was authorized to sign these acknowledgments on behalf of the Richardsons. It has long been established that under agency law, principals are bound by the acts of their agents. Cal. Civ. Code § 2330 (West 2008); *New York Life Insurance Company v. Occidental Petroleum Corporation and Leal Garbett*, 43 Cal.App.2d 747, 751 (1941) ("[A] principal is charged with knowledge of the facts known by its agent and by his acts within the scope of his authority.")

Third, even if there were violations of TILA or HOEPA, the violations would have to be "material" to constitute grounds for rescission. *Bustamante v. First Federal Savings. and Loan Association of San Antonio*, 619 F. 2d 360, 363 (5th Cir. 1980); *Ivey v. U.S. Dept. of Housing and Urban Development,* 428 F. Supp. 1337, 1343 (D.C.Ga. 1977), *affirmed by Ivey v. U.S. Department of Housing and Urban Development*, 607 F. 2d 1004 (5th Cir. 1979). None of the alleged violations in this case even taken together are "material." To the contrary, the alleged violations are trivial. "The law disregards trifles." Cal. Civ. Code § 3533 (West 2008).

Fourth and finally, the rescission claim is in part based on the Richardsons' erroneous allegation that Defendant Statewide Reconveyance Group, Inc. ("Statewide"), which carried out the foreclosure and issued the notices, was not substituted in as trustee for Commonwealth, and therefore all of its notices were allegedly "deceptive" and invalid. However, Statewide was in

fact duly substituted as trustee. The substitution was recorded and made a public record on February 6, 2008, prior to Statewide issuing any notices. Ex. I to Horning Decl.

**2. There Was No Tender of Loan Proceeds.**

Even if there had been a material violation of TILA (and there was none), the Richardsons' purported notice of rescission was still invalid because the Richardsons never tendered return of the loan proceeds. Without a tender to return the loan proceeds, rescission should not be an available remedy. 15 U.S.C. § 1635(b) (West 2008); *Yamamoto v. Bank of New York*, 329 F. 3d 1167, 1171 (9th Cir. 2003) (upholding trial court's dismissal of suit for rescission where borrowers were unable to show they could tender the loan proceeds), *cert. denied*, 540 U.S. 1149 (2004);. *See also*, *LaGrone v. Johnson*, 534 F. 2d 1360, 1362 (9th Cir. 1976) (rescission should have been conditioned on a tender by the borrower of the amount advanced by the lender).

The essence of the remedy of rescission is to restore the parties to their pre-contract position *status quo ante*. *Akin v. Certain Underwriters at Lloyd's London*, 140. Cal. App. 4th 291, 298 (2006). That is why a tender of a return of the loan proceeds is required. There can be no rescission here because the Richardsons cannot restore the Robisons to their pre-contract position, i.e., return the loan proceeds to the Lender Defendants.

Indeed, the proceeds of the $307,000 loan were not available to be returned. Most of the proceeds were used to pay other creditors. As for the balance that was distributed to the Richardsons, they claim it was taken by their son. Compl. ¶ 37-38. Therefore, the Richardsons could not and did not validly rescind because they could not and did not tender return of the loan proceeds.

**3. The Equities Weigh Against Rescission.**

A claim for Rescission under the TILA invokes the Court's equitable powers. *Yamamoto,* 329 F. 3d at 1173. Here the equities favor the Lender Defendants. The Robisons, who are in retirement, advanced hard money from their retirement funds. Robison Decl. ¶ 9; Cheroske ¶ 4. The Richardsons were represented by their son, Junior as their attorney-in-fact and two mortgage brokers. Exs. A and B to Robison Decl.; Layton Decl. ¶ 3. The Robisons dealt entirely in good faith through the brokers with the Richardson's agent. Robison Decl. ¶ 4. The brokers report

every indication was that Junior was assisting the Richardsons in good faith, as would be expected from a caring son. Layton Decl. ¶ 4. The Robisons were told and believed that the loan was for the purpose of refurbishing the home for sale so that the Richardsons could move into a home more suitable for their health circumstances. Robison Decl. ¶ 5.

The Richardsons benefited from the loan proceeds. Approximately $200,000 of their debts were paid off. The Richardsons' allegation that Junior absconded with the balance of the funds is no grounds for rescission. If the Richardsons have any such claim it is only with Junior, and it is no basis to rescind the Loan as to the Lender Defendants.

**B. The Other Claims in the Complaint Are Not Real Property Claims.**

No other claims in Plaintiffs' Complaint seek relief that could result in the return of title to the Property if successful. They all seek money damages.

The Second Claim for Violations of California's Predatory Lending Law seeks only monetary damages. Compl. ¶¶ 67 – 76. The Predatory Lending Law does not allow for a remedy that could result in a return of the Property. Cal. Finance Code § 4978 (West 2008).

The Third Claim for Violations of California Real Estate Licensing Regulations. Cal. Bus. & Prof. Code §§ 10240 et seq. (West 2008) are only against the brokers and only demand monetary damages.

The Fourth, Fifth and Sixth Claims for Breach of Fiduciary Duty, Constructive Fraud and Negligence all seek damages. They are all directed at the brokers, but with an attempt to impute legal duties to the Lender Defendants by alleging that the elderly Lender Defendants conspired with Junior to give him $70,000. The claims are false, but the only relevant issue for purposes of this motion is that none of these claims are real property claims.

The Seventh Claim for Violation of California's Fair Debt Collection Practices Act (the "Rosenthal Act") has nothing to do with title to property.

## V. THE LIS PENDENS PREVENTS DAMAGE MITIGATION

The Lender Defendants have asserted a counter claim for fraud. In response, the Richardsons assert as their Fourth Affirmative Defense failure to mitigate damages. While the statement of the defense is conclusory and does not specify how the Lender Defendants have

failed to mitigate damages, the Richardsons' have affirmatively prevented the Lender Defendants from mitigating by filing the lis pendens. California Courts have recognized that a lis pendens usually prevents a sale of the property until the noticed litigation is resolved. *Gale v. Superior Court*, 122 Cal.App.4th 1388, 1394-5 (2004). The lis pendens creates a cloud on the title that inhibits its sale. *Id.*

In today's real estate market such a result could be disastrous. Since the real estate market is declining, an immediate sale of the property is the only way to mitigate damages by obtaining sale proceeds sooner rather than later. Cheroske Dec. ¶ 2.

## VI. AN AWARD OF ATTORNEY'S FEES IS WARRANTED.

The prevailing party on a motion to expunge is entitled to an award of attorneys fees by the Court unless the Court finds that the other party acted with substantial justification or otherwise finds that the award would be unjust. Cal. Code Civ. Proc. § 405.38.

The court's ruling on whether the lis pendens is proper determines who is the "prevailing party" for purposes of fees and costs. *Trapasso v. Sup. Ct. (Majdali)* 73 Cal. App. 3d 561, 570 (1977) (decided under former statute). If the lis pendens was improper, the party opposing it has prevailed.

The Richardsons did not prevail in establishing likelihood of success on the merits in their motion for a TRO. As a result, they did not act with substantial justification in filing and defending their lis pendens after the TRO Order was issued. The Court should order the Richardsons to pay an award of attorneys fees to the Lender Defendants in the amount of $13,707. Horning Decl. ¶¶ 6-8.

## VII. CONCLUSION

All of the Richardsons' claims of TILA violations are contradicted by the loan documents. In addition, the essence of the Richardsons' purported real property claim is they seek reconveyance of real property free and clear of the lien created by their deed of trust, *and* to keep the benefits of the loan proceeds including paying off their two mortgages and back taxes. That would be fundamentally unjust and is contrary to the law.

The nature of rescission is to restore the parties to their pre-transaction position. If that is not possible, then rescission is not possible. That is why the statute requires the borrower to return the loan proceeds as a condition of rescission.

Here, the Richardsons seek only half of rescission – to invalidate the deed of trust and foreclosure sale. But they do not and cannot offer the other half – returning the loan proceeds. They claim property which has now been sold at foreclosure, they have vacated, and is being refurbished at the Lender Defendants' expense. Their claim is fatally defective and can never prevail. Therefore, their lis pendens which is improperly interfering with title to the property should be expunged.

Expunging the lis pendens does not decide the Richardsons' claims for damages. It merely clears title to the real property that is improperly encumbered so that the Lender Defendants can complete the process started by the foreclosure, and sell the property to mitigate damages. The lis pendens should be expunged.

Respectfully submitted,

DATED: August 6, 2008

CALIFORNIA BUSINESS LAW GROUP, PC

By [signature]
DUANE S. HORNING
Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE,
Defendants and Counterclaimants

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>DECLARATION OF RICHARD CHEROSKE IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

I, RICHARD CHEROSKE, declare as follows:

1. I am a defendant in this matter, individually and as assignee of the ROBISON FAMILY TRUST. I have personal knowledge of the following facts and if called upon could and would testify competently thereto.

2. I am 77 years old. My wife suffers from Parkinson's' Disease. I am currently in retirement.

3. Early this year, I was contacted by CHARLES ROBISON regarding the default by ALPHONSO RICHARDSON, SR. and his wife RUTH RICHARDSON (the "Richardsons") on the loan that had been made to them by Mr. and Mrs. Charles Robison for $307,000 (the "Loan") and secured by the property at 9589 Paseo Temporada, San Diego, California ("Property").

4. Mr. Robison proposed selling me a 50% interest in the deed of trust securing the Loan. I accepted his proposal based on mutually acceptable terms that we worked out. I used my retirement funds in this transaction.

5. The Property was sold at a foreclosure sale on or about June 5, 2008. I and the Robisons credit bid. There were no other bidders. We received no cash proceeds from the sale and only took title to the Property. The Richardsons had not paid the property taxes, which we have since paid.

6. After foreclosure the Richardsons remained in possession of the Property. The Robisons and I had to bring a separate unlawful detainer action in state court, which the Richardsons did not oppose. As a result, the California state court ordered the Richardsons to vacate the Property, which they have done. All told, while paying nothing toward the Loan, rent, taxes or insurance, the Richardsons lived in the Property for over six months.

7. Since receiving title and possession, I have visited the Property. The house built on the Property is about 30 years old and is two stories. It has no tub or shower facilities downstairs. I found the rooms upstairs partially stripped of fixtures and the carpet removed from one of the upstairs rooms. It appeared to me that renovations had been commenced and then were abandoned.

8. Because real estate prices are currently in decline, the Robisons and I desire to sell the Property as quickly as possible in order to recoup the principal value of the loan and the other expenses incurred as a result of this litigation before the value of the house falls below that sum. Based on contractor estimates, I expect that a minimum of $20,000 will have to be spent in order to prepare the Property for sale.

I declare the foregoing is true and correct under the penalty of perjury of the laws of the United States of America and the State of California, and that this declaration was executed this 30 day of July, 2008, in Lakeside, California.

[signature]

RICHARD CHEROSKE

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>DECLARATION OF CHARLES O. ROBISON IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

I, CHARLES O. ROBISON, declare as follows:

1. I am a defendant in this matter, individually and as Trustee of the Robison Family Trust dated April 5, 2001. My wife is BLANCHE L. ROBISON, and she also is a defendant, individually and as Trustee of the Robison Family Trust dated April 5, 2001 (collectively

"Robisons"). I have personal knowledge of the following facts and if called upon could and would testify competently thereto.

2. I am 81 years old and retired. I live in La Mesa, California. I am partially disabled due to a back injury and operation that resulted in nerve damage to my legs. My wife is 76 years old.

3. In approximately June 2007, I was approached by co-defendant ROBERT LAYTON ("Layton"), who I am informed and believe to be a mortgage broker. Mr. Layton informed me that people who I later learned to be the Plaintiffs, ALPHONSO RICHARDSON, SR., and RUTH A. RICHARDSON (collectively "Richardsons") desired to borrow money. I was provided with an appraisal. Mr. Layton provided me with a portfolio concerning the loan. All the documentation appeared to be in order. The credit report was not outstanding but appeared to be adequate. The Richardsons' monthly income was reported to be $7,155.00. His was $3,680.00 and hers was $3,475.00. They indicated their source of funds as retirement and disability. This income appeared from the information I had to be more than adequate for the Richardsons to meet their monthly needs and monthly loan payments.

4. The documentation included powers of attorney for the Richardsons naming their son, ALPHONSO RICHARDSON, JR. ("Junior"), which were notarized. Attached hereto as Exhibits A and B are true and correct copies of the powers of attorney I received in which the Richardsons appoint Junior as their attorney in fact. I had no reason to doubt the validity of these powers of attorneys and dealt with Junior in good faith through the brokers.

5. Mr. Layton also made me aware of the borrower's motivations, namely to renovate and sell the Property, and subsequently find a more suitable home for Mrs. Richardson, Sr., where she would have access to a shower or bathtub on the first floor of her residence. I relied on the documentation provided including the powers of attorney and decided to make the loan of $307,000 to the Richardsons (the "Loan"). I received no information from any source that Mr. or Mrs. Richardson, Sr. did not want the Loan prior to the close of escrow, or until this lawsuit started.

6. Mr. Richardson made two payments on the Loan then sent a check that was returned as insufficient. No checks were received after the bad check and after three months we arranged for a notice of default to be served. During the course of the foreclosure, the Richardsons sent a partial payment. The foreclosure company sent it back saying the total amount of delinquent payments had to be paid to remove the Loan from foreclosure. No further payments have ever been received.

7. The Richardsons did not pay either of the tax assessments that came due safter we made the Loan, which were due in December 2007 and April 2008.

8. I became concerned that the Richardsons may not be paying the insurance premiums for the policy required by the Loan. Upon checking with the insurance agent, I learned that the premiums were in arrears. I made a premium payment to bring the Richardsons' insurance current.

9. The investment in the Richardsons' trust deed was a major portion of our retirement fund and the lack of monthly payments on the Loan has seriously affected our living standard.

10. Due in part to the Richardsons' default and severe adverse financial effect it has had on my wife and me, we sold a 50% interest to co-defendant RICHARD CHEROSKE.

I declare the foregoing is true and correct under the penalty of perjury of the laws of the United States of America and the State of California, and that this declaration was executed this 30 day of July, 2008, in La Mesa, California.

Charles O Robison

CHARLES O. ROBISON

## EXHIBITS – TABLE OF CONTENTS

Exhibit A: Uniform Statutory Form Power of Attorney for Alphonso Richardson ........ 1-2

Exhibit B: : Uniform Statutory Form Power of Attorney for Ruth Richardson ........ 1-2

# EXHIBIT "A"

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

# Uniform Statutory Form Power of Attorney

(California Probate Code Section 4401)

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400 - 4465). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Alphonso Richardson 9589 Paseo Temporada San Diego, CA 92129 (your name and address) appoint Ruth Ann Richardson, Alphonso Richardson Jr. 9589 Paseo Temporada San Diego, CA 92129 (name and address of the person appointed, or of each person appointed if you want to designate more than one) as my agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

_____ (A) Real property transactions.
_____ (B) Tangible personal property transactions.
_____ (C) Stock and bond transactions.
_____ (D) Commodity and option transactions.
_____ (E) Banking and other financial institution transactions.
_____ (F) Business operating transactions.
_____ (G) Insurance and annuity transactions.
_____ (H) Estate, trust, and other beneficiary transactions.
_____ (I) Claims and litigation.
_____ (J) Personal and family maintenance.
_____ (K) Benefits from social security, medicare, medicaid, or other governmental programs, or civil or military service.
_____ (L) Retirement plan transactions.
_____ (M) Tax matters.
AR (N) ALL OF THE POWERS LISTED ABOVE.

YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

**EXHIBIT A**
**PAGE 1**

# CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

State of California )
)
County of San Diego )

On this 4th day of Nov., 2006 before me, Samuel O Flores, Notary Public, (name of notary public) personally appeared Alphonso Richardson, (name of principal) ~~personally known to me (or~~ proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument, and acknowledged that he/~~she~~ executed it in his/~~her~~ authorized capacity, and that by his/~~her~~ signature on this instrument the person executed this instrument.

WITNESS my hand and official seal

(signature of notary public) (seal)

SAMUEL O. FLORES
COMM. #1620848
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
DECEMBER 1, 2009

# EXHIBIT "B"

RECORDING REQUESTED BY:

AND WHEN RECORDED MAILTO:
Alphonso Richardson, Jr.

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

A.P.N.: 315-368-09 Order No.: Escrow No.:

# UNIFORM STATUTORY FORM POWER OF ATTORNEY

(California Probate Code §4401)

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING, THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTION 4400-4465, INCLUSIVE). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, (*your name and address*) Ruth Richardson
9589 Paseo Temporada San Diego, Calif

appoint (*name and address of the person appointed, or of each person appointed if you want to designate more than one*)
Alphonso Richardson, Jr.

9589 Paseo Temporado, San Diego, Calif

as my agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.
TO GRANT ONE OR MORE, BUT FEWER THAN ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.
TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT, YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

INITIAL
_____ (A) Real Property transactions
_____ (B) Tangible personal property transaction
_____ (C) Stock and bond transactions
_____ (D) Commodity and option transaction
_____ (E) Banking and other financial institution transaction
_____ (F) Business operating transactions
_____ (G) Insurance and annuity transactions
_____ (H) Estate, Trust, and other beneficiary transactions

INITIAL
_____ (I) Claims and litigation
_____ (J) Personal and family maintenance
_____ (K) Benefits from social security, Medicare, Medicaid, or other governmental programs, civil, or military service
_____ (L) Retirement plan transactions
[initials] (M) Tax matters
_____ (N) ALL OF THE POWERS LISTED ABOVE

YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N)

## SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT:
This Power of Attorney shall be a General Power of Attorney and shall be irrevocable.

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.
This power of attorney will continue to be effective even though I become incapacitated.
STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.

**EXHIBIT B**
**PAGE 1**

EXERCISE OF POWER OF ATTORNEY WHERE MORE THAN ONE AGENT DESIGNATED

If I have designated more than one agent, the agents are to act NA

IF YOU APPOINTED MORE THAN ONE AGENT AND YOU WANT EACH AGENT TO BE ABLE TO ACT ALONG WITHOUT THE OTHER AGENT JOINING, WRITE THE WORD "SEPARATELY" IN THE BLANK SPACE ABOVE. IF YOU DO NOT INSERT ANY WORD IN THE BLANK SPACE, OR IF YOU INSERT THE WORD "JOINTLY", THEN ALL OF YOUR AGENTS MUST ACT OR SIGN TOGETHER.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this 15th day of July 2007.

________________________________
(*your signature*)

State of California County of San Diego

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

Dated: 7-15- 2007

STATE OF CALIFORNIA
COUNTY OF San Diego }SS

On ~~RUTH RICHARDSON~~ July 15, 2007 before me, Samuel O Flores, Notary Public, personally appeared Ruth Richardson, ~~personally known to me (or~~ proved to me on the basis of satisfactory evidence) to be the person~~(s)~~ whose name~~(s)~~ ~~is/are~~ subscribed to the within instrument and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ authorized capacity~~(ies)~~, and that by ~~his~~/her/~~their~~ signature~~(s)~~ on the instrument the person~~(s)~~ or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

WITNESS my hand and official seal.

Signature ____________________

SAMUEL O. FLORES
COMM. #1620848
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
DECEMBER 1, 2009
CSC1

(This area for official notarial seal)

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>DECLARATION OF ROBERT LAYTON IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

I, ROBERT LAYTON, declare as follows:

1. I am a defendant in this matter. I have personal knowledge of the following facts and if called upon could and would testify competently thereto.

2. In the summer of 2007, I assisted with arranging a loan for ALPHONSO RICHARDSON, SR. and his wife RUTH RICHARDSON (the "Richardsons"). On behalf of the Richardsons, I was asked by Henry Go of Apex Financial to find a lender who would loan money to the Richardsons in the amount of $307,000 (the "Loan") for refinancing mortgage and tax liens on the property at 9589 Paseo Temporada, San Diego, California ("Property").

3. I worked with AL RICHARDSON, JR., ("Junior"), the holder of power of attorney for both of the Richardsons. He told me that he intended to refinance the house in order to pay off the first and second trust deeds, and five years of unpaid federal income taxes that had resulted in the IRS recording liens on the Property for that totaled approximately $87,000.

4. He also wanted approximately $70,000 in additional cash for home improvements so he could put the Property on the market. He said that he then wanted to move his parents into a home in Hemet, California that had a shower or bathtub on the first floor. He said that Mrs. Richardson, Sr. used a walker and was confined to a downstairs bedroom without first floor access to a shower or bathtub at the Property. Junior struck me as being genuinely concerned about his parent's welfare.

5. In the course of my work on the Loan, I contacted MR. AND MRS. CHARLES ROBISON (the "Robisons") about the Richardsons' need for refinancing. I told Mr. Robison about Junior's intentions and Mrs. Richardson, Sr.'s health situation before the Robisons made a decision to loan money to the Richardsons.

6. I also provided the Robisons with a portfolio of documentation about the Richardsons, the Property and proposed Loan, including a completed loan application, credit reports, and powers of attorney before they made a decision. The expected monthly payment on the loan was $2,808.25, which was well within the $7,155.00 monthly income reported by the Richardsons. The application appeared to me acceptable and in order. The Richardsons appeared to have the ability to repay the loan.

7. Junior and his wife met me at escrow and Junior signed for the new loan. Among the documents that I witnessed Junior sign at the closing were the Balloon Note, the Deed of Trust, and nine acknowledgments of disclosures. No one ever communicated to me that the Richardsons did not want this Loan prior to the close of escrow.

8. Upon closing, the Loan proceeds were distributed as Junior had instructed, including complete repayment of the first and second mortgages and payment of the delinquent income tax obligations.

9. Attached as Exhibit C is a true and correct copy of the Balloon Note that Junior signed on behalf of the Richardsons in connection with the Loan.

10. Attached as Exhibit D is a true and correct copy of the Deed of Trust that Junior signed on behalf of the Richardsons in connection with the Loan that was subsequently recorded in the title history of the Property.

11. Attached as Exhibit E are true and correct copies of acknowledgments of disclosures that Junior signed on behalf of the Richarsons in connection with the Loan.

12. Attached as Exhibit F is a true and correct copy of the Buyers/Borrowers Final Closing Statement dated August 24, 2007.

I declare the foregoing is true and correct under the penalty of perjury of the laws of the United States of America and the State of California, and that this declaration was executed this 31st day of JULY, 2008, in SAN DIEGO, California.

[signature]
ROBERT LAYTON

# EXHIBITS – TABLE OF CONTENTS

Exhibit C: Baloon Note dated August 17, 2007 .......... 1-3

Exhibit D: Deed of Trust dated August 17, 2007 .......... 1-16

Exhibit E: Acknowledgments of disclosures .......... 1-13

Exhibit F: Buyers/Borrowers Closing Statement dated August 24, 2007 .......... 1-6

# EXHIBIT "C"

# BALLOON NOTE

(Fixed Rate)

LOAN NO.: 000628999

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| AUGUST 17, 2007 | San Diego | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

9589 Paseo Temporada, San Diego, CA 92129
[Property Address]

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 307,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001 .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 5th day of each month beginning on OCTOBER, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 05, 2012 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Charles Robison 5150 Vivera Dr., La Mesa, CA 91941 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,808.25 .

Initials: [handwritten initials]

4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| Alphonso Richardson (Seal) -Borrower | Ruth A Richardson (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |

*[Sign Original Only]*

# EXHIBIT "D"

5

fn
10p

DOC # 2007-0564203

AUG 24, 2007 12:09 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES 54.00
PAGES 16 OA 1

Recording Requested By:
Commonwealth Land Title Company

2007-0564203

Return To:
Charles Robison

6043

5150 Vivera Dr.
La Mesa, CA 91940

Prepared By:

5150 Vivera Dr.
La Mesa, CA 91941

04310389-501
Apn 315-268-09-00

[Space Above This Line For Recording Data]

# DEED OF TRUST

LOAN NO.: 000628999
ESCROW NO.: 04310389 - 044 - CR4

NOTICE: THIS LOAN CONTAINS PROVISIONS THAT ALLOW FOR A BALLOON PAYMENT AT MATURITY.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 17, 2007, together with all Riders to this document.

(B) "Borrower" is
Alphonso Richardson AND Ruth A Richardson, HUSBAND AND WIFE AS JOINT TENANTS

.

Borrower's address is 9589 Paseo Temporada, San Diego, CA 92129.
Borrower is the trustor under this Security Instrument.

(C) "Lender" is
The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001

.

~~Lender is a~~
~~organized and existing under the laws of~~

Initials:

6044

Lender's address is
5150 Vivera Dr., La Mesa, CA 91941
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is
Commonwealth Land Title Company
(E) "Note" means the promissory note signed by Borrower and dated AUGUST 17, 2007.
The Note states that Borrower owes Lender
THREE HUNDRED SEVEN THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X X Dollars
(U.S. $ 307,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 05, 2012.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: ______



EXHIBIT D
PAGE 2

6045

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of San Diego [Name of Recording Jurisdiction]:

Parcel ID Number: which currently has the address of 9589 Paseo Temporada [Street] San Diego [City], California 92129 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials:

File No: 04310389

6046

# EXHIBIT "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

Lot 257 of Penasquitos Estates Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 8637, filed in the Office of the County Recorder of San Diego County, August 9, 1977.

6047

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials:

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: ________

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: ____



EXHIBIT D
PAGE 7

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials:

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials:

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: ________

6054

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials:

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:



**EXHIBIT D**
**PAGE 13**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: [handwritten initials]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_______________________________ -Witness

_______________________________ -Witness

Alphonso Richardson by Alphonso Richardson Jr his atty in fact (Seal) -Borrower
By ALPHONSO RICHARDSON, JR

Ruth A Richardson by Alphonso Richardson Jr her atty in fact (Seal) -Borrower
BY ALPHONSO RICHARDSON, JR.

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

_______________________________ (Seal) -Borrower

6058

State of CALIFORNIA
County of San Diego } ss.

On 8-17-2007 before me, MS MARSHALL, NOTARY PUBLIC, Notary Public, personally appeared

Alphonso Richardson ; JR ~~Ruth A Richardson~~

, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_______________ (Seal)

M. S. MARSHALL
COMM. #1475286
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires Mar. 8, 2008

Initials: ________

# EXHIBIT "E"

# BORROWER'S ACKNOWLEDGMENT OF DISCLOSURES

| Borrower Name(s): | Lender: |
|---|---|
| Alphonso Richardson AND Ruth A Richardson | The Robison Family Trust, Charles O Robison and Blanche L. Robison Trustees Dated 04/05/2001 |
| | Date: AUGUST 17, 2007 |

Property Address:

9589 Paseo Temporada, San Diego, CA 92129

By signing below, I acknowledge that I have received a "Good Faith Estimate" and all applicable disclosures required by the Truth in Lending Act.

| | |
|---|---|
| Alphonso Richardson (Date) 8-17-07 | Ruth A Richardson (Date) 8-17-07 |
| (Date) | (Date) |
| (Date) | (Date) |
| (Date) | (Date) |

# BALLOON PAYMENT DISCLOSURE

LOAN NO.: 000623999

NOTICE: READ BEFORE SIGNING YOUR LOAN DOCUMENTS

This loan provides for 60 monthly payments of: PRINCIPAL AND INTEREST in the amount of $ 2,808.25 each. Assuming that all the monthly payments have been paid exactly on the date that each is due, a final payment of the then outstanding principal balance plus all earned interest remaining unpaid ("Balloon Payment" amount) estimated to be in the amount of $ 300,029.28 shall become due and payable on OCTOBER 05, 2012 (the "Maturity Date").

DO NOT SIGN ANY LOAN DOCUMENTS IF YOU HAVE ANY QUESTIONS ABOUT YOUR LOAN PAYMENTS

Unless otherwise expressly disclosed in the Note, or in an Addendum or a Rider to the Note, THE LENDER IN THIS TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE OUTSTANDING PRINCIPAL BALANCE OF THIS LOAN DUE ON THE MATURITY DATE. You may be required to payoff the entire principal balance, plus any unpaid interest due thereon, on the maturity date using personal assets. If this Lender, or any other Lender, agrees to refinance the outstanding balance due on the maturity date, you may be required to pay the then prevailing interest rate, which may be higher or lower than the interest rate specified in the Note, plus loan origination costs and fees as are typically incurred when creating a new loan.

I hereby certify that the Borrowers have received an oral explanation of the balloon payment provisions of this loan.

[signature]

(Signature of Loan Officer)

ALL BORROWERS MUST SIGN AND DATE

I/We hereby acknowledge receipt of the above notice concerning the balloon payment provisions of this loan. I/We further acknowledge that these provisions have also been orally explained to me/us.

[signature] by [signature] his atty in fact 8-17-07

Alphonso Richardson Date

[signature] by [signature] Her atty in fact 8-17-0

Ruth A Richardson Date

Date

Date

**EXHIBIT E**
**PAGE 2**

KL109

LSS- GEN 013 (04/01)

# TRUTH-IN-LENDING MORTGAGE DISCLOSURE FOR MORTGAGES THAT EXCEED CERTAIN PERCENTAGES AND AMOUNTS

| | |
|---|---|
| Borrower(s) Name(s): Alphonso Richardson AND Ruth A Richardson | Lender: The Robison Family Trust, Charles O Robison and Blanche L Robison Trustees Dated 04/05/2001 |
| | Loan Number: 000628999 |
| | Date: |
| Property Address: 9539 Paseo Temporada, San Diego, CA 92129 | |

You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.

If you obtain this loan, the lender will have a mortgage on your home.

YOU COULD LOSE YOUR HOME, AND ANY MONEY YOU HAVE PUT INTO IT, IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THE LOAN.

You are borrowing $ 307,000.00 (optional credit insurance ☐ is ☐ is not included in this amount)

The annual percentage rate on your loan will be 12.767 %.

[XX] Fixed Rate Loans - Your regular 60 payment will be $ 2,808.25.
[XX] At the end of your loan, you will still owe us: $ 300,029.28 payable on OCTOBER 05, 2012

☐ Graduated Payment Loans - Your regular payment will be $
$ for the 1st
$ for the 2nd
$ for the and thereafter

☐ Variable Rate Loans
Your interest rate may increase. Increases in the interest rate could increase your payment. The highest amount your payment could increase is to $

☐ Your regular payment will be $
☐ Initial Payment is based on a Discount or Premium.

Your regular payment will be $ for
After your regular payment will be based on an index and margin, which currently would make your payment $ . Your actual payment at that time may be higher or lower.

By signing below you acknowledge receipt of a complete copy of this disclosure. You understand that this is not a contract and does not reflect all of the terms and conditions of the mortgage transaction to which the disclosures in this form relates.

Alphonso Richardson by Alphonso Richardson, his atty in fact — Alphonso Richardson — Date 8-17-07

Ruth A Richardson by Alphonso Richardson, her atty in fact — Ruth A Richardson — Date 8-17-07

_______________ Date _______________ Date

_______________ Date _______________ Date

_______________ Date _______________ Date

VMP-763 (0201).02 1/02

LENDER SUPPORT SYSTEMS INC. GEN-101 GEN (05/05)

**EXHIBIT E**
**PAGE 3**

KL114

# NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 000628999

Borrower: Alphonso Richardson

Property Address: 9589 Paseo Tamporada, San Diego, CA 92129

## YOUR RIGHT TO CANCEL:

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is 8-17-07; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

## HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor: The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001

at 5150 Vivera Dr.
La Mesa, CA 91941

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of 8-24-07 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

______________________ Date

______________________ Borrower's Signature

## ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: 8-17-07

Alphonso Richardson
Borrower's Name

Alph Rich by Alph Rich His atty in fact
Alphonso Richardson
Borrower's Signature

V-064 (0305) 02 MODIFIED ll-8

10/00
LENDER SUPPORT SYSTEMS INC. GEN-026 GEN (05/07)

EXHIBIT E
PAGE 4

KL122

# NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 000628999

Borrower: Ruth A Richardson

Property Address: 9589 Paseo Temporada, San Diego, CA 92129

YOUR RIGHT TO CANCEL:

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is 8-17-07; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor: The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001

at

5150 Vivera Dr.
La Mesa, CA 91941

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of 8-21-07 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

Date

Borrower's Signature

## ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: 8-17-07

Ruth A Richardson
Borrower's Name

Ruth A. Richardson by Alan Richardson Her attorney-in-fact
Ruth A Richardson

Borrower's Signature

FEDERAL TRUTH - IN - LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Creditor:
The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001

5150 Vivera Dr.
La Mesa, CA 91941

Borrower:
Alphonso Richardson AND Ruth A Richardson

9539 Paseo Temporada
San Diego, CA 92129

Date: AUGUST 17, 2007
Check box if applicable:

Loan Number: 000628999

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | [ ] Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit including your down-payment of $ N/A |
| 12.767 % | $ 187,129.28 | $ 281,395.00 | $ 468,524.28 | $ N/A |

[ ] REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit.

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 60 | 2,308.25 | 10/05/2007 | | | | | | |
| 1 | 300,029.28 | 10/05/2012 | | | | | | |

[ ] DEMAND FEATURE: This obligation has a demand feature.

[ ] VARIABLE RATE: Your loan contains variable rate features.

[ ] Information regarding the variable rate features of your loan have been provided to you earlier in a separate document.

[ ] Information regarding the variable rate features of your loan are provided hereinafter. The annual percentage rate may increase or decrease during the term of this transaction with increases or decreases in the value of the "Index" (or "Reference Rate") The rate that you will pay may not be changed more often than every ________ commencing ________

[ ] Rate Change Limits: The rate may not be changed by more than ________ %on any one Rate Change Date.

[ ] The rate will never be greater than ________ %

[ ] Any increase in the rate will result in a corresponding increase in the payment.

[ ] Rate increases may occur without immediate and/or corresponding payment increases.

[ ] Unpaid interest will be added to the principal.

The "Index" (or "Reference Rate") is the:

INSURANCE: The following insurance is required to obtain credit:
[ ] Credit life insurance and credit disability [XX] Property insurance [ ] Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor.
[ ] If you purchase [ ] property [ ] flood insurance from creditor you will pay $ for one year term.

SECURITY: You are giving a security interest in:
9539 Paseo Temporada, San Diego, CA 92129
[ ] The goods or property being purchased [XX] Real property you already own.

FILING FEES: $

LATE CHARGE: If a payment is more than 10 days late, you will be charged 6.00 % of the Principal & Interest payment, but not less than $ 5.00 and not more than $ 168.50 .

PREPAYMENT: If you pay off early, you
[ ] may [XX] will not have to pay a penalty.
[ ] may [XX] will not be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
[ ] may [ ] may, subject to conditions [XX] may not assume the remainder of your loan on the original terms

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

[ ] e means an estimate [ ] all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.
[ ] I/We have received the Variable Rate Disclosure for the loan program for which I/We have applied

KL127

Alphonso Richardson by Alph Rich his atty in fact — Date 8-17-07

Ruth A Richardson by Alph Rich her atty in fact — Date 8-17-07

________ Date

________ Date

"FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT" PAGE 2
"ITEMIZATION OF AMOUNT FINANCED"

Creditor:
The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001
5150 Vivera Dr.
La Mesa, CA 91941

Re:
Alphonso Richardson AND Ruth A Richardson
9589 Paseo Temporada
San Diego, CA 92129

Date: AUGUST 17, 2007
Interest Rate: 10.500 %
BROKER'S LICENSE #: 01123138
DEPT. OF REAL ESTATE LICENSE INFO LINE (916) 227-0931

Loan Number: 000628999
Loan Amount: 307,000.00

| Ref HUD-1 Statement | Amount Paid on your Account | PAID | FINANCED | *Broker = B Other = O |
|---|---|---|---|---|
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | **Amount Paid To Others on your Behalf:** | | | |
| 309 | APPRAISAL FEE TO APPRAISER | | $ 350.00 | |
| 1105 | DOCUMENT PREPARATION FEE | | $ 595.00 | |
| 1108 | TITLE INSURANCE TO TITLE COMPANY | | $ 828.00 | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| LOAN PROCEEDS PAID TO: | Commonwealth Land Title Company | | $ 279,622.00 | |
| | AMOUNT FINANCED | | $ 281,395.00 | |

| | Prepaid Finance Charge: | PAID | FINANCED | * |
|---|---|---|---|---|
| 801 | LOAN ORIGINATION FEE (pd to lender) 1.000 % | | $ 3,070.00 | |
| | BROKER FEE | | $ 21,490.00 | |
| | PROCESSING FEE | | $ 595.00 | |
| 1101 | SETTLEMENT OR CLOSING FEE TO SETTLEMENT/CLOSING AGENT | | $ 450.00 | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | Total Prepaid Finance Charge: | | $ 25,605.00 | |

| * These are FEES NOT paid by the Borrower | |
|---|---|
| | $ |
| | $ |
| | $ |

| Total Estimated Funds needed to close | | Total Estimated Monthly Payment | |
|---|---|---|---|
| Down Payment | $ | Principal & Interest | $ 2,808.25 |
| Estimated Closing Costs | $ 27,378.00 | Total Real Estate Taxes | $ |
| Estimated Prepaid Items/Reserves | $ | Flood & Hazard Insurance | $ |
| Other: TOTAL PAYOFFS | $ | Mortgage Insurance | $ |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $ 27,378.00 | Total Other Impounds | $ |
| | | TOTAL MONTHLY PAYMENT | $ 2,808.25 |

This form does not cover all items you will be required to pay in cash at settlement; for example, deposits in escrow for real estate taxes and insurance may be different. You may wish to inquire as to the amounts of such other items. You may be required to pay other additional amounts at settlement.

Neither you nor the lender previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure. Each of the Undersigned acknowledge receiving and reading a completed copy of this disclosure.

[X] All disclosures are estimates

KL128

[signature] Alphonso Richardson by [signature] his atty in fact — Date 8-17-07

[signature] Ruth A Richardson by [signature] her atty in fact — Date 8-17-07

Date

Date

**EXHIBIT E**
**PAGE 7**

# BROKERED FUNDS NOTICE

LENDER: The Robison Family Trust, Charles O Robison and Blanche L. Robison Trustees Dated 04/05/2001

ADDRESS: 5150 Vivera Dr., La Mesa, CA 91941

BORROWER(S): Alphonso Richardson AND Ruth A Richardson

PROPERTY ADDRESS: 9539 Paseo Temporada, San Diego, CA 92129

LOAN NUMBER: 000628999 LOAN AMOUNT: $ 307,000 00

BORROWER IS HEREBY GIVEN NOTICE THAT THE ABOVE MENTIONED LOAN IS ARRANGED UNDER THE FOLLOWING CONDITIONS:

1 THIS LOAN IS A REAL ESTATE BROKER ARRANGED LOAN

2 THIS LOAN HAS BEEN ARRANGED BY
Eric Klein
(BROKER)
WHOSE CALIFORNIA REAL ESTATE LICENSE NUMBER IS 01123138
AND WHOSE BUSINESS ADDRESS IS
P.O. Box 7037, San Diego, CA 92167

3. THE FUNDS FOR THIS LOAN ARE BROKER CONTROLLED.

4 LOAN APPROVAL WILL BE DONE UPON FUNDING ONLY.

BORROWER(S) HEREBY ACKNOWLEDGE(S) UNDERSTANDING OF THE ABOVE TERMS AND CONDITIONS AND RECEIPT OF THIS NOTICE.

Alph Richardson by Alph Rich His atty in fact 8-17-07
Alphonso Richardson Borrower Acknowledgement Date

Ruth A Richardson by Alphonso Rich Her atty in fact 8-17-07
Ruth A Richardson Borrower Acknowledgement Date

Borrower Acknowledgement Date

Borrower Acknowledgement Date

LENDER SUPPORT SYSTEMS INC GEN-021 GEN (03/03)

# CONSUMER CAUTION AND HOME OWNERSHIP COUNSELING NOTICE

| Borrower Name(s): Alphonso Richardson AND Ruth A Richardson | Lender: The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001 5150 Vivera Dr. La Mesa, CA 91941 |
|---|---|
| | Loan Number: 000623999 |
| | Date: AUGUST 17, 2007 |
| Property Address: 9589 Paseo Temporada, San Diego, CA 92129 | |

If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.

Mortgage loan rates and closing costs and fees vary based on many other factors, including your particular credit and financial circumstances, your earnings history, the loan-to-value requested, and the type of property that will secure your loan. Higher rates and fees may be justified depending on the individual circumstances of a particular consumer's application. You should shop around and compare loan rates and fees.

This particular loan may have a higher rate and total points and fees than other mortgage loans and is, or may be, subject to the additional disclosure and substantive protections under Division 1.6 (commencing with Section 4970 of the Financial Code). You should consider consulting a qualified independent credit counselor or other experienced financial adviser regarding the rate, fees, and provisions of this mortgage loan before you proceed. For information on contacting a qualified credit counselor, ask your lender or call the United States Department of Housing and Urban Development's counseling hotline at 1-800-569-4287 or go to www.hud.gov/offices/hsg/sfh/hcc/states/california.txt for a list of counselors.

You are not required to complete any loan agreement merely because you have received these disclosures or have signed a loan application.

If you proceed with this mortgage loan, you should also remember that you may face serious financial risks if you use this loan to pay off credit card debts and other debts in connection with this transaction and then subsequently incur significant new credit card charges or other debts. If you continue to accumulate debt after this loan is closed and then experience financial difficulties, you could lose your home and any equity you have in it if you do not meet your mortgage loan obligations.

Property taxes and homeowner's insurance are your responsibility. Not all lenders provide escrow services for these payments. You should ask your lender about these services.

Your payments on existing debts contribute to your credit ratings. You should not accept any advice to ignore your regular payments to your existing creditors.

By signing below, I/we acknowledge receiving a copy of this notice.

Alphonso Richardson by Alphonso Richardson, His atty in fact — Alphonso Richardson — Date 8-17-07

Ruth A Richardson by Alphonso Richardson, Her atty in fact — Ruth A Richardson — Date 8-17-07

_______________ Date _______________ Date

_______________ Date _______________ Date

_______________ Date _______________ Date

# INTERIM INTEREST PAYMENT DISCLOSURE

| Borrower Name(s): | Licensee: |
|---|---|
| Alphonso Richardson AND Ruth A Richardson | The Robison Family Trust, Charles O. Robison and Blanche L Robison Trustees Dated 04/05/2001<br>5150 Vivera Dr.<br>La Mesa, CA 91941 |
| | Date: AUGUST 17, 2007 |
| | Loan Number: 000628999 |

☐ I request that the loan proceeds be disbursed on a Monday (or on a day immediately following a bank holiday, if applicable). I understand that interest will commence accruing on the business day immediately preceding the closing date.
The amount of additional per diem interest I will be charged is: $ 89.54
I also understand that I may avoid the additional per diem interest charge by disbursing the loan proceeds on a day immediately following a business day.

☐ An escrow closing is involved for this loan and I will not pay interest on the loan more than one day prior to the date that the loan proceeds are disbursed from escrow.

☐ An escrow closing is not involved for this loan and I have made a request for recording in connection with the disbursement. I will not pay interest on the loan more than one day prior to the date the loan proceeds are disbursed to me, or to a third party on my behalf, or to the lender to satisfy an existing obligation.

☐ An escrow closing is not involved for this loan and I have not made a request for recording in connection with the disbursement, and I will not pay interest on the loan prior to the date funds are disbursed to me, or to a third party on my behalf, or to the lender to satisfy an existing obligation.

By signing below, borrower(s) acknowledges the additional interest charge, if any, as described above.

Alphonso Richardson Date 8-17-07     Ruth A Richardson Date 8-17-07

Date     Date

Date     Date

Date     Date

# LICENSEE'S CERTIFICATE OF COMPLIANCE

The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated
have reviewed loan number 000628999 made by
Alphonso Richardson AND Ruth A Richardson

and I have reviewed information in the loan records, including the date of disbursement of the loan proceeds; and I am authorized by the licensee to sign this form on its behalf; and, I make the following statement:

The borrower(s) of this loan was charged per diem interest, if any, in accordance with Civil Code Section 2948.5 as described above. I, the undersigned, state that I am the person named in this Certificate of Compliance; that I have read and signed this Certificate of Compliance and know the contents of it, including any exhibits attached to this certificate; and that based on my review of the information contained in the loan records, the statements made in this document, including any exhibits attached to it, are true and correct to the best of my knowledge.

I certify under penalty of perjury that the foregoing is true and correct.

Licensee:

08-20-07
Date

Mortgage Loan Disclosure Statement (Borrower)



| Name of Broker | Business Address |
|---|---|
| Eric Klein | P.O. Box 7037, San Diego CA 92167 |

I. SUMMARY OF LOAN TERMS

A. PRINCIPAL AMOUNT $ 307,000.00

B. ESTIMATED DEDUCTIONS FROM PRINCIPAL AMOUNT

1. Costs and Expenses (See Paragraph III-A) $ 2,818.00
2. Commission/Loan Origination Fee (See Paragraph III-B) $ 24,560.00
3. Amount to be Paid on Authorization of Borrower (See Paragraph III-C) $

C. ESTIMATED CASH PAYABLE TO BORROWER (A LESS B) $ 279,622.00

II. GENERAL INFORMATION ABOUT LOAN

A. If this loan is made, borrower will be required to pay the principal and interest at 10.500 % per year payable as follows:

50 (number of payments) MONTHLY (monthly/quarterly/annual) payments of $ 2,808.25, and a

FINAL/BALLOON payment of $ 300,029.23 to pay off the loan in full.

NOTICE TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENT OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.

B. This loan will be evidenced by a promissory note and secured by a deed of trust on property identified as *(street address or legal description)*:

9589 Paseo Temporada, San Diego, CA 92129

C. 1. Liens presently against this property *(do not include loan being applied for)*:

| Nature of Lien | Priority | Lienholders' Name | Amount Owing |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

2. Liens that will remain against this property after the loan being applied for is made or arranged *(include loan being applied for)*:

| Nature of Lien | Priority | Lienholders' Name | Amount Owing |
|---|---|---|---|
| TRUST DEED | FIRST | The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001 | $ 307,000.00 |
| | | | $ |
| | | | $ |
| | | | $ |

NOTICE TO BORROWER: Be sure that you state the amount of all liens as accurately as possible. If you contract with the broker to arrange this loan, but it cannot be arranged because you did not state these liens correctly, you may be liable to pay commissions, fees and expenses even though you do not obtain the loan.

D. If borrower pays all or part of the loan principal before it is due, a PREPAYMENT PENALTY computed as follows may be charged:

E. The purchase of credit life or credit disability insurance by a borrower is not required as a condition of making this loan.

III DEDUCTIONS FROM LOAN PROCEEDS

A Estimated Maximum Costs and Expenses of Arranging the Loan to be Paid Out of Loan Principal

| PAYABLE TO: | Broker | Others |
|---|---|---|
| 1 Appraisal fee | | 350.00 |
| 2 Escrow fee | | 450.00 |
| 3 Title insurance fee | | 925.00 |
| 4 Notary fees | | |
| 5 Recording fees | | |
| 6 Credit investigation fee | | |
| 7 Other costs and expenses | | |
| DOCUMENT PREPARATION FEE | | 595.00 |
| PROCESSING FEE | | 595.00 |

Total Costs and Expenses $ 2,518.00

* B. Brokerage Commission / Loan Origination Fee / Loan Discount $ 24,360.00

C. Estimated Payment to Made Out of Loan Principal on Authorization of Borrower

| PAYABLE TO: | Broker | Others |
|---|---|---|
| 1. Fire or other hazard insurance premiums | | |
| 2. Credit life or disability insurance premiums (See Paragraph II-E) | | |
| 3. Beneficiary statement fees | | |
| 4. Reconveyance and similar fees | | |
| 5. Discharge of existing liens against property: | | |
| 6 Other: | | |

Total to be Paid on Authorization of Borrower $ ________

If this loan is secured by a first deed of trust in a principal amount of less than $30,000 or secured by a junior lien in a principal amount of less than $20,000, the undersigned licensee certifies that the loan will be made in compliance with Article 7 of Chapter 3 of the California Real Estate Law.

KL111

MLDS 514 33792

* This loan may / will / will not *(delete two)* be made wholly or in part from broker controlled funds as defined in Section 10241(j) of the California Business and Professions Code.

* NOTICE TO BORROWER: This disclosure statement may be used if the broker is acting as an agent in arranging the loan by a third person or if the loan will be made with funds owned or controlled by the broker. If the broker indicates in the above statement that the loan "may" be made out of broker-controlled funds the broker must notify the borrower prior to the close of escrow if the funds to be received by the borrower are in fact broker-controlled funds

Eric Klein

Name of Broker

01123138

License Number

Signature of Broker

OR

ROBERT LAYTON

Broker Representative

00879549

License Number

Signature

The California Department of Real Estate license information line is (916) 227-0931

NOTICE TO BORROWER: DO NOT SIGN THIS STATEMENT UNTIL YOU HAVE READ AND UNDERSTAND ALL OF THE INFORMATION IN IT ALL PARTS OF THE FORM MUST BE COMPLETED BEFORE YOU SIGN

Borrower hereby acknowledges the receipt of a copy of this statement.

Alphonso Richardson

Ruth A Richardson

KL112

# EXHIBIT "F"

# COMMONWEALTH LAND TITLE COMPANY

5250 Jackson Drive, 2nd Floor, La Mesa, CA 91942
(619) 337-3960

## BUYERS/BORROWERS CLOSING STATEMENT
Final

Buyer/Borrower: Alphonso Richardson
Ruth A. Richardson

Escrow No: 04310389-044 CR3
Close Date: 08/24/2007
Proration Date.
Date Prepared: 08/24/2007

Property: 9589 Paseo Temporada
San Diego, CA 92129

| Description | Debit | Credit |
|---|---|---|
| **PAYOFFS:** | | |
| Payoff to SPS | $78,272.51 | |
| $75,838.06 Principal Balance | | |
| $5.37 Escrow Impound Balance | | |
| $41.82 Late Charges Outstanding | | |
| $90.00 Other Outstanding Fees | | |
| $90.00 PayOff Statement Fee | | |
| $30.00 Fax Fee | | |
| $45.00 Release Fee | | |
| $2,132.23 Interest per demand | | |
| $0.03 Interest on Advances | | |
| Payoff to CitiMortgage | $42,840.40 | |
| $41,966.00 Principal Balance | | |
| $9.00 Recording Fee | | |
| $120.00 Fax/Statement Fee | | |
| $681.96 Interest per demand | | |
| $54.44 Late Charge | | |
| $9.00 Delinquency Expenses | | |
| Payoff to United States Treasury | $86,974.70 | |
| $35,050.18 Tax Period 1999 Principal and Interest | | |
| $17,136.35 Tax Period 2001 Principal and Interest | | |
| $14,034.03 Tax Period 2002 Principal and Interest | | |
| $20,754.14 Tax Period 2004 Principal and Interest | | |
| **NEW AND EXISTING ENCUMBRANCES:** | | |
| Refinance from The Robison Family Trust, | | 307,000.00 |
| **LENDER'S AND LOAN RELATED CHARGES:** | | |
| Loan Origination Fee to The Robison Family Trust, | 3,070.00 | |
| Appraisal Fee to Appraisal Services | 350.00 | |
| Broker Fee to Apex Financial | 12,280.00 | |
| Processing Fee to Apex Financial | 595.00 | |
| Broker Fee to Eric Klein, Broker | 9,210.00 | |
| Document Fee to Eric Klein, Broker | 595.00 | |
| Prepaid Interest to The Robison Family Trust, @ $89.54 per day From 08/22/07 To 09/01/07 | 895.40 | |
| **TITLE AND ESCROW CHARGES:** | | |
| Lenders Policy to Commonwealth Land Title Company | 774.00 | |
| Overnight Fee(s) to Commonwealth Land Title Company | 20.00 | |
| Title CR: People V. LandAm (B) to Commonwealth Land Title Company | (10.00) | |
| Esc CR: People V. LandAm (B) to Commonwealth Land Title Company | (10.00) | |
| Escrow Fee to Commonwealth Land Title Company | 450.00 | |
| **RECORDING FEES:** | | |
| Recording Fees to Commonwealth Land Title Company | 54.00 | |

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
COMMONWEALTH LAND TITLE COMPANY
BY [signature]

CR106

Printed on 08/24/2007 at 3:04:10P

**EXHIBIT F**
**PAGE 1**

# COMMONWEALTH LAND TITLE COMPANY

5250 Jackson Drive, 2nd Floor, La Mesa, CA 91942
(619) 337-3960

## BUYERS/BORROWERS CLOSING STATEMENT
Final

Buyer/Borrower: Alphonso Richardson
Ruth A. Richardson

Escrow No: 04310389-044 CR3
Close Date: 08/24/2007
Proration Date:
Date Prepared: 08/24/2007

Property: 9589 Paseo Temporada
San Diego, CA 92129

| Description | Debit | Credit |
|---|---|---|
| Recording Fee to Commonwealth Land Title Company | 13.00 | |
| Recording Fee to Commonwealth Land Title Company | 13.00 | |
| ADDITIONAL CHARGES: | | |
| Homeowners/Fire Ins. to Farmers Insurance | 17.88 | |
| Notary/Sign up Fee to Mike Marshall | 125.00 | |
| Sub Totals | 236,529.89 | 307,000.00 |
| Refund Due Buyer/Borrower | 70,470.11 | |
| Totals | $307,000.00 | $307,000.00 |

CR107

Printed on 08/24/2007 at 3:04 1

**EXHIBIT F**
**PAGE 2**

A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

Commonwealth Land Title Company
5250 Jackson Drive
2nd Floor
La Mesa, CA 91942

FINAL

B. TYPE OF LOAN: 1. ☐ FHA 2. ☐ FmHA 3. ☒ CONV UNINS 4. ☐ VA 5. ☐ CONV INS

6. ESCROW FILE NUMBER: 04310389-044 CR3
7. LOAN NUMBER: 000628999
8. MORTGAGE INSURANCE CASE NUMBER:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER: Alphonso Richardson and Ruth A. Richardson

ADDRESS OF BORROWER: 9589 Paseo Temporada
San Diego, CA 92129

E. NAME OF SELLER:

ADDRESS OF SELLER:

F. NAME OF LENDER: The Robison Family Trust, Trustees Dated 4/05/2001
ADDRESS OF LENDER:

G. PROPERTY LOCATION: 9589 Paseo Temporada
San Diego, CA 92129
San Diego 315-368-09-00

H. SETTLEMENT AGENT: Commonwealth Land Title Company
PLACE OF SETTLEMENT: 5250 Jackson Drive, 2nd Floor, La Mesa, CA 91942

I. SETTLEMENT DATE: 08/24/2007
PRORATION DATE:
FUNDING DATE: 08/22/2007

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 28,442.28 | 403. | |
| 104. Payoff to SPS | 78,272.51 | 404. | |
| 105. Additional Payoffs | 129,815.10 | 405. | |
| Adjustments For Items Paid By Seller In Advance: | | Adjustments For Items Paid By Seller In Advance: | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due from borrower: | 236,529.89 | 420. Gross Amount Due to Seller | |
| **200. Amounts Paid by or in behalf of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 307,000.00 | 502. Settlement charges to Seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller: | | Adjustments For Items Unpaid By Seller: | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 307,000.00 | 520. Total Reductions in Amount Due Seller | |
| **300. Cash at Settlement from/to Borrower:** | | **600. Cash at Settlement to/from Seller:** | |
| 301. Gross amount due from Borrower (line 120) | 236,529.89 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amount paid by/for Borrower (line 220) | 307,000.00 | 602. Less reductions in amount due Seller (line 52 | |
| 303. Cash TO Borrower: | 70,470.11 | 603. Cash TO/FROM Seller: | 0.( |

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
COMMONWEALTH LAND TITLE COMPANY
BY ____________

CR108

Printed by Carol Ade Rice-799 on 08/24/2007 at 03:04:27

**EXHIBIT F**
**PAGE 3**

L. SETTLEMENT CHARGES: ESCROW FILE NUMBER: 08312389-044 CR3

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| **700. Total Sales/Broker's Commission:** | | |
| Based on Price $ | | |
| Division of Commission (line 700) follows: | | |
| 701. $ | | |
| 702. $ | | |
| $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. Items Payable In Connection With Loan:** | | |
| 801. Loan Origination Fee % to The Robison Family Trust, | 3,070.00 | |
| 802. Loan Discount Fee | | |
| 803. Appraisal Fee to Appraisal Services | 350.00 | |
| 804. Credit Report | | |
| 805. Lenders Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Broker Fee to Apex Financial | 12,280.00 | |
| 809. Processing Fee to Apex Financial | 595.00 | |
| 810. Broker Fee to Eric Klein, Broker | 9,210.00 | |
| 811. **See attached for breakdown | 595.00 | |
| **900. Items Required By Lender To Be Paid In Advance:** | | |
| 901. Interest from 08/22/07 to 09/01/07 @$89.54/day (10 days) | 895.40 | |
| 902. Mortgage Insurance Premium | | |
| 903. Hazard Insurance Premium | | |
| 904. | | |
| 905 | | |
| **1000. Reserves Deposited With Lender:** | | |
| 1001. Hazard Insurance | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes | | |
| 1005. Annual Assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Adjustment months @$ | | |
| **1100. Title Charges:** | | |
| 1101. Settlement or closing fee to Commonwealth Land Title Company | 450.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance | | |
| (includes above item numbers: ) | 774.00 | |
| 1109. Lender's coverage $ 307,000.00 | | |
| 1110. Owner's coverage $ | | |
| Lender's coverage $ | | |
| Lender's coverage $ | | |
| 1111. | 20.00 | |
| 1112. Overnight Fee(s) to Commonwealth Land Title Company | 20.00 | |
| 1113. **See attached for breakdown | | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. Recording Fees: Deed$ Mortgage $ 54.00 Release $ | 54.00 | |
| 1202. City/County tax/stamps | | |
| 1203. State tax/stamps | | |
| 1204. City Transfer Tax | | |
| 1205. County Transfer Tax | | |
| 1206 | 26.00 | |
| 1207. **See attached for breakdown | | |
| **1300. Additional Settlement Charges:** | | |
| 1301. Survey to | | |
| 1302. Pest Inspection | | |
| 1303. FUNDS held for final audit | 17.88 | |
| 1304. Homeowners/Fire Ins. to Farmers Insurance | 125.00 | |
| 1305. Notary/Sign up Fee to Mike Marshall | | |
| 1306. Taxes to PAID | | |
| 1307 | | |
| 1400. Total Settlement Charges (Enter on line 103,Section J -and- line 502, Section K) | 28,442.28 | 0.( |



Printed by Carol Aole Rice-799 on 08/24/2007 at 03:04:27 I

**EXHIBIT F**
**PAGE 4**

Attachments: Escrow Number: [illegible]-044 CR3

## BREAKDOWN OF NEW LOANS

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| The Robison Family Trust,, Trustees Dated 4/05/2001, , Loan# 000628999 | 307,000.00 | |
| Total of New Loans. | 307,000.00 | |

## HUD 800 ITEMS PAYABLE IN CONNECTION WITH LOAN

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| 813. Document Fee to Eric Klein, Broker | 595.00 | |
| Total as shown on HUD Page 2 Line #811. | 595.00 | |

## HUD 1113 DETAILED BREAKDOWN OF TITLE CHARGES

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| 1117. Title CR: People V. LandAm (B) to Commonwealth Land Title Company | (10.00) | |
| 1122. Esc CR: People V. LandAm (B) to Commonwealth Land Title Company | (10.00) | |
| Total as shown on HUD Page 2 Line #1113. | (20.00) | |

## HUD 1207 DETAILED BREAKDOWN OF RECORDING & TRANSFER CHARGES

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| 1208. Recording Fee to Commonwealth Land Title Company | 13.00 | |
| 1209. Recording Fee to Commonwealth Land Title Company | 13.00 | |
| Total as shown on HUD Page 2 Line #1207. | 26.00 | |

CR110

Printed by Carol Aole Rice-799 on 08/24/2007 at 03:04:27

OMB No 2502-026

Escrow Number: 04310389-044 CR3

BREAKDOWN OF PAYOFF ON HUD line 104

Payoff to: SPS

Loan #: 0004214060

| Description | Amount |
|---|---|
| Principal Balance | 75,838.06 |
| Escrow Impound Balance | 5.37 |
| Late Charges Outstanding | 41.82 |
| Other Outstanding Fees | 90.00 |
| PayOff Statement Fee | 90.00 |
| Fax Fee | 30.00 |
| Release Fee | 45.00 |
| Interest per demand | 2,132.23 |
| Interest on Advances | 0.03 |
| Total Payoff | 78,272.5 |

Total as shown on HUD line #104. 78,272.5

BREAKDOWN OF PAYOFF ON HUD line 105

Payoff to: CitiMortgage

Loan #: 4008803

| Description | Amount |
|---|---|
| Principal Balance | 41,966.0 |
| Recording Fee | 9.0 |
| Fax/Statement Fee | 120.0 |
| Interest per demand | 681.9 |
| Late Charge | 54.4 |
| Delinquency Expenses | 9.0 |
| Total Payoff | 42,840.4 |

Payoff to: United States Treasury
Lockbox
Po Box 1210
Charlotte, NC 28202-1210

Loan #: 46464

| Description | Amount |
|---|---|
| Tax Period 1999 Principal and Interest | 35,050.1 |
| Tax Period 2001 Principal and Interest | 17,136.3 |
| Tax Period 2002 Principal and Interest | 14,034.0 |
| Tax Period 2004 Principal and Interest | 20,754.1 |
| Total Payoff | 86,974.7 |

Total as shown on HUD line #105. 129,815.1

CR111

Printed by Carol Ante Rice-799 on 08/24/2007 at 03:04:27

EXHIBIT F
PAGE 6

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>DECLARATION OF DUANE S. HORNING IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

I, DUANE S. HORNING, declare as follows:

1. I am an attorney licensed to practice law in the State of California, and am the sole shareholder of California Business Group, PC, counsel for Defendants CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L.

ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE. I have personal knowledge of the following facts and if called upon could and would testify competently thereto.

2. On or about June 4, 2008, I attended the Court's hearing on Plaintiffs' Application for a Temporary Restraining Order ("TRO"). During the hearing, I heard opposing counsel state that Plaintiffs had no grounds to challenge the validity of the powers of attorney.

3. Attached hereto as Exhibit G is a true and correct copy of the Court's Order denying Plaintiffs request for a TRO.

4. Attached hereto as Exhibit H is a true and correct copy of the lis pendens that plaintiffs recorded against the property at 9589 Paseo Temporada, San Diego, California ("Property") on or about July 8, 2008.

5. Attached hereto as Exhibit I is a true and correct copy of the notice of substitution of trustee that was recorded on the Property title on February 6, 2008.

6. Attached hereto as Exhibit J is a true and correct copy of Plaintiffs' Complaint for Damages, to Enjoin Foreclosure, and For Declaratory Relief.

7. In preparing, this Motion to Expunge Lis Pendens, I was assisted by a contract attorney, Daniel Lickel, Esq. Mr. Lickel's rate is $275 per hour. My billing rate is $325 an hour. Mr. Lickel spent approximately 28.5 hours, and I spent approximately 5.6 hours researching and preparing this motion and three supporting declarations, for a total of $9,657.50.

8. In preparing the reply brief, I anticipate that I will spend approximately 2 additional hours, and Mr. Lickel will spend approximately 10 additional hours. The additional anticipated costs for this will be $3,400.

///

///

///

///

///

9. In preparing for and attending oral argument, I anticipate that I will spend another two hours of time at an additional cost of $650. The total cost in attorneys fees' for preparing this motion is expected to be $13,707.50.

I declare the foregoing is true and correct under the penalty of perjury of the laws of the United States of America and the State of California, executed this 4th day of August, 2008, in San Diego, California.

DUANE S. HORNING

## EXHIBITS – TABLE OF CONTENTS

Exhibit G: Order Denying Plaintiffs' Application for Temporary Restraining Order dated June 5, 2008 .......... 1-7

Exhibit H: Notice of Pendency of Action recorded on July 9, 2008 .......... 1-3

Exhibit I: Substitution of Trustee dated February 1, 2008 .......... 1

Exhibit J: Plaintiffs' Complaint for Damages, to Enjoin Foreclosure, and for Declaratory Relief .......... 1-62

# EXHIBIT "G"

Case 3 08-cv-00902-W 1-BLM Document 7 Filed 06/05 08 Page 1 of 7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLES O. ROBISON, Individually and as Trustee of the Robison Family Trust Dated April 5, 2001, et al.,<br><br>Defendants. | CASE NO. 08CV902 WQH (BLM)<br><br>ORDER DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER |

HAYES, Judge:

Pending before the Court is Plaintiffs' application for temporary restraining order. (Doc. # 3).

PROCEDURAL BACKGROUND

On May 21, 2008, Plaintiffs Alphonso Richardson Sr. and Ruth A. Richardson filed the Complaint in this matter against Defendants Charles O. Robison, Blanche L. Robison, Richard Cheroske, Eric A. Klein, Robert H. Layton, Alphonso Richardson Jr., Statewide Reconveyance, Inc., and Commonwealth Land Title Company. (Doc. # 1). The Complaint alleges that Defendants conspired to refinance Plaintiffs' home without Plaintiffs' consent in order to "convert the built up equity in Plaintiff's home" at Plaintiff's expense, in violation of the Truth in Lending Act (15 U.S.C. §§ 1601 et seq.), California's Predatory Lending Law (CAL. FIN. CODE §§ 4970 et seq.), and other State statutory and common law. (Doc. # 1 at 5).



EXHIBIT G
PAGE 1

Case 3:08-cv-00902-W -BLM Document 7 Filed 06/05/08 Page 2 of

On June 3, 2008, Plaintiffs filed an application for temporary restraining order. (Doc. # 3). The application seeks to enjoin Defendants from selling Plaintiff's home at a non-judicial foreclosure sale scheduled for June 5, 2008. On June 4, 2008, Defendants Charles Robison, Blanche Robison, and Richard Cheroske filed an opposition to the application for temporary restraining order. (Doc. # 5).

On January 4, 2008, the parties appeared before the Honorable William Q. Hayes for oral argument on Plaintiff's application for temporary restraining order. *See* (Doc. # 4).

## FACTUAL BACKGROUND

Plaintiffs Alphonso Richardson Sr. and Ruth A. Richardson are married and are joint owners of a residence located at 9589 Paseo Temporada, San Diego, CA 92129. *Declaration of Alphonso Richardson, Sr.* (Doc. # 3-3), ¶ 2. Plaintiffs have resided at the residence for approximately thirty (30) years during which time Plaintiffs made regular mortgage payments. *Alphonso Sr. Decl.*, ¶ 3. Plaintiff Alphonso Richardson Sr. suffers from chronic diabetes and Plaintiff Ruth A. Richardson is disabled. *Alphonso Sr. Decl.*, ¶ 4.

In late 2006, Plaintiff Alphonso Richardson Sr. was hospitalized for approximately two weeks due to kidney failure. *Alphonso Sr. Decl.*, ¶ 5. Thereafter, and while he recovered from his ailments, Plaintiff Alphonso Richardson Sr. signed a power of attorney, "granting general powers" to his wife, Plaintiff Ruth A. Richardson, and his son, Defendant Alphonso Richardson Jr. *Alphonso Sr. Decl.*, ¶ 5. Sometime later, Defendant Alphonso Richardson Jr. obtained a power of attorney from his mother, Plaintiff Ruth A. Richardson. *Alphonso Sr. Decl.*, ¶ 5.

On August 17, 2007, Defendant Alphonso Richardson Jr. used the powers of attorney he obtained from his parents to refinance Plaintiffs' home against Plaintiffs' will and without Plaintiffs' consent or knowledge. *Alphonso Sr. Decl.*, ¶ 6. In refinancing the home, Defendant Alphonso Richardson Jr. worked with Defendants Eric A. Klein (real estate broker), Robert Layton (real estate salesperson), and the Robison Family Trust (money lender). *Alphonso Sr. Decl.*, ¶ 6. Plaintiffs did not learn that Defendants had refinanced Plaintiffs' home until approximately one week after it occurred, at which time (1) Defendant Commonwealth informed Plaintiff that "the deal was done and it was too late to rescind it," and (2) Defendant Alphonso Richardson Jr. had left town with approximately $75,000. *Alphonso Sr. Decl.*, ¶ 7; (Doc. # 3 at 2).

Case 3:08-cv-00902-W -BLM Document 7 Filed 06/05/08 Page 3 of 7

Before agreeing to refinance Plaintiffs' home, Defendant Charles O. Robison reviewed Plaintiffs' credit and income reports. *Declaration of Charles O. Robison*, ¶ 3. "The Richardsons' monthly income was reported to be $7,155.00," earned from "retirement and disability." *Robison Decl.*, ¶ 3. Accordingly to Defendant Charles O. Robison, Plaintiffs' income "appeared . . . to be more than adequate for the Richardsons to meet their monthly needs and monthly loan payments." *Robison Decl.*, ¶ 3. Defendant Charles O. Robison reviewed the power of attorney obtained by Defendant Alphonso Richardson Jr. with respect to his Plaintiff parents, and relied upon the power of attorney in making the loan to Plaintiffs. *Robison Decl.*, ¶¶ 4-5.

Plaintiffs did not learn the terms and contents of the refinancing agreement until Defendants requested payment sometime after the first payment was due. *Alphonso Sr. Decl.*, ¶ 9. Under the terms of the refinancing agreement, Plaintiffs were obligated to pay $2,808.25 per month, which was "approximately $700.00 more a month" than Plaintiffs paid before the refinancing. *Alphonso Sr. Decl.*, ¶ 9. In addition, Plaintiffs were obligated to make a balloon payment of $300,029.28 after 60 months. *Alphonso Sr. Decl.*, ¶ 9. As part of the refinancing agreement, proceeds of the loan paid off Plaintiffs' two prior mortgages, in addition to a tax lien imposed by the United States in the amount of $86,974.00. (Doc. # 3, Ex. 1).

Plaintiffs "began to have difficulty making the monthly payment from the onset." *Alphonso Sr. Decl.*, ¶ 11. On or about February 5, 2008, Defendant Statewide Reconveyance, Inc. served Plaintiff Alphonso Richardson Sr. with a "Notice of Default and Election to Sell Under the Deed of Trust." *Alphonso Sr. Decl.*, ¶ 12. In late April, 2008, Plaintiffs' counsel sent Defendants a "Notice of Rescission" with respect to the refinancing agreement "based on the fact that [Plaintiffs] never received the legally-required notices." *Alphonso Sr. Decl.*, ¶ 14. On May 8, 2008, attorney for Defendants Charles O. Robison, Blanche L. Robison, and Richard Cheroske informed Plaintiffs' attorney that there were no grounds for rescission of the refinancing agreement. *Opp. to TRO*, Ex. C.

On May 8, 2008, Defendants issued a "Notice of Trustee's Sale Under Deed of Trust" informing Plaintiffs that Plaintiffs' home would be sold on June 5, 2008, at 10:00 A.M. (Doc. # 3, Ex. 6). On May 15, 2008, Defendant Statewide, as agent for the Robison Defendants, "posted and affixed" a notice of sale to Plaintiffs' home. *Alphonso Sr. Decl.*, ¶ 15. The sale is presently scheduled



EXHIBIT G
PAGE 3

Case 3:08-cv-00902-W -BLM Document 7 Filed 06/05 08 Page 4 of

for June 5, 2008. *Alphonso Sr. Decl.*, ¶ 15.

In December, 2007 and April, 2008, Plaintiffs did not make required tax payments on their home. *Robison Decl.*, ¶ 8. In addition, Plaintiffs failed to pay insurance premiums on their home, which premiums were later paid by Defendant Charles O. Robison. *Robison Decl.*, ¶ 9.

## STANDARD OF REVIEW

FED. R. CIV. P. 65(b) provides that the court may issue a temporary restraining order (TRO) without notice to the adverse party where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant . . . ." Regardless of notice to Defendant, the standard for issuing a TRO is similar to the standard for issuing a preliminary injunction, and requires that the party seeking relief show either "(1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party." *Homeowners Against the Unfair Initiative v. Calif. Building Industry Assoc.*, Civil No. 06CV152 JAH (WMc), 2006 U.S. Dist. LEXIS 97023, *4 (S.D. Cal. Jan. 26, 2006) (citing *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002)). "[T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Dep't Parks & Rec. of Calif. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006) (citations omitted).

The underlying purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006); *Homeowners Against the Unfair Initiative v. Calif. Building Industry Assoc.*, Civil No. 06CV152 JAH (WMc), 2006 U.S. Dist. LEXIS 97023, *4 (S.D. Cal. Jan. 26, 2006).

## DISCUSSION

Plaintiffs contend that they are entitled to a temporary restraining order enjoining Defendants from selling Plaintiffs' home at a non-judicial foreclosure sale scheduled for June 5, 2008, because Defendants violated the Truth in Lending Act's Home Ownership Equity Protection Act (HOEPA),

Case 3:08-cv-00902-W -BLM Document 7 Filed 06/05/ 08 Page 5 of 7

15 U.S.C § 1639, which entitles Plaintiffs to rescind the refinancing agreement. Specifically, Plaintiffs contend that Defendants failed to (1) disclose certain information three days prior to consummation of the transaction, (2) give HOEPA warnings in conspicuous typeset, (3) to provide both joint owners with a notice that either can unilaterally cancel, and (4) provide a total of two copies per borrower. Plaintiffs contend that Defendants' failures entitle Plaintiffs to rescission of the refinancing agreement, and that Defendants must be enjoined from selling Plaintiffs' home at a non-judicial foreclosure sale in light of the fact that Plaintiffs have notified Defendants of their election to rescind the refinancing agreement.

Defendants Charles O. Robison, Blanch Robison, and Richard Cheroske contend that Plaintiffs' application for temporary restraining order should be denied because Plaintiffs delayed filing the application for temporary restraining order until the last moment to the detriment of Defendants. In addition, Defendants contend that Plaintiffs have no likelihood of success on the merits, and note that Defendants would be prejudiced if the application were to be granted.

**A. Likelihood of Success on the Merits & The Possibility of Irreparable Harm**

Plaintiffs contend that they are entitled to rescission of the refinancing agreement because Defendants failed to make certain disclosures at least three days before consummation of the refinancing agreement. Defendants contend that the required disclosures were made seven days prior to close of escrow, and note that Plaintiffs' son acknowledged the disclosures.

It is undisputed that Plaintiffs assigned their powers of attorney to their son, Defendant Alphonso Richardson, Jr., and Plaintiffs do not challenge the validity of that assignment. *See Opposition to TRO*, Ex. F. After reviewing the evidence before the Court, the Court concludes that Alphonso Richardson Jr. received various disclosures on August 17, 2008. *See Opp. To TRO*, Ex. C. Indeed, Defendants have attached no fewer than nine acknowledgments, each signed by Alphonso Richardson, Jr. on behalf of Plaintiffs, which indicate that Alphonso Richardson Jr. received the required disclosures. *See Opposition to TRO*, Ex. C.

While Plaintiffs acknowledge the disclosures made by Defendants on August 17, 2008, Plaintiffs contend that the disclosures were late because they were not made at least three days prior to "consummation of the transaction." (Doc. # 3 at 2). Plaintiff contends that the transaction was

Case 3:08-cv-00902-W -BLM Document 7 Filed 06/05/08 Page 6 of 7

"consummated" on August 17, 2007, the same date that the disclosures were made. The record indicates, however, that the refinancing agreement did not close until August 24, 2008, and Plaintiffs have not cited authority which would establish that the refinancing agreement consummated on August 17, 2008, rather than August 24, 2007–the date escrow closed and the security interest was recorded. *See* (Doc. # 3, Ex. 1-3).

In addition to Plaintiffs' inability to establish that the required disclosures were not made, Plaintiffs have not offered, established, or indicated that they would be willing or capable of tendering the loan amount to Defendants if rescission were ordered. Repayment of the loan amount, however, would be required if rescission were ordered, and therefore the Court cannot determine that rescission is a viable remedy at this time and under the facts of this case. *See, e.g.*, 15 U.S.C. § 1635(b).

As the moving party, it is Plaintiffs' burden to establish a likelihood of success on the merits of their rescission claim. However, after reviewing Plaintiffs' application for temporary restraining order, the Court concludes that Plaintiffs have not established a likelihood of success on the merits. Accordingly, even assuming Plaintiffs could show the possibility of irreparable harm, the Court concludes that Plaintiffs are not entitled to relief under this formulation of the standard of review.

**B. Serious Questions Raised & Balance of Hardships**

Plaintiffs contend that the balance of hardships tips in their favor and that they will suffer harm if Defendants are permitted to sell Plaintiffs' home at a non-judicial foreclosure sale on June 5, 2008. However, the Court notes that Plaintiffs have been on notice of the June 5, 2008, foreclosure sale since at least May 8, 2008, and have been aware that they were in default since at least February 5, 2008. *See* (Doc. # 3, Exs. 6-7); (Doc. # 1, Ex. 3). While the putative loss of Plaintiffs' home is certainly a significant interest, the Court finds that Plaintiffs' delay and lack of diligence in filing the application for temporary restraining order has prejudiced Defendants' ability to defend. *See Apache Survival Coalition v. OLA Cassadore Davis*, 118 F.3d 663, 665-66 (9th Cir. 1997) (affirming district court's denial of TRO on the grounds of laches because of lack of due diligence). In addition, the Court concludes that Defendants Charles Robison, Blanche Robison, and Richard Cheroske will suffer prejudice if the long-noticed foreclosure sale is enjoined. Defendants Charles and Blanche Robison expected to receive monthly payments based on the loan to Plaintiffs, but have received nothing since



**EXHIBIT G**
**PAGE 6**

Case 3:08-cv-00902-W I-BLM Document 7 Filed 06/05 08 Page 7 of 7

Plaintiffs defaulted. The properly noticed foreclosure sale will provide Defendants with funds to which they are entitled under the loan documents.

After reviewing the equities in this case, the Court concludes that Plaintiffs have not met their burden to establish that the balance of hardships tips sharply in Plaintiffs' favor. Accordingly, even assuming Plaintiffs have raised serious questions going to the merits of this case–and the Court concludes that Plaintiffs haven't done so–the Court concludes that Plaintiffs are not entitled to relief under this formulation of the standard of review.

## CONCLUSION

A temporary restraining order is an "extraordinary remedy" which should be issued sparingly. *C.S. v. Cal. Dep't of Educ.*, 08CV226 W (AJB), 2008 U.S. Dist. LEXIS 35267, *6-8, 13 (S.D. Cal. Apr. 30, 2008). After reviewing the merits and equities in this case, the Court concludes that Plaintiffs have not met their burden to establish either a likelihood of success on the merits and the possibility of irreparable harm, or that serious questions going to the merits have been raised and the balance of hardships tips sharply in Plaintiffs' favor. Accordingly, Plaintiffs' application for a temporary restraining order (Doc. # 3) to enjoin Defendants' sale of Plaintiffs' home at non-judicial foreclosure sale is DENIED.

IT IS SO ORDERED.

DATED: June 5, 2008

William Q. Hayes

WILLIAM Q. HAYES
United States District Judge



EXHIBIT G
PAGE 7

# EXHIBIT "H"

Case 3:08-cv-00902-V H-BLM Document 16 Filed 0 /2008 Page 1 of 3

BARRY D. MILLS, SBN 185823
Attorney at Law
3588 Fourth Avenue, Suite 210
San Diego, CA 92103
(619) 295-5000 Telephone
(619) 338-4033 Facsimile

Attorney for Plaintiffs ALPHONSO RIC
RUTH A. RICHARDSON

THE ORIGINAL OF THIS DOCUMENT
WAS RECORDED ON JUL 09, 2008
DOCUMENT NUMBER 2008-0366014
GREGORY J. SMITH, COUNTY RECORDER
SAN DIEGO COUNTY RECORDER'S OFFICE
TIME: 10:47 AM

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ALPHONSO RICHARDSON, SR., and RUTH A. RICHARDSON,

Plaintiffs,

vs.

CHARLES O. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001; RICHARD CHEROSKE, individually and as assignee of The Robison Family Trust; ERIC A. KLEIN, individually; ROBERT H. LAYTON, individually; ALPHONSO RICHARDSON, JR., individually; STATEWIDE RECONVEYANCE, INC. dba STATEWIDE FORECLOSURE SERVICES, a California corporation; COMMONWEALTH LAND TITLE COMPANY, a California corporation, and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 08 CV 0902 WQH BLM

**NOTICE OF PENDENCY OF ACTION**

NOTICE IS GIVEN that the above action was commenced on May 21, 2008, in the above court by plaintiffs ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON against defendants CHARLES O. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001, et al. The action is now pending in the above-entitled court.

**EXHIBIT H**
**PAGE 1**

Case 3:08-cv-00902-WQH-BLM Document 16 Filed 07/ /2008 Page 2 of 3

The above action alleges a real property claim affecting certain real property that is situated in San Diego County, California, and that is described as follows: 9589 Paseo Temporada, San Diego, CA 92129 - legal description: Lot 257 of Penasquitos Estates Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 8637, filed in the Office of the County Recorder of the San Diego County, August 9, 1977. Accessors Parcel Number: 315-368-09.

DATED: July 8, 2008

BARRY D. MILLS
Attorney at Law

By: ______________________
BARRY D. MILLS,
Attorney for Plaintiffs

**EXHIBIT H**
**PAGE 2**

Barry D. Mills, State Bar No 185823
Attorney at Law
3588 Fourth Avenue, Suite 210
San Diego, CA 92103
(619) 295-5000
Attorney for: Plaintiffs ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON

UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA

PLAINTIFFS: ALPHONSO RICHARDSON, SR., et al.
DEFENDANTS: CHARLES O. ROBISON, et al.
CASE NO.: 08 CV 0902 WQH BLM

I, the undersigned, declare that I am over the age of 18 years of age and not a party to this case; I am enclosed in, or am a resident of, the County of San Diego, California, where the mailing occurs; and my business address is 3588 Fourth Avenue, Suite 210, San Diego, California.

I further declare that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

I caused to be served the following document(s):

**NOTICE OF PENDENCY OF ACTION**

by placing a copy of each document in a separate envelope addressed to each addressee, respectively, as follows:

Charles O. Robison
Blanche L. Robison
The Robison Family Trust
5150 Vivera Drive
La Mesa, CA 91941

Via Certified Mail, Return Receipt Request

Richard Cheroske
P. O. Box 1935
Lakeside, CA 92040

Via Certified Mail, Return Receipt Request

Duane S. Horning
California Business Law Group, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101

Attorney for Defendants Robison and Cheroske

David J. Lola
Sunderland McCutchan, LLP
11770 Bernardo Plaza Court, Suite 250
San Diego, CA 92128

Attorneys for Defendants Eric Klein and Robert Layton

Gary M. Orlansky
The Law Offices of Jack I. Mann
1901 First Avenue, Suite 405
San Diego, CA 92101

Attorneys for Defendant Statewide Reconveyance Group, Inc.

I then sealed each envelope and, with postage thereon fully prepaid:

( X ) I deposited each in the United States Postal Service at San Diego, California.
( ) I placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.
( ) I served via facsimile to each addressee shown above.
( ) I placed each for deposit with Federal Express for over-night, this same day at my business address shown above, following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 8, 2008 [signature]

BARRY D. MILLS

C:\Case\Richardson\ProofofLisPendens



**EXHIBIT H**
**PAGE 3**

# EXHIBIT "I"

RECORDING REQUESTED BY

THE ORIGINAL OF THIS DOCUMENT
WAS RECORDED ON FEB 05, 2008
DOCUMENT NUMBER 2008-0060289
GREGORY J SMITH COUNTY RECORDER
SAN DIEGO COUNTY RECORDER'S OFFICE
TIME 11:57 AM

WHEN RECORDED MAIL TO

STATEWIDE RECONVEYANCE GROUP, INC. DBA
STATEWIDE FORECLOSURE SERVICES
P O BOX 2896
SAN DIEGO, CA 92119

LOAN: 000628999 OTHER: FILE: 7527

# SUBSTITUTION OF TRUSTEE

WHEREAS, ALPHONSO RICHARDSON AND RUTH A. RICHARDSON , HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, COMMONWEALTH LAND TITLE COMPANY was the original Trustee, and THE ROBISON FAMILY TRUST, CHARLES O. ROBISON AND BLANCHE L. ROBISON, TRUSTEES DATED 04/05/2001 was the original Beneficiary under that certain Deed of Trust dated 08/17/2007 recorded on 08/24/2007 as Instrument Number 2007-0564203 Book Page of Official records in the office of the Recorder of SAN DIEGO County, California,

AND WHEREAS, the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of said original Trustee thereunder.

NOW THEREFORE, the undersigned Beneficiary hereby substitutes STATEWIDE RECONVEYANCE GROUP INC., DBA STATEWIDE FORECLOSURE SERVICES as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 02/01/2008

Charles O Robison TTE
CHARLES O. ROBISON, TTEE

STATE OF CALIFORNIA,
COUNTY OF SAN DIEGO

On 02/01/2008 before me, J. EDWARDS, a Notary Public for said State, personally appeared CHARLES O. ROBISON, TTEE, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(Seal)

WITNESS my hand and official seal.

Signature [signature]
J. EDWARDS

J. EDWARDS
COMM. # 1716473
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
MY COMM. EXP. JAN. 13, 2011

Substitution of Trustee: TWC-002 (7/94)

CR208

EXHIBIT I
PAGE 1

# EXHIBIT "J"

BARRY D. MILLS, SBN 185823
Attorney at Law
3588 Fourth Avenue, Suite 210
San Diego, CA 92103
(619) 295-5000 Telephone
(619) 338-4033 Facsimile

Attorney for Plaintiffs ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON

FILED
08 MAY 21 PM 12:56
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ALPHONSO RICHARDSON, SR., and RUTH A. RICHARDSON,

Plaintiffs,

vs.

CHARLES O. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of The Robison Family Trust dated 04/05/2001; RICHARD CHEROSKE, individually and as assignee of The Robison Family Trust; ERIC A. KLEIN, individually; ROBERT H. LAYTON, individually; ALPHONSO RICHARDSON, JR., individually; STATEWIDE RECONVEYANCE, INC. dba STATEWIDE FORECLOSURE SERVICES, a California corporation; COMMONWEALTH LAND TITLE COMPANY, a California corporation, and DOES 1 through 100, inclusive,

Defendants.

CASE NO. '08 CV 0902 WQH BLM

**COMPLAINT FOR DAMAGES, TO ENJOIN FORECLOSURE, AND FOR DECLARATORY RELIEF**

1. Violations of The Truth in Lending Act (15 USC §§ 1601 *et seq.*)
2. Violations of California's Predatory Lender Law, (Cal. Fin. Code §§ 4970 *et seq.*);
3. Violations of California's Real Estate Licensing Regulations, (Cal. Bus. & Prof. Code §§ 10240 *et seq.*);
4. Breach of Fiduciary Duty;
5. Constructive Fraud;
6. Negligence;
7. Violations of California's Fair Debt Collection Practices Act (Cal. Civil Code §§ 1788 et seq.);
8. Declaratory Relief; and
9. Injunctive Relief.

**JURY TRIAL DEMAND**

Plaintiffs ALPHONSO RICHARDSON, SR. and RUTH A. RICHARDSON complain as follows:

**I.**

**INTRODUCTION**

1. This is an action for damages, injunctive relief and declaratory relief

**EXHIBIT J**
**PAGE 1**

brought by individual consumers for Defendants' violations of The Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, (hereinafter "TILA"), including violations of The Home Ownership and Equity Protection Act, 15 U.S.C. §1639, (hereinafter "HOEPA"), Regulation Z, 12 C.F.R. §§ 226 *et seq.*, and for violations of California's Predatory Lending Law, (Cal. Fin. Code §§ 4970 *et seq.*), California's Real Estate Licensing Regulations (Cal. Bus. & Prof. Code §§ 10240), and California's Fair Debt Collection Practices Act, "The Rosenthal Act", (Cal. Civil Code §§ 1788 *et seq.*). This is also an action for violations of California common law that arose from the same transaction and the same nucleus of operative facts. Plaintiffs respectfully demand a Jury Trial.

## II.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. §§ 1601 *et seq.* and 28 U.S.C. §1337.

3. Pursuant to 28 U.S.C. §1367, Supplemental Jurisdiction for claims under California's Predatory Lending Law, (Cal. Fin. Code §§ 4970 *et seq.*), California's Real Estate Licensing Regulations (Cal. Bus. & Prof. Code §§ 10240), California's Fair Debt Collection Practices Act, "The Rosenthal Act", (Cal. Civil Code §§ 1788 *et seq.*), and claims involving state common law causes of action because these claims involve the same transaction and nucleus of operative facts.

4. Venue is proper in the United States District Court, Southern District of California because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## III.

## PARTIES

5. Plaintiff ALPHONSO RICHARDSON, SR., at all times herein relevant, resided and resides in the County of San Diego, California. Mr. Richardson is a disabled adult pursuant to Cal. Civil Code §3345 and a dependent adult pursuant to the Elder Abuse and Dependent Adult Protection Act, (Cal. Welfare & Institutions Code §§ 15600,

**EXHIBIT J**
**PAGE 2**

15610.23).

6. Plaintiff RUTH A. RICHARDSON, at all times herein relevant, resided and resides in the County of San Diego, California. Ms. Richardson is an elder and disabled adult pursuant to Elder Abuse and Dependent Adult Protection Act, (Cal. Welfare & Institutions Code §§ 15600, 15610.27).

7. Plaintiffs ALPHONSO RICHARDSON SR. and RUTH A. RICHARDSON are married to one another and are joint tenants of residential property commonly known as 9589 Paseo Temporada, San Diego, California 92129.

8. Plaintiffs are informed and believe and thereon allege that defendant CHARLES O. ROBISON, at all times herein relevant, resided or resides in the County of San Diego, California and is a Trustee of the Robison Family Trust dated 04/05/2001.

9. Plaintiffs are informed and believe and thereon allege that defendant BLANCHE L. ROBISON, at all times herein relevant, resided or resides in the County of San Diego, California and is a Trustee of the Robison Family Trust dated 04/05/2001.

10. Plaintiffs are informed and believe and thereon allege that defendant RICHARD CHEROSKE is an assignee of an interest in the transaction herein described and based upon said assignment is liable for any and all act or omissions of the Robison defendants.

11. Plaintiffs are informed and believe, and thereon allege that defendant ERIC A. KLEIN, at all times herein relevant, resided or resides in the County of San Diego, California.

12. Plaintiffs are informed and believe, and thereon allege that defendant ROBERT H. LAYTON, at all times herein relevant, resided or resides in the County of San Diego, California.

13. Plaintiffs are informed and believe, and thereon allege that defendant ERIC A. KLEIN is duly licensed by the State of California as a real estate broker, License ID # 01123138. Additionally, upon information and belief, defendant ROBERT H. LAYTON, is a salesperson pursuant to Mr. Klein's license. Mr. Layton's License ID # is

**EXHIBIT J**
**PAGE 3**

008790549.

14. Plaintiffs are informed and believe, and thereon allege that defendant ALPHONSO RICHARDSON, JR., at all times herein relevant, resided in the County of San Diego, California, but presently resides in the County of Riverside, California.

15. Plaintiffs are informed and believe, and thereon allege that defendant STATEWIDE RECONVEYANCE GROUP, INC. dba STATEWIDE FORECLOSURE SERVICES (hereinafter "STATEWIDE") is a California corporation and, at all times herein relevant, was and is doing business within the County of San Diego.

16. Plaintiffs are informed and believe, and thereon allege that defendant STATEWIDE is the employ, servant and/or agent of the Beneficiary of a certain Deed of Trust, the Beneficiary being The Robison Family Trust. As set forth above, Defendants CHARLES O. ROBISON and BLANCHE L. ROBISON are the Trustees of said Trust.

17. Plaintiffs are informed and believe, and thereon allege that defendant COMMONWEALTH LAND TITLE COMPANY (hereinafter "COMMONWEALTH") is a California corporation and, at all times herein relevant, was and is doing business within the County of San Diego.

18. At all times herein relevant, including at the time of the filing of this Complaint, COMMONWEALTH was and is the Trustee set forth in the Deed of Trust. As set forth below, Plaintiffs contend that the Deed of Trust is no longer valid. However, Plaintiffs named COMMONWEALTH as a defendant in this action for notice purposes only. Presently, Plaintiffs do not set forth any Claim against COMMONWEALTH.

19. The true names and capacities of defendants DOES 1 through 100 inclusive, are unknown to plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the defendants herein designated as a DOE is responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby as hereinafter alleged.

20. Plaintiffs are informed and believe and thereon allege, that at all times

**EXHIBIT J**

**PAGE 4**

herein mentioned, each of the defendants was the agent, servant and employee of each of the remaining defendants, and at all times herein mentioned, each was acting within the purpose and scope of said agency, service and employment.

21. Whenever this complaint references acts and/or omissions of any defendant or defendants, such allegation shall be deemed to mean the act and/or omission of those defendants named in the particular cause of action and each of them acting, individually, jointly and severally.

22. Plaintiffs are informed and believe and thereon allege, that at all times herein mentioned, defendants and each of them conspired with each other to commit the acts herein complained of or were otherwise joint venturers or engaged in a joint enterprise the object of which was to covert the built up equity in Plaintiffs' home, i.e. the Paseo Temporada property. Accordingly, each and every defendant is directly liable for the acts and/or omissions of the other defendants committed in the furtherance of the conspiracy or for the benefit of the joint venture.

## IV.

## FACTUAL ALLEGATIONS

23. In the early 1980s, Mr. and Ms. Richardson purchased their home at 9589 Paseo Temporada, San Diego, California 92129. From that date, Plaintiffs have continuously resided at this address. The home located at 9589 Paseo Temporada is the Plaintiffs' principle dwelling.

24. Over the course of the last twenty-seven (27) years, the Richardsons paid the mortgage for their home at Paseo Temporada in anticipation of having a secure place for their retirement.

25. Mr. Richardson was the sales manager at Mossey Toyota but was forced to retire in early 2007 and seek disability from the State of California and the Social Security Administration. Mr. Richardson has chronic diabetes.

26. Ms. Richardson is bipolar and legally blind. She was a welfare case worker for the County of San Diego before her retirement approximately four (4) years

ago. She presently receives a pension and Social Security payments.

27. In late 2006, Mr. Richardson was hospitalized for approximately two (2) weeks due to kidney failure. In or about November 2006, he was transferred to a convalescent hospital to recover from his hospital stay. During that period of time, at the urging of his health care provider, he signed a Power to Attorney, granting general powers to his wife, RUTH A. RICHARDSON and his son, defendant ALPHONSO RICHARDSON, JR. (hereinafter "Alphonso Jr.").

28. In early to mid 2007, after Mr. Richardson retired, he began to receive telephone calls from the lender with whom he had a line of credit, Beneficial, regarding the re-financing of his property. Mr. Richardson told Beneficial and Alphonso Jr. that he did not want to refinance the property. He received no further telephone calls from Beneficial.

29. At that time, Plaintiffs were paying a first mortgage with Citimortgage at a rate of approximately $1,200.00 a month. They only had three (3) years left to pay on their first. They also had a second mortgage with Select Portfolio Servicing and were paying at a rate of approximately $900.00 a month.

30. Upon information and belief, in or about early or mid 2007, Defendant Alphonso Junior began to conspire with Defendants real estate brokers Klein and Layton and certain DOES to tap the built-up equity and appreciation in the Richardsons' home and to generate commissions. However, due to Plaintiffs' advanced age, disabilities and limited income, said Defendants were unable to find a conventional lender to re-finance the property. Upon information and belief, at that time, the Robison defendants, defendant Cheroske and certain DOES joined the conspiracy. Said defendants agreed to provide a hard-money loan regardless of Plaintiffs ability to repay, knowing that they would foreclose on the property when Plaintiffs were unable to pay the monthly payment or the $300,000 balloon payment due five (5) after the Note was signed.

31. At a certain point of time during the re-financing process, Defendants, and each of them, realized that they could not complete the transaction unless they also had

Ms. Richardson's Power of Attorney. Accordingly, as part of the above-described conspiracy, defendant ALPHONSO JR., on July 15, 2007, convinced his bi-polar and legally blind mother to sign a Power of Attorney over in his favor.

32. In or about late July or early August 2007, at the time when Mr. Richardson was not receiving dialysis treatments and was at home, Defendants ALPHONSO JR., LAYTON, BLANCHE L. ROBISON and certain DOES, came to the Richardson home in order to inspect it. Mr. Richardson stated to said Defendants that he did not approve of any re-financing of the home. The defendants left without inspecting the home. However, upon information and belief, the defendants returned to the property at a later date in order to conduct the inspection while Mr. Richardson was aware undergoing dialysis.

33. The Richardsons did not find out that their house had been re-financed on August 17, 2007 until approximately one (1) week later when they received an itemized Statement in the mail. The re-finance constitutes consumer credit. Mr. Richardson first called Beneficial, who told him that they had not re-financed the home but to call the escrow company. Mr. Richardson then called defendant COMMONWEALTH who told him that the deal was done and it was too late to rescind it. Mr. Richardson also called Bank of America in order to stop the payment to Alphonso Junior but found out that the money had already been wired to Junior's personal account.

34. As part of the re-finance, defendants ALPHONSO JR., KLEIN, LAYTON and certain DOES failed to negotiate a tax lien owed by the Richardsons to the United States Treasury. Instead, they paid it off at 100% value for $86.974.70 in order to assure that escrow closed before it was discovered by Plaintiffs. Plaintiffs are presently seeking a refund from the Treasury for over-payment of taxes.

35. As part of the re-finance, the prior two mortgages were paid off. Select Portfolio Servicing was paid $78,272.51 and Citimortgage was paid $42,840.40.

36. Furthermore, as a result of the re-finance, Defendants KLEIN, LAYTON and certain DOES received a brokers commission in the amount of $24,560.00.

**EXHIBIT J**
**PAGE 7**

37. Moreover, defendants, and each of them, conspired to cause the remaining proceeds to be paid to defendant ALPHONSO JR. by allowing $70,470.11 to be wired to his personal bank account.

38. Defendant ALPHONSO JR., once receiving the proceeds from the loan on or about August 27, 2007, left town.

39. Pursuant to the re-finance agreement, the ROBISON defendants and certain DOES obtained a security interest, namely a Deed of Trust, in Plaintiffs' principle dwelling located at 9589 Paseo Temporada, San Diego, California 92129.

40. Upon information and belief, sometime after August 27, 2007, the Robison defendants assigned to Defendant CHEROSKE fifty percent (50%) of their security interest.

41. Only after receiving a request for payment from the ROBISON defendants did the Plaintiffs discover that they were now obligated to pay monthly payments in the amount of $2,808.25, which was approximately $700.00 more a month than they were previously paying. The $2,808.25 monthly payment was for interest only at an ambiguous rate of interest. The Richardsons also discovered that they would owe a balloon payment 60 months after the close of escrow in the amount of $300,029.28, an amount that Defendants obviously knew Plaintiffs could never be able pay given their retirement, advanced age and disabilities.

42. Other than the itemized statement received in the mail approximately one (1) week after the re-finance was finalized, Plaintiffs did not to receive any documents from the any other source regarding the refinance of their home until approximately mid-October, 2007 when defendant LAYTON dropped off copies at their home and attempted to collect the first payment with a late charge.

43. Predictably, Plaintiffs began to have difficulty making the monthly payment from the onset.

44. On or about February 5, 2008, Defendant STATEWIDE served Plaintiffs with a Notice of Default and Election to Sell Under the Trust Deed.

**EXHIBIT J**

**PAGE 8**

45. Thereafter, Plaintiffs attempted to make payment on the arrears but Defendants have rejected the payments and demand the full amount.

46. On May 15, 2008, defendant STATEWIDE as agent for the Robison defendants and Defendant CHEROSKE posted and affixed to a Notice of Sale. Upon information and belief, defendant STATEWIDE caused the Notice of Sale to be recorded on May 9, 2008. The sale is presently scheduled for June 5, 2008. (A true and correct copy attached hereto as Exhibit 1).

47. Plaintiffs not only seek damages as a result of the above-described wrongful conduct, but also seek to enjoin the sell of the property pending the outcome of this litigation.

V.

**FIRST CLAIM:**

**VIOLATIONS OF THE TRUTH IN LENDING ACT (15 U.S.C. §§ 1601 *et seq.*)**

**(As to All Defendants except STATEWIDE and COMMONWEALTH)**

48. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

49. The consumer transaction herein described is a high rate mortgage within the meaning of the Home Ownership and Equity Protection Act (hereinafter "HOEPA"), a subsection of the Truth in Lending Act, (15 U.S.C. §§ 1639, 1602(aa)(1)(B)), in that the total "points and fees" as defined in that section that the Robison Defendants and certain DOES charged Plaintiffs exceeded eight percent (8%) of the total loan amount.

50. Upon information and belief, the Robison Defendants and certain DOES, have engaged in a pattern or practice of extending credit to consumers other high rate mortgages, as defined by 15 U.S.C. §1602(aa), based on the consumer's collateral without regard to the consumer's repayment ability, including their current and expected income, current obligations and employment, in violation of 15 U.S.C. §1639(h).

51. Upon information and belief, the Robison defendants and certain DOES, obtained no documentation of the Plaintiffs' income source or ability to pay. Rather, on

the date that the escrow closed, the Robison defendants and certain DOES, accepted via their agents Defendants Klein and Layton and certain DOES, the Uniform Residential Loan Application, dated August 17, 2007 and signed by defendant ALPHONSO JR. in which amounts of income from retirement and disability were erroneously stated. Moreover, the total liabilities were understated.

52. Also, in violation of the Truth in Lending Act ("TILA" hereinafter), the defendants failed to provide, prior to the close of escrow, a Good Faith Estimate as required by TILA. (15 U.S.C. §1638(b)(2); Reg. Z §226.19(a)(1)).

53. Plaintiffs believe and thereon allege that the Robison defendants, Defendants Cheroske, Klein, Layton and Alphonso Jr. and certain DOES conspired to acquire the appreciation and equity in Plaintiffs' Paseo Temporada residence by mis-using the Powers of Attorney in Alphonso Junior's control in order to re-finance the residence above and beyond any legitimate need of Plaintiffs or Plaintiffs' ability to pay. The object of said conspiracy was to generate broker's fees for Defendants Klein and Layton and certain DOES, $70,000+ cash to Alphonso Junior and a security interest to the Robison defendants with the right of non-judicial foreclosure.

54. Because the transaction described herein met the HOEPA definition of high rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three (3) days in advance of consummation of the transaction. (15 U.S.C. §1639(b)).

55. The Robison defendants and certain DOES, via their agents Defendants Klein and Layton and certain DOES, did not furnish the required HOEPA disclosures to Plaintiffs three (3) days prior to the consummation of the transaction.

56. Moreover, the disclosures that The Robison defendants and certain DOES, via their agents Defendants Klein and Layton and certain DOES, untimely provided were deficient as follows:

a. The finance charge was miscalculated;

b. The Annual Percentage Rate was miscalculated;

c. More than one (1) interest rate was stated;

d. The HOEPA warnings were not in a conspicuous typeset;

e. No notice was provided that either of the joint owners could unilaterally cancel; and

e. two (2) copies were not provided per borrower.

57. Additionally, the miscalculated finance charge and Annual Percentage Rate constitute a separate TILA violation for failure to make material disclosures. (15 U.S.C. §1638; Reg. Z §§ 226.17-226.24).

58. As a result of the above-referenced violations of HOEPA and TILA, Plaintiffs retained the right to rescind the transaction up to three (3) years after its consummation.

59. On April 24, 2008, Plaintiffs rescinded the transaction by sending a notice of rescission, a true and correct copy of which is attached hereto as Exhibit 2, to the Robison defendants, via certified and regular mail, and carbon copies to defendants KLEIN, LAYTON, and STATEWIDE.

60. The Robison defendants received Plaintiffs' Notice of Rescission on April 25, 2008.

61. More than twenty (20) days have passed since Plaintiffs rescinded the transaction and the Robison defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2). In addition, the Robison defendants have failed to return to Plaintiffs any money or property given by the Plaintiffs to anyone, including the Robison defendants, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2).

62. On February 5, 2008, prior to Plaintiffs' rescission of this transaction, the Robison defendants had instituted a foreclosure action against the Plaintiffs via a Notice of Default and Election to Sell Under Deed of Trust. (Exhibit 3).

63. As a direct and proximate result of defendants' violations of HOEPA and

**EXHIBIT J**
**PAGE 11**

TILA plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

64. Defendants, and each of them, are also liable for payment of three times the statutory damages for their violations of HOEPA and TILA. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

65. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

66. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## VI.

## <u>SECOND CLAIM</u>:

## VIOLATIONS OF CALIFORNIA'S PREDATORY LENDING LAW

## (Cal. Financial Code §§ 4970 *et seq.*)

## (As to All Defendants except STATEWIDE and COMMONWEALTH)

67. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

68. The above-described transaction is a covered loan pursuant to California's Predatory Lending Law in that the loan amount does not exceed $417,000.00 and the total points and fees payable by Plaintiffs at or before closing for the mortgage exceeded six percent (6%) of the total loan amount. (Cal. Fin. Code §4970(b)).

69. The above-described transaction is a consumer loan in that it is a consumer

credit transaction that is secured by Plaintiffs' principle dwelling located in this state. (Cal. Fin. Code §4970(d)).

70. The Robison defendants, defendants KLEIN, LAYTON and certain DOES originated the consumer loan pursuant to the California Predatory Lending Law insofar as they arranged, negotiated or made the consumer loan. (Cal. Fin. Code §4970(g)).

71. The Defendants, and each of them, violated the Predatory Lending Law. Said violations include, but are not limited to, the following violations of the California Financial Code §4973:

a. The transaction is for a term of five (5) years but does not fully amortize the principle balance as of the maturity date of the loan, i.e., a balloon payment is due after five (5) years. (Cal. Fin. Code §4973(b)(1));

b. The defendants, and each of them, did not have a reasonable belief that the Plaintiffs would be able to make the scheduled payments in order to repay the obligation based upon the Plaintiffs' income and expenses at the time the loan was funded. (Cal. Fin, Code §4973(f)(1));

c. The transaction did not result in an identifiable benefit to the Plaintiffs. (Cal. Fin. Code §4973(j));

d. The defendants failed to give Plaintiffs the mandatory "Consumer Caution and Home Ownership Counseling Notice" three (3) days prior to the signing of the loan documents. (Cal. Fin. Code §4973(k)(1)); and

e. The defendants, and each of them, acted in a manner that constitutes fraud. (Cal. Fin. Code §4973(n)).

72. As a direct and proximate result of defendants' violations of California's Predatory Lending Law, plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

73. Defendants, and each of them, are also liable for payment of three times the statutory damages for their violations of California's Predatory Lending Act. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled

persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

74. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to Civil Code §3294 as against all defendants. (Cal. Fin. Code §4978(b)(2)).

75. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act; (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

76. Defendants are jointly and severably liable for their violations of California's Predatory Lending Law pursuant to California Financial Code §4974(b).

**VII.**

**<u>THIRD CLAIM</u>:**

**VIOLATIONS OF CALIFORNIA'S REAL ESTATE LICENSING REGULATIONS (Cal. Bus. & Prof. Code §10240 *et seq.*)**

**(As to Defendants KLEIN, LAYTON and certain DOES)**

77. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

78. Defendants KLEIN, LAYTON and certain DOES violated California's Real Estate Licensing Regulations (Cal. Bus. & Prof. Code §10240 *et seq.*). Defendants', and each of their, violations of said Regulations include, but are not limited to, their failure to timely deliver a legally compliant Good Faith estimate as required by Cal. Bus. & Prof. Code §10240(a).

79. Insofar as the Defendants, and each of them, violated Cal. Bus. & Prof. Code §10240, the loan was negotiated in violation of the Regulations.

80. On April 7, 2008, Plaintiffs mailed a written demand for the return of the

commission to the attorney for defendants Klein and Layton. (Exhibit 4).

81. More than twenty (20) days have passed since Plaintiffs demanded the return of the commission and no commission has been returned.

82. As a direct and proximate result of defendants' violations of California's Real Estate Licensing Regulations plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

83. Defendants, and each of them, are also liable for payment of three times the statutory damages for their violations of the Real Estate Licensing Regulations. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

84. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

85. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## VIII.

## FOURTH CLAIM: BREACH OF FIDUCIARY DUTY

## (As to All Defendants except STATEWIDE and COMMONWEALTH)

86. Plaintiffs hereby incorporate by reference paragraphs 1 through 85 as set forth above.

87. The duty of a real estate broker to his or her principle is fiduciary in nature. A broker's fiduciary duties include, but are not limited to, full and complete disclosure of any and all material facts, including facts related to the suitability of a sale or purchase of

EXHIBIT J

PAGE 15

real estate, to represent an uphold the interest of the principle above and beyond the interest of the agent/broker, and to deal in good faith and fairly and honestly with the principle.

88. In or about mid 2007, defendants KLEIN, LAYTON and certain DOES became the fiduciaries of Plaintiffs when they entered into an arrange to re-finance Plaintiffs' resident through defendant Alphonso Junior who held the Plaintiffs' Powers of Attorney. Accordingly, Defendants owed plaintiffs a duty to completely and fully disclose all material facts, to advise plaintiffs on the suitability of the transactions involved, and to put the plaintiffs' interests above and beyond their own interests.

89. At all times herein relevant, the Robison defendants, Defendants Cheroske and Alphonso Jr. and certain DOES were co-adventurers, and/or co-conspirators with all other Defendants herein.

90. Defendants, and each of them, breached the fiduciary duties that they owed plaintiffs as more fully set forth above. The entire transaction was unsuitable for Plaintiffs. Plaintiffs were not seeking to re-finance their residential property. They were elderly and disabled and would not have qualified for a conventional loan. Defendants, and each of them, failed to account for Plaintiffs' inability to pay before offering the re-financing. Rather, Defendants conspired with Defendant Alphonso Junior to go forward with the re-finance despite knowing that the Plaintiffs did not approve of the refinance and would be unable to pay the monthly payments and the $300,000 balloon payment at the end of five (5) years. The object of the conspiracy was for Defendants to generate broker's fees and commissions and cash out to Alphonso Junior. Upon information and belief, the Robison defendants and defendant Cheroske joined the conspiracy when they offered to finance the transaction without proof of ability to paying, knowing that they could foreclosure on the property and obtain the equity over and above the amount of the Balloon Note.

91. Defendants, and each of them, failed to exercise reasonable skill, care and due diligence with regard to advising Plaintiffs about the suitability of the re-finance

transaction.

92. As a direct and proximate result of defendants', and each of their, breach of fiduciary duties, Plaintiffs have been injured and sustained damages in an amount to be proven at the time of trial.

93. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

94. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## IX.

## FIFTH CLAIM: CONSTRUCTIVE FRAUD (Cal. Civil Code §1573)

## (As to All Defendants except STATEWIDE and COMMONWEALTH)

95. Plaintiffs hereby incorporate by reference paragraphs 1 through 94 as set forth above.

96. California Civil Code §1573 provides: "Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or 2. In any such act or omission as the law specifically declares to be fraudulent, without respect to actual fraud."

97. At all times herein relevant, Defendants Klein, Layton and certain DOES were fiduciaries to Plaintiffs.

98. At all times herein relevant, the Robison defendants, Defendant Alphonso Junior and certain DOES were co-adventurers, and/or co-conspirators with all other Defendants herein.

EXHIBIT J
PAGE 17

99. Defendants, and each of them, breached the fiduciary duties that they owed plaintiffs as more fully set forth above. The entire transaction was unsuitable for Plaintiffs. Plaintiffs were not seeking to re-finance their residential property. They were elderly and disabled and would not have qualified for a conventional loan. Defendants, and each of them, failed to account for Plaintiffs' inability to pay before offering the re-financing. Rather, Defendants conspired with Defendant Alphonso Junior to go forward with the re-finance despite knowing that the Plaintiffs did not approve of the refinance and would be unable to pay the monthly payments and the $300,000 balloon payment at the end of five (5) years. The object of the conspiracy was for Defendants to generate broker's fees and commissions and cash out to Alphonso Junior. Upon information and belief, the Robison defendants and defendant Cheroske joined the conspiracy when they offered to finance the transaction without proof of ability to paying, knowing that they could foreclosure on the property and obtain the equity over and above the amount of the Balloon Note.

100. Defendants, and each of them, failed to exercise reasonable skill, care and due diligence with regard to advising Plaintiffs about the suitability of the re-finance transaction.

101. Pursuant to the above-described breaches of fiduciary duty, Defendants, and each of them, regardless of fraudulent intent, gained an advantage over Plaintiffs in that Defendants collected substantial commissions from the re-financing of the subject property, received cash from the transaction and obtained a security interest in said property.

102. As a direct and proximate result of defendants', and each of their, constructive fraud, Plaintiffs have been injured and sustained damages in an amount to be proven at the time of trial.

103. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to

California Civil Code §3294 as against all defendants.

104. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## X.

## SIXTH CLAIM: NEGLIGENCE

**(As to All Defendants except STATEWIDE and COMMONWEALTH)**

105. Plaintiffs hereby incorporate by reference paragraphs 1 through 91 as set forth above.

106. The duty of a real estate broker to his or her principle is fiduciary in nature. A broker's fiduciary duties include, but are not limited to, full and complete disclosure of any and all material facts, including facts related to the suitability of a sale or purchase of real estate, to represent an uphold the interest of the principle above and beyond the interest of the agent/broker, and to deal in good faith and fairly and honestly with the principle.

107. In or about mid 2007, defendants KLEIN, LAYTON and certain DOES became the fiduciaries of Plaintiffs when they entered into an arrange to re-finance Plaintiffs' resident through defendant Alphonso Junior who held the Plaintiffs' Powers of Attorney. Accordingly, Defendants owed plaintiffs a duty to completely and fully disclose all material facts, to advise plaintiffs on the suitability of the transactions involved, and to put the plaintiffs' interests above and beyond their own interests.

108. At all times herein relevant, the Robison defendants, Defendants Cheroske and Alphonso Jr. and certain DOES were co-adventurers, and/or co-conspirators with all other Defendants herein.

109. Defendants, and each of them, breached the fiduciary duties that they owed plaintiffs as more fully set forth above. The entire transaction was unsuitable for

Plaintiffs. Plaintiffs were not seeking to re-finance their residential property. They were elderly and disabled and would not have qualified for a conventional loan. Defendants, and each of them, failed to account for Plaintiffs' inability to pay before offering the re-financing. Rather, Defendants conspired with Defendant Alphonso Junior to go forward with the re-finance despite knowing that the Plaintiffs did not approve of the refinance and would be unable to pay the monthly payments and the $300,000 balloon payment at the end of five (5) years. The object of the conspiracy was for Defendants to generate broker's fees and commissions and cash out to Alphonso Junior. Upon information and belief, the Robison defendants and defendant Cheroske joined the conspiracy when they offered to finance the transaction without proof of ability to paying, knowing that they could foreclosure on the property and obtain the equity over and above the amount of the Balloon Note.

110. Defendants, and each of them, failed to exercise reasonable skill, care and due diligence with regard to advising Plaintiffs about the suitability of the re-finance transaction.

111. As a direct and proximate result of defendants', and each of their, negligent breach of fiduciary duties, Plaintiffs have been injured and sustained damages in an amount to be proven at the time of trial.

112. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

///

///

///

///

///

## XI.

## SEVENTH CLAIM: VIOLATIONS OF CALIFORNIA'S FAIR DEBT COLLECTION PRACTICES ACT "THE ROSENTHAL ACT"

**(Cal. Civ. Code §§ 1788 *et seq.*)**

**(As to the ROBISON Defendants and Defendants CHEROSKE, STATEWIDE and certain DOES)**

113. Plaintiffs hereby incorporate by reference paragraphs 1 through 47 as set forth above.

114. The Defendants, and each of them, are debt collectors pursuit to the Rosenthal Act.

115. Not only does the Rosenthal Act proscribe certain debt collection activities but, at Civil Code §1788.17, it incorporates certain proscriptions set forth in the federal Fair Debt Collection Practices Act, (15 U.S.C. §§ 1692, *et seq.*).

116. The Defendants, and each of them, violated the Rosenthal Act when they attempted to foreclosure on the subject property. The Notice of Foreclosure that the Defendants caused to be served on the Plaintiffs was deceptive in that neither the Robison defendants nor defendant STATEWIDE has the power to affect a non-judicial sale of the subject property because neither is the equitable owner, i.e., the trustee, of the property. Moreover, the defendants' continued attempt to foreclose on the property following the Plaintiffs' Notice of Recession violates the Rosenthal Act in that the Defendants are attempting to collect a debt that is not legally due. As a matter of law, the rescission extinguished any security interest in the property. They recorded and served a Notice of Sale on May 15, 2008. They also failed to record a Substitution of Trustee in order to affect the sale.

117. As a direct and proximate result of defendants' violations of The Rosenthal Act, Plaintiffs have suffered actual and statutory damages in an amount to be proven at time of trial.

118. Defendants, and each of them, are also liable for payment of three times

**EXHIBIT J**
**PAGE 21**

the statutory damages for their violations of the Rosenthal Act. Pursuant to California Civil Code §3345, Plaintiffs are either senior citizens or disabled persons and the conduct herein complained of constitutes unfair or deceptive acts or practices or an unfair method of competition.

119. Defendants', and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiffs. Plaintiffs therefore request an award of punitive damages pursuant to California Civil Code §3294 as against all defendants.

120. Defendants, and each of them, also violated California's Elder Abuse and Dependent Adult Civil Protection Act, (Welfare and Institutions Code §§ 15600). The above-described conduct constitutes "financial abuse" as defined in Welfare and Institutions Code §15610.30(a). Accordingly, Plaintiffs are entitled to enhanced remedies pursuant to the Act.

## XII.

## EIGHTH CLAIM: DECLARATORY RELIEF

## (As to Each and Every Defendant Herein)

121. Plaintiffs hereby incorporate by reference paragraphs 1 through 120 as set forth above.

122. Plaintiffs are now, and at all times relevant to this complaint were, married and joint tenants with right of survivorship of certain real property commonly known as 9589 Paseo Temporada, San Diego, California 92129. The legal description of the subject property is attached as Exhibit 5 and incorporated herein by reference. The assessor's parcel number is 315-368-09-00.

123. Unbeknownst to Plaintiffs, a Deed of Trust regarding the above-described property was signed and notarized on August 17, 2007 and recorded on August 24, 2007. (Attached hereto as Exhibit 6 and incorporated herein by reference is a true and correct copy). The Deed of Trust identifies the Robison defendants as the Lender and Defendant COMMONWEALTH as the Trustee. Defendant STATEWIDE is not identified in the

Deed of Trust. Defendant STATEWIDE is not mentioned in the Deed of Trust or any subsequently recorded document.

124. The above-described Deed of Trust is the security for the Balloon Note that was also signed and notarized on August 17, 2007 and recorded on August 24, 2007. (Attached hereto as Exhibit 7 and incorporated herein by reference is a true and correct copy).

125. Upon information and belief, after the recording of the Deed of Trust and the Balloon Note, the Robison defendants assigned to defendant CHEROSKE fifty percent (50%) interest in the transaction.

126. On February 6, 2008, the Robison defendants and Cheroske caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust. (Attached hereto as Exhibit 3 and incorporated herein by reference is a true and correct copy). Defendant STATEWIDE recorded the Notice of Default for said Defendants.

127. On April 24, 2008, Plaintiffs rescinded the transaction by sending a notice or rescission, a true and correct copy of which is attached hereto as Exhibit 2, to the Robison defendants, via certified and regular mail, and carbon copies to defendants KLEIN, LAYTON, and STATEWIDE.

128. The Robison defendants received Plaintiffs' Notice of Rescission on April 25, 2008.

129. More than twenty (20) days have passed since Plaintiffs rescinded the transaction and the Robison defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2). In addition, the Robison defendants have failed to return to Plaintiffs any money or property given by the Plaintiffs to anyone, including the Robison defendants, as required by 15 U.S.C. §1635(b) and Regulation Z, §226.23(d)(2).

130. The Robison defendants and defendants Cheroske and Statewide have indicated that they will not honor the rescission by taking appropriate action to reflect the

termination of the security interest. Indeed, on May 15, 2008, they caused to be posted a Notice of Sale regarding the Plaintiffs' home and have set the sale for June 5, 2008.

131. Plaintiffs desire a judicial determination and declaration of Plaintiffs' and Defendants' respective rights and duties regarding the validity of the rescission. Such a declaration is appropriate at this time so that Plaintiffs may determine their rights and duties before the Defendants attempt to sell the property in foreclosure.

**XIII.**

**<u>NINTH CLAIM</u>: INJUNCTIVE RELIEF**

**(As to Each and Every Defendant Herein)**

132. Plaintiffs hereby incorporate by reference paragraphs 1 through 131 as set forth above.

133. The Robison defendants and Defendants Cheroske, Statewide and certain DOES intend to sell, and unless restrained will sell or cause to be sold, the subject property, all to Plaintiffs' great and irreparable injury in that if the sale takes place Plaintiffs will forever loss their home. A Notice of Sale regarding Plaintiffs' home was recorded on May 9, 2008 and posted on May 15, 2008, setting the date of sale for June 5, 2008.

134. Plaintiffs have no other plain, speedy, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at the time to prevent irreparable loss to Plaintiffs' interests.

WHEREFORE, plaintiffs respectfully pray for relief as set forth below:

1. Rescission of the transaction, including a declaration that the Plaintiffs are not liable for any finance charges or other charges imposed by Defendants;

2. A declaration that the security interest in Plaintiffs' property created under the transaction is void, and an order requiring Defendants to release such security interest;

3. Return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with the transaction;

4. Actual damages, including economic and non-economic damages;

**EXHIBIT J**

**PAGE 24**

5. Statutory damages and/or penalties consisting of an Order that defendants pay $2,000.00 to Plaintiffs for each and every violation of HOEPA and TILA; $15,000.00 pursuant to California's Predatory Lending Law, (Cal. Fin. Code §4978(a)); and $5,000.00 pursuant to California's Fair Debt Collection Practices Act (Cal. Civil Code §1788.30(b);

6. The greater of actual damages or twice the amount of the brokers commission pursuant to California's Real Estate License Regulations (Cal. Bus. & Prof. Code §10248.2(b));

7. Additional damages pursuant to 15 U.S.C. §1640(a)(4) in the amount of all finance charges and fees paid by Plaintiffs, for each non-disclosure violation;

8. An Order that, because Defendants failed to act in response to Plaintiffs' Notice of Rescission, Plaintiffs have no duty to tender the loan proceeds to Defendants, or in the alternative, if tender is required, a determination of the amount of the tender is required, a determination of the amount of the tender obligation in light of all of Plaintiffs' claims, and an Order requiring the Defendants to accept tender on reasonable terms and over a reasonable period of time;

9. Enhanced remedies pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Cal. Welfare & Institutions Code §§ 15600);

10. Enhanced damages for elderly and disabled persons pursuant to Cal. Civil Code §3345;

11. Punitive damages pursuant to Cal Civil Code §3294;

12. Reasonable attorneys fees and costs pursuant to 15 U.S.C. §1640(a)(2)(A)(3); Cal. Fin. Code §4978(a); Cal. Bus. & Prof. Code §10248.2(b), Cal. Civil Code §1788.30(c);

13. Pre- and post-judgment interest, as to each and every defendant, jointly and severally;

///

///

EXHIBIT J
PAGE 25

14. Any and all other relief that the Court may deem proper and just.

DATED: May 20, 2008

BARRY D. MILLS
Attorney at Law

By: ____________________
BARRY D. MILLS,
Attorney for Plaintiffs

Plaintiffs hereby demand a jury trial in the above-entitled action.

DATED: May 20, 2008

BARRY D. MILLS
Attorney at Law

By: ____________________
BARRY D. MILLS,
Attorney for Plaintiffs

**EXHIBITS - TABLE OF CONTENTS**

Exhibit 1: Notice of Trustee's Sale Under Deed of Trust, dated May 8, 2008 . . . 001-002

Exhibit 2: Notice of Rescission (letter dated April 24, 2008) . . . . . . . . . . . . . . . . 003-004

Exhibit 3: Notice of Default and Election to Sell, dated February 5, 2008 . . . . . . 005-007

Exhibit 4: Letter dated April 7, 2008 (Cal. Bus. & Prof §10248.2 written demand) . . . 008

Exhibit 5: 8589 Paseo Temporada, San Diego - Legal description . . . . . . . . . . . . . . . . 009

Exhibit 6: Deed of Trust, dated August 17, 2007 . . . . . . . . . . . . . . . . . . . . . . . . 010-025

Exhibit 7: Balloon Note, dated August 17, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . 026-028

EXHIBIT 1

RECORDING REQUESTED BY
STATEWIDE RECONVEYANCE GROUP, INC., dba
STATEWIDE FORECLOSURE SERVICES

AND WHEN RECORDED MAIL TO

STATEWIDE RECONVEYANCE GROUP, INC. DBA
STATEWIDE FORECLOSURE SERVICES
P O BOX 2896
LA MESA, CA 91943-2896

LOAN: 000628999 OTHER: 1083793-65 TS:7527 SDS
A.P. NUMBER 315-368-09

# NOTICE OF TRUSTEE'S SALE UNDER DEED OF TRUST

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED August 17, 2007, UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

NOTICE is hereby given that STATEWIDE RECONVEYANCE GROUP INC., DBA STATEWIDE FORECLOSURE SERVICES , a California Corporation as trustee, or successor trustee, or substituted trustee pursuant to the Deed of Trust executed by ALPHONSO RICHARDSON AND RUTH A. RICHARDSON , HUSBAND AND WIFE AS JOINT TENANTS

Recorded on 08/24/2007 as Instrument No. 2007-0564203 in Book Page of Official records in the office of the County Recorder of SAN DIEGO County, California, and pursuant to the Notice of Default and Election to Sell thereunder recorded 02/06/2008 in Book , Page , as Instrument No. 2008-0060290 of said Official Records, WILL SELL on 06/05/2008 at AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY THE STATUE 250 E. MAIN STREET EL CAJON, CA at 10:00 A.M. AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at the time of sale in lawful money of the United States), all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State and described as follows: **As more fully described on said Deed of Trust.**

**Statewide is considered a debt collector, attempting to collect a debt. Any information obtained will be used for that purpose. Should the Trustee be unable to convey title, for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no other recourse.**

SALE INFORMATION MAY BE OBTAINED, WHEN AVAILABLE, BY CALLING (619) 698-5302 OR YOU MAY REQUEST INFORMATION VIA EMAIL statewideforeclosures@gmail.com OR VIA FAX @ 619-698-4912. FOR THE MOST UP TO DATE AND ACCURATE INFORMATION, YOU MUST ATTEND THE SALE.

The street address and other common designation, if any, of the real property described above is purported to be: 9589 PASEO TEMPORADA SAN DIEGO, CA 92129
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $333,750.72

LOAN: 000628999
A.P. NUMBER 315-368-09

NOTICE OF TRUSTEE'S SALE UNDER DEED OF TRUST
OTHER: 1083793-65

FILE: 7527 SDS

In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. In the event tender other than cash is accepted the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter of right.

Said sale will be made, but without covenant or warranty, express or implied regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed, advances thereunder, with interest as provided therein, and the unpaid principal balance of the Note secured by said Deed with interest thereon as provided in said Note, fees, charges and expenses of the trustee and the trusts created by said Deed of Trust.

Dated: 05/08/2008

STATEWIDE RECONVEYANCE GROUP INC.,, as said Trustee
DBA STATEWIDE FORECLOSURE SERVICES
P O BOX 2896
LA MESA, CA, 91943-2896
(619)466-6530

By: JANET EDWARDS
EXEC. VICE PRESIDENT

EXHIBIT 2

**BARRY D. MILLS**
**Attorney at Law**
**3588 Fourth Avenue, Suite 210**
**San Diego, California 92103**
**(619) 295-5000**
**FAX (619) 338-4033**
**MillsLaw@sbcuc.net**

April 24, 2008

**VIA CERTIFIED AND U. S. MAIL, RETURN RECEIPT REQUESTED**

Charles O. Robison
Blanche L. Robison
The Robison Family Trust
5150 Vivera Drive
La Mesa, CA 91941

Statewide Reconveyance Group, Inc. dba
Statewide Foreclosure Services
P.O. Box 2896
San Diego, CA 92119

Re: Alphonso Richardson, Sr. and Ruth A. Richardson

Dear Mr. and Mrs. Robison and Statewide Reconveyance Group, Inc.:

Please be advised that Alphonso Richardson Sr. and Ruth A. Richardson have retained me to represent them regarding the recent re-financing and the pending foreclosure of their property located at 9589 Paseo Temporarda, San Diego, CA 92129. Please refrain from contacting my clients regarding these matters and direct all communication to my office.

This letter constitutes my clients' **Notice of Rescission** pursuant to the federal Truth in Lending Act, (15 U.S.C. §§ 1601 *et seq.*). The re-finance transaction involving my clients' home at 9589 Paseo Temporada qualifies as a high rate mortgage within the meaning of the Home Ownership and Equity Protection Act, or "HOEPA", in that points and fees exceeded eight percent (8%) of the total loan amount. (15 U.S.C. §1639) HOEPA is a subdivision of the Truth in Lending Act. Accordingly, you were required to make disclosures in addition to those required by the Truth in Lending Act. Your violations of the HOEPA and Truth in Lending Act include, but are not limited to:

- failure to make all required disclosures to the borrowers at least three (3) days in advance of the consummation of the transaction. (15 U.S.C. §1639(b));
- miscalculating the finance charge;

- miscalculating the Annual Percentage Rate or "APR";
- stating more than one (1) interest rate (15 U.S.C. §1632 [violation of the clear and conspicuous requirement]);
- not giving the statutory-required warnings in a conspicuous typeset (15 U.S.C. §1639(a)(1), Reg Z, 226.32(c));
- failure to provide a notice that either of the joint owners could unilaterally cancel (Official Staff Commentary §§ 226.15(b)(3), 226.23(b)(1)(iii));
- and failure to provide two (2) copies of the cancellation notice to each borrower (see Reg Z §226.31(e)).

As a result of the above violations, the right to rescind is extended three (3) years from the date of the transaction. (15 U.S.C. §1635; Reg. Z §226.23(a)(3)).

Upon receipt of this Notice, your security interest in 9589 Paseo Temporada, San Diego, California 92129 is terminated as a matter of law. (15 U.S.C. §1635(b); Reg Z §§ 226.15(d)(1); 226.23(d)(1)). Any attempt to foreclose on the property will violate the Truth in Lending Act, various fair debt collection laws and common law rights.

You have twenty (20) days from the receipt of this Notice to return to my clients any monies that you may have received as a result of this transaction and to take action to reflect the legal termination of the security interest such as filing appropriate documents with the County Recorder's office. (15 U.S.C. §1635(b), Reg Z §§ 226.15(d)(1); 226.23(d)(1)).

Should have any questions or comments, please do not hesitate to call.

Very truly yours,

Barry D. Mills

cc: Alphonso Richardson, Sr. and Ruth A. Richardson
David J. Lola, Attorney for Eric A. Klein and Robert H. Layton

EXHIBIT 3

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

STATEWIDE RECONVEYANCE GROUP, INC. DBA
STATEWIDE FORECLOSURE SERVICES
P O BOX 2896
SAN DIEGO, CA 92119

THE ORIGINAL OF THIS DOCUMENT
WAS RECORDED ON FEB 06, 2008
DOCUMENT NUMBER 2008-0060290
GREGORY J. SMITH, COUNTY RECORDER
SAN DIEGO COUNTY RECORDER'S OFFICE
TIME: 11:57 AM

LOAN: 000628999 OTHER: FILE: 7527

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE:

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$8,294.00** as of **02/01/2008** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

LOAN: 000628999

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
OTHER #:

FILE: 7527 JJ

TO FIND OUT THE AMOUNT YOU MUST PAY, OR TO ARRANGE FOR PAYMENT TO STOP THE FORECLOSURE, OR IF YOUR PROPERTY IS IN FORECLOSURE FOR ANY OTHER REASON, CONTACT:

CHARLES O. AND BLANCHE L. ROBISON, TTEES
C/O STATEWIDE RECONVEYANCE GROUP, INC.
STATEWIDE FORECLOSURE SERVICES
P O BOX 2896
SAN DIEGO, CA 92119

Phone: (619)466-6530

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That STATEWIDE RECONVEYANCE GROUP INC., DBA STATEWIDE FORECLOSURE SERVICES is duly appointed Trustee and or agent for the Beneficiary under the following described Deed of Trust dated: 08/17/2007, executed by ALPHONSO RICHARDSON AND RUTH A. RICHARDSON, HUSBAND AND WIFE AS JOINT TENANTS as Trustor, to secure certain obligations in favor of THE ROBISON FAMILY TRUST, CHARLES O. ROBISON AND BLANCHE L. ROBISON, TRUSTEES DATED 04/05/2001 , as Beneficiary, recorded 08/24/2007, as Instrument No. 2007-0564203 Book Page , of Official Records, in the office of the Recorder of SAN DIEGO County, California, describing the land therein: As more fully described on said Deed of Trust.

including 1 note(s) for the sum of $307,000.00; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in the obligations for which said Deed of Trust is security has occurred in that payment has not been made of Failure to make the 12/05/2007 payment of principal and/or interest and all subsequent payments, together with late charges, advances, taxes, delinquent payments on senior liens, or assessments.

THAT by reason thereof the beneficiary under said Deed of Trust, has executed and delivered to said duly appointed Trustee and or Agent, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee and or Agent, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE: February 5, 2008

STATEWIDE FORECLOSURE SERVICES AS AGENT
AND/OR ORIGINAL OR SUBSTITUTED TRUSTEE
FAX 619-698-4912 SALE INFO. 619-698-5302
statewideforeclosures@gmail.com

JANET EDWARDS
EXEC. VICE PRESIDENT

006
Ex 3

EXHIBIT J
PAGE 36

STATEWIDE FORECLOSURE SERVICES

DIVISION OF STATEWIDE RECONVEYANCE GROUP, INC.
PO BOX 2896,LA MESA, CA 91943-2896
(619) 466-6530 FAX (619) 698-4912 SALE LINE (619) 698-5302

February 5, 2008

**Fair Debt Collection Practices Act Notification**

Dear Debtor,

Re: **File #: 7527**
Loan #: **000628999**
Investor Loan #:

Pursuant to and in compliance with the Fair Debt Collection Practices Acts (Federal [15 USC 1692] and California [Civil Code § 1788 et seq.]) the Trustee named in the Notice of Default hereby provides the following notification(s):

"We are attempting to collect a debt and any information we obtain will be used for that purpose."

"The debt described in the Notice of Default in the amount of $8,294.00 is assumed to be valid unless debtor disputes within 30 days and that, if disputed, debt collector will obtain and furnish to debtor the verification.

If written request is made within 30 days by debtor, name of original lender will be given if different than the current creditor."

"The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

STATEWIDE FORECLOSURE SERVICES AS AGENT
AND/OR ORIGINAL OR SUBSTITUTED TRUSTEE
FAX 619-698-4912 SALE INFO. 619-698-5302
statewideforeclosures@gmail.com

JANET EDWARDS
EXEC. VICE PRESIDENT

**EXHIBIT J**
**PAGE 37**

007
Ex 3

EXHIBIT 4

**BARRY D. MILLS**
Attorney at Law
3588 Fourth Avenue, Suite 210
San Diego, California 92103
(619) 295-5000
FAX (619) 338-4033
MillsLaw@sbcuc.net

April 7, 2008

VIA FACSIMILE AND U.S. MAIL
(858) 675-7807

David J. Lola
Sunderland McCutchan, LLP
11770 Bernardo Plaza Court, Suite 250
San Diego, CA 92128

Re: *Richardson, et al. v. Klein, et al.*

Dear Mr. Lola:

Thank you for you letter of March 24, 2008 regarding the Consumer Legal Remedies Act Notice and other pre-litigation issues in the above matter. Your point regarding the Consumer Legal Remedies Act was well taken. However, I believe that your clients violated Business & Profession Code §§ 10240 *et seq.* when they failed to provide a Good Faith Estimate including all of the information required by section 10241 and in particular the Balloon Payment disclosure. Pursuant to section 10248.2 my clients hereby make a written demand of your clients, Eric Klein and Robert Layton, for the return of any and all bonus, brokerage or commission that they received regarding the re-finance of 9589 Paseo Temporada, San Diego, California 92129. I am sending you the demand as you indicated in your March 24, 2008 letter to direct all communications to your firm.

Please feel free to send me copies of the entire file in order to show compliance with Business & Professions Code §10240 *et seq.* or the return of the commissions. Otherwise, I intend to include a demand in the Complaint based on violations of Business & Professions Code §10240 *et seq.* I also assume that you are authorized to accept service on behalf of your clients. If you are not, please let me know as soon as possible.

Thank you for your professional courtesy and cooperation in this matter.

Very truly yours,

Barry D. Mills

cc: Alphonso Richardson, Sr. and Ruth A. Richardson

EXHIBIT 5

7

File No: 04310389

6046

## EXHIBIT "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

Lot 257 of Penasquitos Estates Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 8637, filed in the Office of the County Recorder of San Diego County, August 9, 1977.

EXHIBIT 6

A
5

fil
10P

DOC # 2007-0564203

AUG 24, 2007 12:09 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES: 54.00
PAGES: 15 DA: 1

Recording Requested By:
Commonwealth Land Title Company

Return To:
Charles Robison

5150 Vivera Dr.
La Mesa, CA 91940

2007-0564203

6043

Prepared By:

5150 Vivera Dr.
La Mesa, CA 91941

04310389-51
APN 315-218-04-00

[Space Above This Line For Recording Data]

# DEED OF TRUST

LOAN NO.: 000628999
ESCROW NO.: 04310389 - 044 - CR4

NOTICE: THIS LOAN CONTAINS PROVISIONS THAT ALLOW FOR A BALLOON PAYMENT AT MATURITY.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 17, 2007 together with all Riders to this document.

(B) "Borrower" is
Alphonso Richardson AND Ruth A Richardson, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is 8589 Paseo Temporada, San Diego, CA 92129
Borrower is the trustor under this Security Instrument.

(C) "Lender" is
The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001

~~Lender is a ~~
~~organized and existing under the laws of ~~

CALIFORNIA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT
V-6(CA) (0207).01

Initials:

Form 3005 1/01



LENDER SUPPORT SYSTEMS INC. 60CA.NEW (11/06)

010
Ex 6

EXHIBIT J
PAGE 43

6044

Lender's address is
5150 Vivera Dr., La Mesa, CA 91941
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is
Commonwealth Land Title Company
(E) "Note" means the promissory note signed by Borrower and dated AUGUST 17, 2007
The Note states that Borrower owes Lender
THREE HUNDRED SEVEN THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X Dollars
(U.S. $ 307,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 05, 2012
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider
☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

6045

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of San Diego [Name of Recording Jurisdiction]:

Parcel ID Number:

which currently has the address of 9889 Paseo Temporada [Street] San Diego [City], California 92129 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

File No: 04310389

6046

# EXHIBIT "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

Lot 257 of Penasquitos Estates Unit No. 2, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 8637, filed in the Office of the County Recorder of San Diego County, August 9, 1977.

6047

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

6048

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

6049

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

6050

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

6052

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

6053

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

6054

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

6055

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



022
Ex 6

6056

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

6057

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

-Witness

-Witness

Alphonso Richardson (Seal) -Borrower
BY ALPHONSO RICHARDSON, JR

Ruth A Richardson (Seal) -Borrower
BY ALPHONSO RICHARDSON, JR.

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

16

6058

State of CALIFORNIA
County of SAN DIEGO } ss.

On 8-17-2007 before me, MS MARSHALL, NOTARY PUBLIC , Notary Public, personally appeared Alphonso Richardson, JR ~~Notary Public~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. , ~~personally known to me~~

WITNESS my hand and official seal.

M. S. MARSHALL
COMM. #1475286
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires Mar. 8, 2008

(Seal)

V-6(CA) (0207).01

Page 13 of 13

Initials: ____

Form 3005 1/01

EXHIBIT 7

# BALLOON NOTE

(Fixed Rate)

LOAN NO.: 000628999

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| AUGUST 17, 2007 | San Diego | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

9689 Paseo Temporada, San Diego, CA 92129

[Property Address]

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 307,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is The Robison Family Trust, Charles O. Robison and Blanche L. Robison Trustees Dated 04/05/2001

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 5th day of each month beginning on OCTOBER, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 05, 2012, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Charles Robison 5150 Vivera Dr., La Mesa, CA 91941 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,808.25

4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Alphonso Richardson (Seal) -Borrower

Ruth A Richardson (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

*[Sign Original Only]*