DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants and Counterclaimants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>REPLY BRIEF IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

**TABLE OF CONTENTS**


I. PLANITFFS HAVE FAILED TO MEET THEIR BURDEN OF PROOF. ... 1

II. THE LOAN IN QUESTION IS NOT A HOEPA LOAN. ... 1

III. HOEPA WAS NOT VIOLATED. ... 3

A. Plaintiffs do not dispute that Junior was Plaintiffs' Authorized Attorney-In-Fact. ... 3

B. Proper Three Day Notice was Given. ... 3

C. No Evidence Shows a Pattern or Practice of Not Considering Repayment Ability. ... 5

D. Plaintiffs Were Not Given Contradictory Annual Percentage Rates. ... 6

E. The HOEPA Disclosures Were Given in Conspicuous Type-Size. ... 7

F. Plaintiffs Were Given Proper Rescission Notice. ... 7

IV. PLAINTIFFS CANNOT TENDER REPAYMENT AND ARE THEREFORE NOT ENTITLED TO RESCISSION ... 8

V. THE EQUITIES FAVOR THE LENDER DEFENDANTS. ... 9

VI. CONCLUSION. ... 10

# TABLE OF AUTHORITIES

## CASES


§226.32 .......... 2, 7

*Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981) .......... 2

*In re Jackson* .......... 4

*In Re Williams*, 232 B.R. 629 (Bkrtcy E.G. 1999) .......... 4

*Jackson v. Grant*, 890 F.2d 118, 120 n.3 (9th Cir. 1989) .......... 2, 3

*LaGrone v. Johnson*, 534 F.2d 1360, 1361-2 (9th Cir. 1976) .......... 9

*Newton v. United Companies Financial Corp.*, 24 F. Supp. 2d 444, 448-449 (E.D. Pa. 1998) .......... 4, 6

*Newton v. United Companies Financial Corp.*, 24 F. Supp. 2d 444, 456 (E.D. Pa. 1998) .......... 5

*Semar v. Platte Valley Federal Savings & Loan Assoc.*, 791 F.2d 699, 705-706 (9th Cir. 1986) .......... 8

*Yamamoto v. Bank of New York*, 329 F.3d 1167, 1169-1170 (9th Cir. 2003) .......... 8, 9


## STATUTES


15 U.S.C. § 1639 .......... 5

15 U.S.C. §1635 .......... 6

405.30 .......... 9

405.32 .......... 9

Cal. Civ. Code §1550 .......... 4

Cal. Code Civ. Proc. §§405.3 .......... 9

California Civil Code §1550 .......... 3

on 15 U.S.C. §1639 .......... 7

U.S.C. § 1602 .......... 1, 2

U.S.C. §1640 .......... 6


## REGULATIONS


§226.18 .......... 2

12 C.F.R. §226.31 .......... 6
Regulation Z, 12 C.F.R. §226.2( .......... 3, 4
Regulation Z, 12 C.F.R. §226.34 .......... 5
Supp. I to Reg Z, Official Staff Commentary to §§226.15 .......... 8

## I. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF PROOF.

Plaintiffs do not deny that they have the burden of proof, and yet they offer almost no evidence to meet their burden. Plaintiffs admit that they did not have sufficient evidence in June 2008 to obtain a temporary restraining order (Opposition 2:10). They still have none. They offer nothing new that was not considered by the Court when the Court denied Plaintiffs' TRO application. Their response is nothing but a restatement of those rejected arguments.

In their Opposition, Plaintiffs do not dispute the validity of the powers of attorney executed by Plaintiffs authorizing their son, Alphonso Richardson, Jr. ("Junior") to act on their behalf, including receiving the notices and disclosure related to the loan. Nor do Plaintiffs dispute that the real estate market is in decline and that their lis pendens is preventing the Charles Robison, Blanche Robison and Richard Cheroske (the "Lender Defendants") from mitigating their damages.

Plaintiffs have failed in their opposition to establish any likelihood of success on their real property claims that is statutorily required for their lis pendens to continue of record. To the contrary, the undisputed evidence proves conclusively that Plaintiffs can never meet their burden of proving any "probable validity" of real property claims. The lis pendens should be expunged.

## II. THE LOAN IN QUESTION IS NOT A HOEPA LOAN.

Plaintiffs claim that the present loan falls within the scope of Home Ownership Equity Protection Act ("HOEPA") because the loan satisfies the points and fees trigger provided in 15 U.S.C. § 1602(aa); Reg. Z[1], 12 C.F.R. §226.32(a)(1)(ii). Those sections essentially say that the trigger is satisfied when the ratio of the sum of the points and fees to the total loan amount is greater than 8%. Taking the plain meaning of the words "total loan amount" and applying the standards applicable to determining the sum of points and fees given in Regulation Z, 12 C.F.R. §226.32(b)(1), the Lender Defendants have shown that this ratio is not greater than 8%. Plaintiffs rely upon non-binding Official Staff Commentary to arrive at a different calculation that

[1] 15 U.S.C. § 1602(aa) states in pertinent part, "(aa)(1) A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if--. . . (B) the total points and fees payable by the consumer at or before closing will exceed the greater of-- (i) 8 percent of the total loan amount; or (ii) $400."

exceeds 8% of the total loan amount. The definition provided by the Staff states, “For purposes of the ‘points and fees’ test, the total loan amount is calculated by taking the amount financed, as determined according to §226.18(b), and deducting any cost listed in §226.32(b)(1)(iii) and §226.32(b)(1)(iv) that is both included as points and fees under §226.32(b)(1) and financed by the creditor.” Although the code and regulations provide a definition for Points and Fees, neither the code or regulations provide a definition for Total Loan Amount, which indicates that Congress intended the term to have its plain meaning in application. The convoluted and difficult to apply “definition” provided by Staff is not supported by any explanation or rational in the commentary.

In *Jackson v. Grant*, 890 F.2d 118, 120 n.3 (9th Cir. 1989) the Ninth Circuit quotes the U.S. Supreme Court: “’[A]bsent some obvious repugnance to the statute, the ... regulation [of the Federal Reserve Board implementing the TILA] should be accepted by the courts, as should the Board's interpretation of its own regulation.’ *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981).” Here, the Commentary reflects obvious repugnance to 15 U.S.C. § 1602(aa) by taking the unambiguous phrase “total loan amount” and contorting into something that is at odds with the plain meaning of the words and equals less than the total loan amount. Clearly, the total loan amount is the total amount of money that the borrower ends up owing in the loan transaction. That is the amount in the Note, the deed of trust and the settlement statement. Exs. C:1, D:2, F:2-3. Any other reading of the word “total” is repugnant to the statute and undermines the clear expression of Congress.

Despite citing the Commentary, Plaintiffs also agree that the total loan amount in this case is $307,000 when they make the false and baseless claim that the Lender Defendants stand to make an “80% return” on their loan as a result of “selling themselves” the house. Opposition 1:26 – 2:8. Plaintiffs use a total loan amount of $307,000 to calculate this 80%. The 80% apparently comes from subtracting the total loan amount of $307,000 from the 2007 appraisal amount of $550,000, which was obtained and provided to the Robisons by the Richardsons (who had a motivation to obtain as high an appraisal as possible in order to obtain a loan), and dividing that number by the total loan amount of $307,000 to get 79%.

The 80% return claim is false and baseless because the real estate market is currently in free fall, and the Lender Defendants face the ever mounting costs of this litigation. Whether the net sales price will even exceed at all the Lender Defendants' loan, legal expense and other costs, let alone by 80%, remains to be seen but is highly unlikely.

Furthermore, the Lender Defendants did not "sell themselves" the house as claimed by Plaintiffs. The home sold at a publicly noticed auction, at which the Richardsons and anyone else in the public were free to bid. The Richardsons challenged the sale before hand with their TRO application, but the Court properly rejected the challenge. The foreclosure sale lawfully went forward and was properly conducted by the trustee of the deed of trust that secured the loan.[2]

## III. HOEPA WAS NOT VIOLATED.

Assuming *arguendo* that HOEPA does apply, Plaintiffs have not satisfied their burden of proof in showing a probability of success on the merits of their claims that HOEPA was violated.

### A. Plaintiffs do not dispute that Junior was Plaintiffs' Authorized Attorney-In-Fact.

In their opposition, Plaintiffs do not dispute the validity of the powers of attorney that each of the Plaintiffs signed authorizing Alphonso Richardson, Junior, ("Junior") to act on their behalf. As a result, all loan documents and acknowledgments signed by Junior are binding against Plaintiffs.

### B. Proper Three Day Notice was Given.

HOEPA requires that the mandated disclosures be given three business days before consummation of the loan. Regulation Z, 12 C.F.R. §226.2(a)(13), states, "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." Therefore, the time of consummation is not necessarily when the borrowers sign the loan documents, but the time after which the borrower becomes *bound* by the loan documents. State law determines when a consumer becomes contractually obligated. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989). California Civil Code §1550 sets forth the four elements of a contract: 1) Parties capable of contracting; 2) their consent; 3) a lawful object; and, 4) a sufficient cause or

[2] A foreclosure is presumed valid by common law, (*Stevens v. Plumas Eureka Annex Mining Co.*, 2 Cal. 2d 493, 497 (Cal. 1935)), and a properly noticed and executed foreclosure sale is conclusively presumed valid as to bona fide purchasers. Cal. Civ. Code §2924(c) (West 2008).

consideration. Cal. Civ. Code §1550; *Jackson*, 890 F.2d at 120. *See also* Official Staff Commentary, Supplement I to Reg. Z, 12 C.F.R. §226.2(a)(13).[3] In a California loan transaction, the Lender is not actually required to sign any of the loan documents, i.e. the disclosures, the promissory note and the deed of trust. Exs. C, D, E. All of those are executed by the borrower only. The lender assents to the loan by delivering funding to escrow. Thus, it is perfectly lawful, to provide a borrower with all proper disclosures when the borrower signs the promissory note and deed of trust provided that it is at least three days in advance of when the lender funds the loan and consummates the transaction. In fact, Plaintiffs were informed that the loan would not be final until funding in the "Brokered Funds Notice" which states, "LOAN APPROVAL WILL BE DONE UPON FUNDING ONLY." Ex. E:8.

Since the definition of consummation is to be determined according to California law, none of the cases cited by Plaintiff are applicable. They all apply the law of Pennsylvania. Furthermore, the cases cited by Plaintiffs actually support the view that consummation occurs at settlement because each suggests that the disclosures should have been made three days before settlement, not three days before signing the loan documents by the borrower. Apparently, in Pennsylvania, settlement is the time when both the lender and the borrower assent to the loan, with the lender showing assent by funding the loan at the same time the borrower signs. As pointed out by Plaintiffs, the lender's misstep in *In Re Williams*, 232 B.R. 629 (Bkrtcy E.D.Pa. 1999) was to make disclosures on the same day as the settlement. *Id.* at 633. The same was true of *In re Jackson*¸ where the lender failed to provide evidence that the disclosures were provided in a timely fashion before the settlement date. *In re Jackson*, 245 B.R. 23, 30 (E.D. Pa. 2000).

Finally, *Newton v. United Companies Financial Corp.*, 24 F. Supp. 2d 444, 448-449 (E.D. Pa. 1998) also agrees that consummation occurs on the settlement date also called the closing when it states, "The Home Ownership and Equity Protection Act ("HOEPA") requires delivery of special disclosures of credit terms at least three business days <u>prior to the loan closing.</u> 15 U.S.C.

[3] The Lender Defendants direct the Court's attention to www.bankersonline.com/regs/226/226.html which presents Regulation Z and the Official Staff Commentary in an easily accessible format.

§ 1639(a)-(b); 12 C.F.R. § 226.32(c)." (Emphasis added.) It does not say three business days prior to when loan documents are signed by the borrower.

In the present case, loan documents were signed by the borrower and disclosures were made on August 17, 2007. Ex E. The Robisons funded the loan on August 22, 2008 by delivering a cashiers check to escrow (Ex K), and then escrow closed on August 24, 2008. Exs F:2-3. The loan was consummated on August 22, 2008. The Richardsons were given notices seven calendar days before the close of escrow and at least three business days before the funding date. Ex E. The Plaintiffs had plenty of notice and they had a week from receipt of the documents to the time of the close of escrow in order to consider the disclosures and terms of the loan and cancel the transaction. This generous amount of time more than satisfies TILA and HOEPA. Plaintiffs have failed to meet their burden of proof on this issue.

**C. No Evidence Shows a Pattern or Practice of Not Considering Repayment Ability.**

Regulation Z does not, as Plaintiff contends, prohibit "stated income loans." Regulation Z, 12 C.F.R. §226.34(a)(4) states that a lender shall not:

> "Engage in a pattern or practice of extending credit subject to § 226.32 to a consumer based on the consumer's collateral *without regard* to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment. There is a presumption that a creditor has violated this paragraph (a)(4) if the creditor engages in a pattern or practice of making loans subject to § 226.32 without verifying and documenting consumers' repayment ability." (Emphasis added.)

Plaintiffs claim that the Lender Defendants are guilty of engaging in a pattern or practice of extending credit without regard to the consumer's repayment ability. However, they produce no evidence in support of this false claim. In order to establish a "pattern or practice" of making loans without regard to the consumers' repayment ability, Plaintiffs must show much more than the existence of one isolated example. *Newton v. United Companies Financial Corp.*, 24 F. Supp. 2d 444, 456 (E.D. Pa. 1998) (finding evidence of a few loans insufficient to show a pattern or practice).

Since there is only one loan at issue in this case, Plaintiffs cannot possibly prove this alleged violation or meet their burden of proof for purposes of this motion. Plaintiffs provide no

evidence of any other loan transactions involving the Robison's. Furthermore, Plaintiffs have not rebutted any of the evidence offered by the Lender Defendants that the Robisons did in fact consider the Richardsons' ability to pay, as represented by their income from retirement and disability and their intention to renovate and sell their home. Robison Decl. ¶3. The fact that the loan application was signed on August 17, 2008, does not contradict these facts because the information contained in the application was conveyed by the broker Robert Layton prior to August 17, 2008 (*Id.*) and before the funding date of August 22, 2008. Ex. K. Furthermore, Charles Robison's declaration does not say that he received this information in June 2007, simply that the Mr. Layton first contacted him in June 2007. *Id.* Subsequent to that he received the documents that disclosed the income of the Richardsons. *Id.* These documents were probably delivered sometime after July 15, 2008. Exs. A & B.

**D. Plaintiffs Were <u>Not</u> Given Contradictory Annual Percentage Rates.**

Plaintiffs offer into evidence an erroneous version of a document entitled "Truth-in-Lending Mortgage Disclosure for Mortgages that Exceed Certain Percentages and Amounts" that was promptly corrected. The document was incorrect and this mistake was corrected with the disclosure document by the same title submitted as part of the Lender Defendants' Exhibit E, which was also signed on August 17, 2008. Ex. E:3. Furthermore, Plaintiffs neglect to point out that elsewhere in the documents signed by Plaintiffs, e.g. the Federal Truth-In-Lending Disclosure Statement, the Annual Percentage Rate was correctly stated as 12.767%. Ex. E:6. Plaintiffs do not cite any authority establishing that this mistake and immediate correction violated any provisions of the Truth in Lending Act or HOEPA. Indeed, to the contrary, Regulation Z states, "if the creditor changes any term that makes the disclosures inaccurate, new disclosures shall be provided in accordance with the requirements of this subpart." 12 C.F.R. §226.31(c)(1)(i). This procedure was followed here and Plaintiffs provide no evidence to the contrary. In any event, this alleged mistake also falls under the safe harbors provided in 15 U.S.C. §1640(c) for unintentional violations and bona fide errors and 15 U.S.C. §1635(h) because the official forms were used. Plaintiffs have failed to meet their burden of proof on this issue.

**E. The HOEPA Disclosures Were Given in Conspicuous Type-Size.**

Relying on 15 U.S.C. §1639(a)(1) and Reg Z, 12 C.F.R. §226.32(c), Plaintiffs claim that disclosures on the document entitled "Truth-in-Lending Mortgage Disclosure for Mortgages that Exceed Certain Percentages and Amounts" are not in conspicuous type size. Ex. E:3. Merriam-Webster defines conspicuous as "1 : obvious to the eye or mind <conspicuous changes> 2 : attracting attention : striking <a conspicuous success>." Merriam Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/conspicuous.

All the disclosures presented in this document are required either by the code or regulations and the document contains only the required disclosures, except for the line above the signature. Furthermore, and more importantly, section 226.32(c) states that *all* of these required disclosures must be stated in conspicuous type print, thereby nullifying any implication that there must be some kind of differential in type style. Reg Z, 12 C.F.R. §226.32(c).

Finally, the Official Staff Commentary states: "Format. The disclosures must be clear and conspicuous but *need not be in any particular type size or typeface, nor presented in any particular manner*. The disclosures need not be a part of the note or mortgage document." Supp. I to Reg. Z, Official Staff Commentary, to §226.32(c) (emphasis added).

Since everything written on the page must be conspicuous, conspicuousness in this case is accomplished by having all the disclosures surrounded by lots of white space contained on one separate and distinct page. This presentation makes the importance of the information on the page obvious to the reader. Nothing is hidden or obscured. As the Commentary states, the type size is irrelevant. Plaintiffs try to make an issue out of the fact that one of the disclosures is capitalized. This is a non-issue. A lender should not be penalized for taking what is arguably the most important of the required disclosures and making it even more conspicuous than the rest. The Robisons have satisfied their obligation to present the disclosures in conspicuous type size. Plaintiffs have failed to meet their burden of proof on this issue.

**F. Plaintiffs Were Given Proper Rescission Notice.**

Plaintiffs erroneously claim that the rescission disclosures must give notice to joint owners that either had the right to cancel. The Official Staff Commentary actually states, "The

notice may include additional information related to the required information, such as: . . . A statement that joint owners may have the right to rescind and that a rescission by one is effective for all." (Emphasis added). Supp. I to Reg Z, Official Staff Commentary to §§226.15(b)-3, 226.23(b)-3. Since this language is permissive, failure to follow this suggestion is not a violation of anything. Besides, separate notices were given each Plaintiff via their common agent, Junior.

## IV. PLAINTIFFS CANNOT TENDER REPAYMENT AND ARE THEREFORE NOT ENTITLED TO RESCISSION

Plaintiff's protest that a court may only alter the procedural provisions of TILA rescission and not its substantive provisions. They appear to make the same argument made by plaintiffs in *Yamamoto v. Bank of New York,* 329 F.3d 1167, 1169-1170 (9th Cir. 2003) that the security interest is void upon service of a notice of rescission. As *Yamamoto* held, rescission is not automatic when the lender contests the ground upon which the borrower rescinds. *Id.* at 1172. According to *Yamamoto,* a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations. *Id.* at 1173. In fact, *Yamamoto* specifically states that the court need not waste its time addressing whether TILA was in fact violated before requiring that Plaintiffs tender repayment:

> "there is no reason why a court that may alter the sequence of procedures *after* deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what." *Id.* (emphasis added.)

The *Yamamoto* court also points out that *Semar v. Platte Valley Federal Savings & Loan Assoc.,* 791 F.2d 699, 705-706 (9th Cir. 1986) is consistent with this holding because *Semar* held simply that the Court could not ignore the substantive requirement of section 1635(b) that the borrower be freed from responsibility for interest and other charges listed on the closing statement after an order rescinding the loan. *Yamamoto,* 329 F.3d at 1171.

Plaintiffs claim that *Yamamoto* can be distinguished because plaintiffs can tender an off-set for TILA damages, whereas in *Yamamoto* damages were foreclosed by the one year statute of limitations; however, plaintiffs have made no showing as to what those damages might be in this

case. Plaintiffs have also not cited any authority (and the Lender Defendants have found none) suggesting that tender may be made by such an offset. In any event, since this is a motion to expunge a lis pendens, Plaintiffs have the burden of proving success on the merits. Cal. Code Civ. Proc. §§405.3, 405.30, 405.32. They should therefore have to provide evidence showing the amount of damages that they are allegedly likely to win on the merits and that the amount is equal to or greater than the loan amount. Their claim that there is no evidence that they cannot tender is simply wrong. The proceeds of the loan were used to pay off other debts and Junior apparently has the rest. Ex. F:1; Compl. ¶37-38. In fact, their argument that the only means by which they can tender is by offsetting an unsubstantiated and unspecified amount of damages reveals that Plaintiffs have no means of tendering repayment.[4]

Finally, *Yamamoto* also affirms, by citing *LaGrone v. Johnson*, 534 F.2d 1360, 1361-2 (9th Cir. 1976), that where, as here, the alleged violations are not egregious, rescission should be conditioned on repayment of the amounts advanced by the lender. *Yamamoto*, 329 F.3d at 1171.

Based on *Yamamoto* and *LaGrone*, Plaintiffs have no grounds for rescission in this case. They cannot satisfy the *sine qua non* of recission, i.e., restoring the parties to their pre-transaction position. For this reason alone, Plaintiffs' claims fail.

## V. THE EQUITIES FAVOR THE LENDER DEFENDANTS.

Plaintiffs do not dispute that the lis pendens is preventing the Lender Defendants from mitigating damages because of the declining real estate market. Instead, without evidence and based on innuendo, Plaintiffs speculate that the Lender Defendants could make an 80% return. To the contrary, the Lender Defendants are under distress and given the decline of the real estate market and mounting costs in this litigation, likely will suffer a loss. Defendants have now spent approximately $30,000 renovating the home in order to prepare it for sale. Supp. Robison Decl. ¶4. They face selling costs such as commissions. So far, the best offer they have been able to

---

[4] In somewhat of a non sequitor, Plaintiffs also cite *Albano v. Norwest Fin. Haw., Inc.*, 244 F.3d 1061, 1064 (9th Cir. 2001) for the proposition that rescission is a complete defense to foreclosure. The statement apparently relied upon in this case is dicta because Albano merely addressed whether a TILA claim could have been raised in an earlier state foreclosure action for purposes of determining whether Albano's TILA claims were precluded by res judicata. *Id.*

generate is only $450,000, even after renovations, which is $100,000 less than the Plaintiffs' appraisal. Supp. Dec. of Cheroske ¶ 2.

The Robisons made this loan because they believed they would receive only the principal and interest, first from the Richardsons' income, which was adequate to cover the mortgage and their living expenses, and second from the Richardsons' stated intent to sell the property. They never expected a foreclosure and lawsuit, and certainly never would have made the loan had they known they were misled as to the Richardsons' lack of intentions to repay the loan in good faith.

It is possible that Lender Defendants may not even be able to recover the original loan amount and their costs, let alone any 80% return. Speculation about an 80% return would be laughable if the truth were not so sadly different.

## VI. CONCLUSION.

What the Richardsons could not do judicially with their failed TRO application, they have now attempted to do unilaterally and outside the courts by recording their lis pendens. The TRO they wanted and the lis pendens both are to the same effect – to tie up the property and interfere with the legitimate exercise of the Lender Defendants' foreclosure remedy.

The Richardsons' interference is not theoretical, it is real. The Lender Defendants have just received a bono fide offer from a third party which they cannot accept because of the lis pendens. Supp. Dec. of Cheroske ¶¶ 2-3. It is essential that the Lender Defendants be allowed to proceed with a sale of the property to attempt to mitigate any further losses.

The lis pendens should be expunged and the Richardsons' interference with the Lender Defendants legitimate foreclosure remedy ended.

Respectfully submitted,

DATED: September 8, 2008 CALIFORNIA BUSINESS LAW GROUP, PC

By /s/ Duane S. Horning
DUANE S. HORNING
Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants and Counterclaimants

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>SUPPLEMENTAL DECLARATION OF RICHARD CHEROSKE IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

I, RICHARD CHEROSKE, declare as follows:

1. I am a defendant in this matter, individually and as assignee of the ROBISON FAMILY TRUST. I have personal knowledge of the following facts and if called upon could and would testify competently thereto.

2. Today, September 8, 2008, we received an offer to purchase the property located at 9589 Paseo Temporada, San Diego, California ("Property") for $450,000. This offer has come after the property was listed for sale for approximately 30 days at $525,000, with no offers being received. We recently reduced the list price to $475,000.

3. We cannot accept this offer or any offer because of the Notice of Pending Litigation recorded by the plaintiffs, Alphonso Richardson, Sr., and Ruth Richardson ("lis pendens"). Any contract to sell the Property will have to be conditioned upon the lis pendens being expunged.

I declare the foregoing is true and correct under the penalty of perjury of the laws of the United States of America and the State of California, and that this declaration was executed this 8 day of Sept, 2008, in Lakeside, California.

Richard Cheroske
RICHARD CHEROSKE

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE, Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>SUPPLEMENTAL DECLARATION OF CHARLES O. ROBISON IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

I, CHARLES O. ROBISON, declare as follows:

1. I am a defendant in this matter, individually and as Trustee of the Robison Family Trust dated April 5, 2001. My wife is BLANCHE L. ROBISON, and she also is a defendant, individually and as Trustee of the Robison Family Trust dated April 5, 2001 (collectively

"Robisons"). I have personal knowledge of the following facts and if called upon could and would testify competently thereto.

2. On or about August 22, 2007, I delivered a cashiers check to the broker Robert Layton at the offices of the escrow agent, Commonwealth Land Title Company, in the amount of $303,930.00. A true and correct copy of this cashiers check is attached hereto as Exhibit K.

3. Approximately $30,000 have been spent renovating the home at 9589 Paseo Temporada, San Diego CA 92129 in order to prepare it for sale.

I declare the foregoing is true and correct under the penalty of perjury of the laws of the United States of America and the State of California, and that this declaration was executed this 8th day of September, 2008, in San Diego, California.

Charles O Robison

CHARLES O. ROBISON

# EXHIBITS – TABLE OF CONTENTS

Exhibit K: A true and correct copy of Cashier's Check No. 3303724 payable to Commonwealth Land Title in the amount of $303,930.00 .......... 1

**EXHIBIT K**

THIS DOCUMENT HAS A TRUE WATERMARK - HOLD UP TO THE LIGHT TO VIEW

FIRST REPUBLIC BANK
It's a privilege to serve you℠
8347 LA MESA BLVD.
LA MESA, CA 91941

FDIC INSURED

DATE 08/22/2007

№ 3303724 (3303724)

# CASHIER'S CHECK

11-8166
3210

AMOUNT $303,930.00

PAY THE SUM OF

***THREE HUNDRED THREE THOUSAND NINE HUNDRED THIRTY AND 00/100***

DOLLARS

IMPORTANT NOTICE
THE BANK'S CLAIM TO LOST, STOLEN, OR DESTROYED CASHIER'S CHECK AND DECLARATION OF LOSS FORM MUST BE COMPLETED BEFORE ANY CASHIER'S CHECK OF THIS BANK WILL BE REPLACED OR REFUNDED. NO ACTION CAN BE TAKEN UNTIL THE 90TH DAY FOLLOWING THE ISSUE DATE OF THE CHECK.

TO THE ORDER OF
COMMONWEALTH LAND TITLE
RE: ESC# 04310389
CHARLES ROBINSON

VOID AFTER 90 DAYS

NON-NEGOTIABLE

2 SIGNATURES REQUIRED OVER $1000.00

⑈3303724⑈ ⑆321081669⑆ 99299999999909⑈

WARNING - REAR OF CHECK HAS A UNIQUE HEAT SENSITIVE SECURITY FEATURE

FIRST REPUBLIC

DATE: 08/22/2007 3303724

№ 3303724

| ACCOUNT NUMBER | CHECK AMOUNT |
|---|---|
| 3300193012 | $303,930.00 |
| COMMONWEALTH LAND TITLE<br>RE: ESC# 04310389<br>CHARLES ROBINSON | |

CR97

PLEASE RETAIN THIS STUB FOR YOUR RECORDS

PURCHASER COPY

DUANE S. HORNING (Bar No. 174995)
CALIFORNIA BUSINESS LAW GROUP, PC
Symphony Towers
750 B Street, Suite 1620
San Diego, CA 92101
Tel: 619-325-1555
Fax: 619-325-1559

Attorneys for CHARLES O. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; BLANCHE L. ROBISON, individually and as Trustee of the Robison Family Trust dated 04/05/2001; and RICHARD CHEROSKE,
Defendants and Counterclaimants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO RICHARDSON, SR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES O. ROBISON INDIVIDUALLY AND AS TRUSTEE OF THE ROBISON FAMILY TRUST DATED 04/05/2001, et al.<br><br>Defendants. | CASE NO. '08 CV 0902 WQH BLM<br><br>**CERTIFICATE OF SERVICE RE REPLY BRIEF IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS, SUPPLEMENTAL DECLARATION OF CHARLES O. ROBISON IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS; AND SUPPLEMENTAL DECLARATION OF RICHARD CHEROSKE IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS**<br><br>Judge: Hon. William Q. Hayes<br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4 |
| CHARLES O. ROBISON as trustee of the Robison Family Trust dated 04/05/2001, et al.<br><br>Counterclaimants,<br><br>v.<br><br>ALPHONSO RICHARDSON, SR., et al.<br><br>Counterdefendants. | |

I, CHRISTY GULINO JONES, declare under penalty of perjury that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; that I am employed or reside in the County of San Diego, State of

California, in which county the service occurred. My business address is Symphony Towers, 750 B Street, Suite 1620, San Diego, CA 92101.

I certify that I electronically filed the following documents with the Clerk of the United States District Court for the Southern District of California, using the CM/ECF System.

1. **REPLY BRIEF IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS;**
2. **SUPPLEMENTAL DECLARATION OF CHARLES O. ROBISON IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS; and**
3. **SUPPLEMENTAL DECLARATION OF RICHARD CHEROSKE IN SUPPORT OF MOTION TO EXPUNGE LIS PENDENS**

The Court's CM/ECF System will send an e-mail notification of the filing to the parties and counsel of record listed below who are registered with the Court's CM/ECF System:

Barry D. Mills, Esq.
3588 Fourth Avenue, Suite 210
San Diego, CA 92103
Tel: 619-295-5000
Fax: 619-338-4033
Email: millslaw@sbcuc.net
Counsel for Alphonso Richardson, Sr. and Ruth A. Richardson

David J. Lola, Esq.
Sunderland | McCutchan, LLP
11770 Bernardo Plaza Court, Suite 250
San Diego, CA 92128
Tel: 858-618-1652
Fax: 858-675-7807
Email: dlola@sunmclaw.com
Counsel for Robert H. Layton and Eric A. Klein

XX By ELECTRONIC FILING (CM/ECF) to the parties listed above. Pursuant to CM/ESF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

XX (Federal) I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on September 8, 2008, at San Diego, California.

s/s CHRISTY GULINO JONES
cgulinojones@cblg.biz